WILLIAM C. MORISON (No. 99981)
wcm@morison.law
JOANNE M. WENDELL (No. 191785)
jmw@morison.law
MORISON LAW, LLP
3478 Buskirk Avenue, Suite 342
Walnut Creek, CA 94523
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Defendant
HALLMARK SPECIALTY
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OXNARD MANOR LP dba OXNARD MANOR HEALTH CENTER, a California Limited Partnership,<br><br>Plaintiff,<br><br>vs.<br><br>HALLMARK SPECIALTY INSURANCE COMPANY, an Oklahoma Corporation, and DOES 1-100,<br><br>Defendant(s). | No. 2:23-cv-01322-SPG-MAR<br><br>Honorable Sherilyn Peace Garnett<br><br>REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS<br><br>Date: September 13, 2023<br>Time: 1:30 PM<br>Courtroom: 5C |

PRELIMINARY STATEMENT

Plaintiff cites inapposite law construing a different clause of the relevant statute. The usual tort accrual rule applies to plaintiff's third cause of action for tortious breach of the implied covenant of good faith and fair dealing. Plaintiff cites no applicable authority contrary to that general tort accrual rule. The First Amended Complaint ("FAC") and plaintiff's opposition admit the date relevant to the accrual of the tort and demonstrate on their face that the two-year tort statute of limitations commenced no later than when the underlying action ("*DeSoto*") settled in October 2019.

The FAC's fifth cause of action for unjust enrichment measured against controlling precedent requires judgment in Hallmark's favor. Plaintiff incorporated all its contract allegations into that claim *and* did not allege that the policies were void or rescinded. Plaintiff is prohibited from seeking unjust enrichment when relying on existing insurance policies.

## ARGUMENT

### I. OXNARD IGNORES THAT HALLMARK'S MOTION ADDRESSES A CAUSE OF ACTION IN TORT (THE THIRD CAUSE OF ACTION), NOT IN CONTRACT (THE FIRST AND SECOND CAUSES OF ACTION)

"Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." Cal. Code Civ. Proc. § 312. The two-year tort statute of limitation applies to Oxnard's third cause of action for breach of the implied covenant. *See* Cal. Code Civ. Proc. § 339(1) ("An action upon a[n]…obligation or liability not founded upon an instrument of writing….").[1] The statute of limitations applicable to tort actions begins to run when plaintiff discovers or should have discovered the last tort element to occur. "It is 'the *fact* of damage rather than the *amount* that is the relevant consideration' in determining the existence of 'actual harm.'" *See Choi v. Sagemark Consulting*, 18 Cal.App.5th 308, 323 (2017) ("*Choi*") (emphasis in original) (an IRS notice to plaintiffs of defects in a plan which plaintiffs had to alter indicated "legally cognizable damage" (penalties

---

[1] *Planet Bingo LLC v. Burlington Ins. Co.*, 62 Cal.App.5th 44, 58 (2021) ("The limitations period for a cause of action for breach of the implied covenant of good faith and fair dealing is four years, if contract damages are sought…**or two years, if tort damages are sought.** (Code Civ. Proc., §339., subd. 1…")), citing *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 467 (2007) fn. 19; *see Marinelarena v. Allstate Northbrook Indem. Co.*, No. 22-55344 (9th Cir. Apr. 21, 2023 (barring policyholder's claim for bad faith because "The statute of limitations in California for a claim asserting breach of the implied covenant of good faith and fair dealing is two years where, as here, an insured sues an insurer for extracontractual damages"); *Hovsepyan v. GEICO Gen. Ins. Co.*, 616 F.Supp.3d 1057, 1068 (E.D. Cal. 2022); *Casey v. Metro. Life Ins. Co.*, 688 F.Supp.2d 1086, 1100 (E.D. Cal. 2010); *Richardson v. Allstate Ins. Co.*, 117 Cal.App.3d 8, 13 (1981).

not yet paid) that triggered the two-year tort statute of limitations).

Oxnard's third cause of action is for tortious breach of the implied covenant of good faith and fair dealing. That claim accrued when the *fact* of damages was known to Oxnard. That was no later than when *DeSoto* settled in October 2019 (ECF 32 ¶¶ 61, 62). Oxnard "demanded" payment of the settlement no later than October 22, 2019 (through its counsel in this very action, Avraham N. Wagner) (ECF 32 ¶ 64; ECF 39 at 3:2). Oxnard, not Hallmark, paid the settlement (ECF 32 ¶¶ 64-66, 77, 79, 85). The applicable statute of limitations began to run no later than October 22, 2019, and expired on October 22, 2021. Plaintiff did not file this action until February 22, 2023 (ECF 39, 1:19; ECF 1-1). It is time barred.

II.     PLAINTIFF'S AUTHORITY IS ALL WIDE OF THE MARK

Plaintiff relies principally on *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal.3d 1072 (1991) ("*Lambert*"). But *Lambert* construed the second clause of California Code of Civil Procedure section 339(1), which addresses claims regarding real property, including title insurance.[2] It held "that the limitation period for an action under a title insurance policy for failure to defend accrues when the insurer refuses the insured's tender of defense, but is tolled until the underlying action is terminated by final judgment."

*Lambert* discussed section 339(1) solely based on the title insurance clause. Even more importantly, *Lambert* analyzed the title insurance clause in regard to the breach of a *contractual* obligation to defend. *Lambert* is based on the breach of a continuing *contractual* obligation. Neither *Lambert* nor any of the cases on which it relied discussed or held that the *contractual* continuing obligation rule applied to toll the statute in tort actions (*Israelsky v. Title Ins. Co.*, 212 Cal.App.3d 611, 616,

---

[2] "Within two years:…an action found upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, *or by a policy of title insurance*; provided that the cause of action upon a contract, obligation or liability evidence by a certificate, or abstract or guaranty of title of real property or *policy of title insurance* shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."

619 (1989), relying on *Oil Base, Inc. v. Continental Cas. Co.*, 271 Cal.App.2d 378, 382-83 (1969)).

Oxnard demanded payment of the settlement no later than October 22, 2019 (ECF 32 ¶¶ 64; Oxnard Opposition, 3:2). The time for "full performance" in this case was October 22, 2019, when *DeSoto* settled and Oxnard (through plaintiff's counsel, Avraham N. Wagner ) "demanded" that Hallmark pay the settlement (ECF 32 ¶¶ 64-66; ECF 39 at 3:2). The statute of limitations began to run on settlement and expired on October 22, 2021. The complaint was not filed until February 22, 2023 (ECF 39, 1:19; ECF 1-1).

Plaintiff also cited *Hewlett-Packard Co. v. ACE Property & Casualty Ins. Co.*, 378 Fed.Appx. 658 (9th Cir. 2010), an unprecedential, unpublished three paragraph memorandum with no substantive discussion. The court ignored that *Lambert* was decided solely on a *contractual* obligation, not an action in tort. Plaintiff cited another unpublished decision in *Acceptance Ins. Co. v. Am. Safety Risk Retention Grp., Inc*., 08-cv-1057 (S.D. Cal. Aug. 8, 2011), which also confused the holding in *Lambert*. It cited Code of Civil Procedure section 339 without addressing that *Lambert* applied it on the basis of a title insurance policy (with a *contractual* duty to defend), and not an action in tort for breach of the implied covenant. Plaintiff's final citation was *SEMX Corp. v. Federal Ins. Co.*, 398 F.Supp.2d 1103, 1115 (S.D. Cal. 2005), where the court did not even address the statute of limitations for violation of the implied covenant.

Finally, any amendment would be futile because the date of settlement is admitted in the FAC. The date relevant to the accrual of the claim is apparent on the face of the FAC, just as it was in the pleading in *Deirmenjian v. Deutsche Bank, A.G.*, 526 F.Supp.2d 1068 (C.D. Cal. 2007).

### III. JUDGMENT ON THE THIRD CAUSE OF ACTION ALSO INCLUDES AND APPLIES TO OXNARD'S DEMAND FOR PUNITIVE DAMAGES AND ATTORNEYS' FEES

Contrary to the footnote in Oxnard's opposition (ECF 39 at 7:23-25), Hallmark in its Motion for Judgment on the Pleadings (ECF 38 at 7:22-8:4) provided California Supreme Court authority clearly holding that punitive damages are only available in tort and not in contract (*Cates Constr., Inc. v. Talbot Partners*, 21 Cal.4th 28, 61 (1999); *see also Slottow v. Am. Cas. Co.*, 10 F.3d 1355, 1361 (9th Cir. 1993) ("Punitive damages aren't available in California for simply breaches of contract, no matter how willful…Rather, the breach must have been tortious…."); Cal. Civ. Code § 3294.

Similarly, attorneys' fees are not available in the absence of a tort claim. In *Essex Ins. Co. v. Five Star Dye House*, 38 Cal.4th 1252, 1255 (2006), the California Supreme Court explained its ruling in *Brandt*:

> In *Brandt v. Superior Court* (1985) 37 Cal.3d 813…, this court held that in a *tort* action against an insurance company for breach of the duty of good faith and fair dealing, an insured may recover as damages those attorney's fees that are incurred in the same action and are attributable to the attorney's efforts to recover policy benefits that the insurer has wrongfully withheld. We reasoned that when an insurer's *tortious* conduct consists of depriving its insured of policy benefits, the attorney fees that the insured reasonably and necessarily incurs to obtain those policy benefits constitute an economic loss proximately caused by the insurer's *tort*, and thus those attorney fees (now commonly referred to as *Brandt* fees) are recoverable as *tort* damages. [Emphasis supplied.]

"The *Brandt* rule is now a well-settled but narrow exception to the general rule that each party to litigation must pay its own attorney fees." *Essex*, 38 Cal.4th at 1259; *accord Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 806 (2004).

The California Supreme Court and the Ninth Circuit have made clear that attorneys' fees and punitive damages are exclusively tort remedies for breach of the implied covenant (subject to the two-year statute of limitations). Because plaintiff's cause of action for tortious breach of the implied covenant is barred by the statute of limitations, those tort remedies are similarly unavailable to Oxnard.

## IV. PLAINTIFF MAY NOT SEEK UNJUST ENRICHMENT WHEN RELYING ON AN EXISTING CONTRACT

Plaintiff's fifth cause of action is for unjust enrichment. Oxnard overlooks the fact that it incorporated paragraphs 1-90 into that claim (ECF 32, ¶ 103). Those paragraphs include the first and second causes of action for breach of written contract (the 17/18 and 18/19 policies) (ECF 32, ¶¶ 73-87) as well as paragraphs discussing those policies (ECF 32, ¶¶ 1, 8, 22-37, 59). Oxnard alleged jurisdiction and venue in this Court based on the fact that "Hallmark [an Oklahoma corporation] issued insurance contracts to Plaintiff in the County of Los Angeles", "and the insurance contracts at issue were produced in the State of California" (ECF 32, ¶ 8). Oxnard did not allege, as required to seek unjust enrichment, that the policies were void or rescinded. *See Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal.App.4th 194, 203 (1996). To the contrary, Oxnard alleged "Specifically, Hallmark accepted and kept the premiums paid by Plaintiff for insurance coverage under the Policies while refusing to fulfill its *obligations to Plaintiff under the Policies as detailed herein*" (ECF 32, ¶ 105); and "As a direct and proximate result of Hallmark's conduct, Plaintiff has suffered damages and is entitled to restitution…." (ECF 32, ¶ 106) (emphasis supplied). Rule 8 does not save the FAC. The fifth cause of action for unjust enrichment incorporates all contract allegations *and* fails to make the essential allegations that the contracts are void or rescinded.

In its moving papers, Hallmark provided clear authority from the Ninth Circuit holding that the existence of a contract bars recovery for unjust enrichment. *See Berkla v. Corel Corp.*, 290 F.3d 983, 992 (9th Cir. 2002) ("'There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time"); and *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) "Under…California…law, unjust enrichment is an action in quasi-contract, which does not lie when an

enforceable, binding agreement exists defining the rights of the parties.").

Oxnard's unpublished district court citation is unavailing. The *published* Ninth Circuit and district court cases that Hallmark cited (and Oxnard did not challenge) all held that plaintiff cannot allege in its pleading a cause of action for unjust enrichment where express agreements exist and define the parties' rights. *See Brodsky v. Apple, Inc.*, 445 F.Supp.3d 110, 132 (N.D. Cal. 2020) (Koh, J.) ("'an action based on an implied-in-fact or quasi contract cannot lie where there exists between the parties a valid express contract covering the same matter'"); *In re Facebook Privacy Litigation*, 791 F.Supp.2d 705, 718 (N.D. Cal. 2011) (Ware, C.J.) ("'as a matter of law, a quasi-contract action for unjust enrichment does not lie where…express binding agreements exist and define the parties' rights… *Although Rule 8 of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express contract*'") (emphasis supplied).

As in *Lance Camper*, Oxnard's first two causes of action are for breach of a written contract (ECF 32 ¶¶ 73-87). Oxnard did not allege that those contracts were void or rescinded. And, indeed, it incorporated them into the fifth cause of action for unjust enrichment/restitution. Judgment in favor of Hallmark should be entered on Oxnard's fifth cause of action.

## CONCLUSION

For each of the foregoing reasons, Hallmark's motion for partial judgment on the pleadings should be GRANTED, with judgment entered against Oxnard on its third and fifth causes of action and on Oxnard's requests for extracontractual relief, punitive damages and attorneys' fees.

Dated:  August 30, 2023

Respectfully submitted,

MORISON LAW, LLP

1
2  By: */s/ William C. Morison*
      William C. Morison
3
   Attorneys for Defendant
4  HALLMARK SPECIALTY
   INSURANCE COMPANY
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28