Avi Wagner (SBN #226688)
Jennifer N. Hinds (SBN #301804)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 491-7949
Facsimile:   (310) 694-3967
Email:        avi@thewagnerfirm.com

*Attorneys for Plaintiff Oxnard Manor LP dba Oxnard Manor Health Center*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Oxnard Manor LP dba Oxnard Manor Health Center, a California Limited Partnership, <br><br> Plaintiff, <br><br> vs. <br><br> Hallmark Specialty Insurance Company, an Oklahoma Corporation, and DOES 1-100, <br><br> Defendant(s). | Case No.: 2:23-cv-01322-SPG-MAR (Removed from Los Angeles County Superior Court, Case No. 23STCV02077) <br><br> **DISCOVERY MATTER** <br><br> **DECLARATION OF AVI WAGNER IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR AN ORDER WAIVING THE PRE-MOTION TELEPHONIC CONFERENCE REQUIREMENT FOR DISCOVERY MOTIONS, OR, PERMITTING THE CONFERENCE TO OCCUR POST-FILING** <br><br> **Date: Ex Parte** <br> **Time: Ex Parte** <br> **Location:  Courtroom 790** <br><br> Discovery Cutoff: 10/4/23 <br> Pre-Trial Conference: 2/7/24 <br> Trial: 2/27/24 |

I, Avi Wagner, declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am the principal of The Wagner Firm, counsel for plaintiff Oxnard Manor LP dba Oxnard Manor Health Center ("Plaintiff" or "Oxnard") in this matter. I have personal knowledge of the matters set forth herein and if called to testify could and would truthfully testify to the following.

2.     I make this Declaration in support of Plaintiff's *Ex Parte* Application for an Order Waiving the Pre-Motion Telephonic Conference Requirement for Discovery Motions, or, Permitting the Conference to Occur Post-Filing.

3.     Plaintiff served Defendant Hallmark Specialty Insurance Company ("Hallmark") with Set One of its Interrogatories and Requests for Production ("Set One Requests") on May 4, 2023 by mail along with a courtesy copy by e-mail. Attached hereto as **Exhibit A** is a true and correct copy of the Proof of Service of those documents.

4.     On June 6, 2023 Oxnard received Hallmark's responses to Oxnard's Set One Requests by mail only.

5.     On June 26, 2023, Oxnard counsel sent a meet and confer letter which specified Hallmark's deficient response and provided legal authorities requiring Hallmark to supplement said responses and requested a telephonic conference on these issues within 10 days of the date of the letter, pursuant to L.R. 37-1. Attached hereto as **Exhibit B** is a true and correct copy of this correspondence and transmission e-mail.

6.     Hallmark's counsel failed to comply with this request. Attached hereto as **Exhibit C** is a true and correct copy of the e-mail correspondence reflecting Hallmark's failure to comply.

7.     As a result, the parties first conferred telephonically on July 11, 2023. This conference continued on July 12, 2023.

8.     Following each of these telephonic conferences, Oxnard counsel Charissa Morningstar sent an e-mail confirming what the parties had discussed during the call.

Attached hereto as **Exhibit D** is a true and correct copy of the e-mail thread including both summary e-mails.

9.   Oxnard has never received any indication that Hallmark disagrees with the contents of the e-mails in Exhibit D.

10.   Hallmark served its supplemental production for the Set One requests on July 21, 2023 by mail only, despite Hallmark's prior representation that it would honor the parties' agreement to provide courtesy copy via e-mail of documents served by mail.

11.   Oxnard served its Set Two requests on July 3, 2023.  Attached hereto as **Exhibit E** is a true and correct copy of the Proof of Service.

12.   Oxnard received Hallmark's responses by mail only on August 11, 2023.

13.   Oxnard sent a meet and confer email on August 15, 2023 which specified Hallmark's deficient response and provided legal authorities requiring Hallmark to supplement said responses and requested a telephonic conference on these issues within 7 days of the date of the e-mail.  Attached hereto as **Exhibit F** is a true and correct copy of this e-mail.

14.   The parties conferred telephonically on August 21, 2023, but were unable to resolve any issues.

15.   During the August 21, 2023 phone call, I requested that Oxnard counsel provide three times they were available for a telephonic discovery conference, so that we could make the request within 24 hours of reaching an impasse, in compliance with Magistrate Rocconi's procedures.  Ms. Wendell represented that she could not provide them at that time.

16.   Later that afternoon, Ms. Morningstar sent an email summarizing the call and reiterating Oxnard's request for three times that Hallmark counsel could participate in a telephonic discovery conference.  Attached hereto as **Exhibit G** is a true and correct copy of this e-mail.

17.   Receiving no response, on August 22, 2023 I sent a second e-mail request for counsel's availability.  Attached hereto as **Exhibit H** is a true and correct copy of that e-mail request.

18.   Upon receipt of Hallmark's availability, Ms. Morningstar promptly sent an e-mail to Magistrate Rocconi's chambers requesting a telephonic conference on August 25 or 28.  Attached hereto as **Exhibit I** is a true and correct copy of that e-mail.

19.   On the afternoon of August 25, 2023, Courtroom Deputy Valerie Velasco e-mailed that the request was still pending.  Attached hereto as **Exhibit J** is a true and correct copy of that e-mail.

20.   Oxnard has received no further information about the status of the request as of August 31, 2023.

21.   Attached hereto as **Exhibit K** is a true and correct copy of the March 24, 2023 Schedule of Pre-Trial and Trial Dates Worksheet in this matter.

22.   Oxnard provided Hallmark with its portion of the Joint Stipulation on August 30, 2023.  During an August 31, 2023 call, the parties conferred on the Joint Stipulation.   Attached hereto as **Exhibit L** is a true and correct copy of Oxnard's portion of the Joint Stipulation provided to Hallmark counsel on August 30, 2023.

23.   On August 31, 2023 at approximately 9:15 a.m. I informed Hallmark counsel of Oxnard's intent to file this Application.  She stated that she would need to see the application before deciding whether Hallmark would oppose.

24.   This is the first time that Oxnard has sought *ex parte* relief on this, or any, issue in this action.

25.   Oxnard brings this Application in good faith and for good cause.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

2    Executed on August 31, 2023.                  */s/ Avi Wagner*

3                                                   Avi Wagner

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

## PROOF OF SERVICE

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On May 4, 2023 I served true and correct copies of the foregoing documents,

- **PLAINTIFF'S INTERROGATORIES TO DEFENDANT HALLMARK SPECIALTY INSURANCE COMPANY, SET ONE;**

- **PLAINTIFF'S REQUESTS FOR PRODUCTION TO DEFENDANT HALLMARK SPECIALTY INSURANCE COMPANY, SET ONE; and**

- **PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT HALLMARK SPECIALTY INSURANCE COMPANY, SET ONE**

by placing a true and correct copy thereof, enclosed in a sealed envelope, addressed to the following:

WILLIAM C. MORISON
JOANNE M. WENDELL
MORISON LAW, LLP
3478 Buskirk Avenue, Suite 342
Pleasant Hill, California 94523
wcm@morison.law
jmw@morison.law

Attorneys for Defendant Hallmark Specialty Insurance Company

X (BY MAIL IN THE ORDINARY COURSE OF BUSINESS) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the U.S. Postal Service and the fact that correspondence would be deposited with the U.S. Postal Service that same day in the ordinary course of business; On this date, the above-named correspondence was placed for deposit at Los Angeles, CA and placed for collection and mailing following ordinary business practices.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 4, 2023, at Los Angeles, California.

*/s/ Charissa Morningstar*

Charissa Morningstar

PROOF OF SERVICE

# Exhibit B

 Gmail

**Charissa Morningstar <charissa.morningstar@gmail.com>**

---

## Letter Requesting to Meet and Confer in Oxnard Manor v. Hallmark

**Avi Wagner** <avi@thewagnerfirm.com>                                      Mon, Jun 26, 2023 at 4:38 PM
To: "Morison, William" <wcm@morison.law>, "Joanne M. Wendell" <JMW@morison.law>
Bcc: charissa.morningstar@gmail.com

Counsel,

Please see the attached correspondence.

--
Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

---

📄 **23.06.25 Draft MC Ltr. Hallmark 3 (3).pdf**
243K

# THE WAGNER FIRM
W W W . T H E W A G N E R F I R M . C O M
1925 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
PHONE: 3 1 0 . 4 9 1 . 7 9 4 9

June 26, 2023

**VIA EMAIL**

William C. Morison
Joanne M. Wendell
MORISON LAW, LLP
3478 Buskirk Avenue, Suite 342
Pleasant Hill, CA 94523
Email: wcm@morison.law; jmw@morison.law

**Re:   *Oxnard Manor LP v. Hallmark Specialty Insurance Company:*
Deficiencies in Defendant's Discovery Responses**

Dear Counsel:

Plaintiff Oxnard Manor ("Oxnard") has reviewed Defendant Hallmark Specialty Insurance Company's ("Hallmark's") Objections and Responses to: (a) Plaintiff's Requests for Production of Documents (Set One) ("RFPs"); (b) Interrogatories (Set One); and, (c) Requests for Admission (Set One) ("RFAs").  This letter details deficiencies with these discovery responses as part of a good faith attempt to meet and confer in advance of filing of a motion to compel, in accordance with Federal Rule of Civil Procedure (FRCP) 37(a)(1) and Central District of California Local Rule ("LR") 37-1.

Pursuant to LR 37-1, please suggest three times within ten days of the date of this letter when you are available to meet and confer further in an attempt to informally resolve these outstanding issues.  We are available all day this Friday and most times on next Monday (7/3) as well but can make other times available.

## I.     Deficiencies in Interrogatory Responses

## A.     General and Recurring Deficiencies

1

1.      *General Objections*

Hallmark's general objections do not state what interrogatory they relate to and provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")/

2.      *Privilege Objections (Interrogatories 1-9, 11-16)*

Hallmark objects to numerous Interrogatories that they "invade[] the attorney-client privilege" and/or work product doctrine without providing any further explanation of how this is so. These non-specific objections are insufficient to resist responding to these requests. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so. Such bare, unsupported assertions are likewise insufficient to assert work product protection. *Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO PC, at *9 (E.D. Cal. June 5, 2012)

3.      *Objections Based on Federal Rules of Evidence ("FRE") 401 and 403*
        *(Interrogatories 1-3, 6, 7, 10, 11, 13, 17-19)*

Hallmark objects to numerous interrogatories on the basis that they "seek [] information not relevant under FRE 401" and "are subject to FRE 403" without providing any further explanation. This is improper boilerplate language that may be disregarded. It also misstates the scope of discovery.

Parties seeking discovery are entitled to all information "reasonably calculated to lead to the discovery of admissible evidence." FRCP 26(b)(1). FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig*., 317 F.R.D. 562, 566 (D. Ariz. 2016). "[I]nformation within [the scope of Rule 26(b)(1)] need not be admissible in evidence to be discoverable." FRCP 26(b)(1). Hallmark has presented no argument as to how any of these requests seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

Hallmark's objection with respect to FRE 403 is also improper, as this rule relates to when a court may exclude otherwise admissible evidence. This is irrelevant in determining whether information is discoverable.

4.      *Objection to the Definition of "Your" as "Overbroad and Compound"*
        *(Interrogatories 1, 4, 6-9, 11, 13, 15, 18, 19)*

Hallmark's objection to the definition of "Your" as "overbroad and compound" is non-specific boilerplate language that does not satisfy FRCP 33's requirement that "grounds for objecting to an interrogatory must be stated with specificity". This objection does not describe *how* the definition is overbroad nor how that purported overbreadth impairs its ability to respond.

5.      *Objection to Various Terms as Vague, Ambiguous and/or Overbroad*
        *(Interrogatories 1-3, 7, 10-13, 17, 18)*

Hallmark objects to these interrogatories on the basis that it includes one of the following allegedly "vague and ambiguous" terms: "involved", "neutral standards", "identify", "bad faith", "financial interests", and "changes in staffing or procedures used".  Oxnard rejects that any of these terms are vague or ambiguous, but even if they were, Hallmark has "an obligation to construe . . . [them] in a reasonable manner." *Boston v. ClubCorp USA, Inc.*, Case No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019); *In re Pioneer Corp.*, Case No. CV 18-4524 JAK (SSx), 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9, 2019) ("A responding party must apply a reasonable interpretation to a discovery request.")  This is especially true for terms such as "bad faith", which insurer Hallmark is familiar with.  This is not a permissible basis for withholding a response.

> 6.   *Objections That Interrogatory is Not Sufficient in Itself in That It Requires Reference to Another Document Not Attached* (Interrogatories 7, 8, 11, 14, 15)

Hallmark's objections on this basis are without merit.  This is a valid objection in California state court (Code Civ. Proc., § 2030.060, (d)), but there is no equivalent FRCP imposing this requirement.  Further, none of the documents to which these interrogatories refer are unknown to Hallmark: all are either documents previously filed in this action or the Policies at issue.

> 7.   *Objections that The Interrogatory Exceeds the Permissible Number of Interrogatories* (Interrogatories 15-19)

A party may serve up to 25 interrogatories without seeking leave of court. FRCP 33(a)(1).  Oxnard served a total of 17 interrogatories, none of which exceed the 25 it was permitted to serve.[1]

> 8.   *Objections to Interrogatories Requesting "All Facts" at the Beginning of the Case*

This objection is misplaced as the period for discovery is short and Oxnard denied coverage a long time ago and asserts it had a basis for doing so.

## B.   Deficiencies in Specific Interrogatory Responses

***Interrogatory No. 1:***  Identify the name, address and telephone number of all individuals acting on your behalf, other than individuals performing merely clerical functions, who were involved in the underwriting of the Policies.

Hallmark has provided no answer.  Underwriting files are relevant and discoverable in insurance breach of contract cases.  *See, e.g.*, *Int'l Game Tech. v. Ill. Nat'l Ins. Co.*, 2017 WL 5505039, at *2 (D. Nev. Nov. 16, 2017) (collecting cases).  Moreover, Hallmark has previously filed portions of its underwriting file in this action, contending that it is relevant to its Second Affirmative Defense. Docket Entry ("D.E.") 16, pp.182-83, D.E. 16-11. It follows that the identity of those participating in the underwriting on behalf of the insurer is also relevant and discoverable.

---

[1] The Interrogatories were numbered 1 to 19, but omitted numbers 5 and 12; the total number served is thus 17.

**Interrogatory No. 4:**  Identify the name, address and telephone number of all individuals acting on your behalf, other than individuals performing merely clerical functions, who were involved in the investigation and evaluation of the Love Claim.

This response includes narrative about statements made by Oxnard's agents in correspondence about the *DeSoto* Claim; this is evasive and not responsive to an interrogatory seeking all facts supporting the contention that "the *DeSoto* Claim was not covered under either of the Policies".  "The answers to interrogatories must be responsive, full, complete and unevasive." *Rubbermaid Commercial Products, LLC v. Trust Commercial Products*, No. 13-cv-02144, 2014 WL 664665, at *3 (D. Nev. Feb. 19, 2014) (citations omitted).  Oxnard has failed to describe how these statements on behalf of Oxnard are or could be a fact showing that the claim was not covered under the Policies.

**Interrogatory No. 7:**  Describe in detail any neutral standards that you used to determine whether the DeSoto Claim is a covered "Claim" under the Policies.

This interrogatory asks Hallmark to describe "neutral standards" used in determining whether the *DeSoto* Claim is a covered "Claim".  Hallmark's answer is non-responsive, as it does not reference any neutral standards or state that it did not use any.  Hallmark must correct this evasive non-responsive response.

**Interrogatories 8 and 9:**

As the phrase is used in the Policies (see Section V.TT), or either of them, identify the "single act, error or omission" out of which both *Foreman* and the *Desoto* [sic] Claim arise. …

As the phrase is used in the Policies (see Section V.TT), or either of them, identify the "common fact, circumstance, situation, transaction, event, advice or decision" which "logically or causally" connects *Foreman* and the *DeSoto Claim.*

The responses to these interrogatories contain the same non-responsive and evasive narrative as described in Interrogatory No. 4, above.  These responses contain additional non-responsive content describing litigation statements in other lawsuits by counsel for Shlomo Rechnitz and other non-parties to the instant action.  Interrogatory Responses, 11:7-16:2, 17:18-22:13.  Hallmark does not describe how litigation statements made by non-party counsel in other actions relates to how Hallmark construes the meaning of Policy terms.

**Interrogatory 10:** Identify any Claims Manuals governing coverage determinations under the Policies.

Hallmark has provided no response.  Claims manuals are relevant and discoverable in bad faith actions such as the instant suit.  *Hovsepyan v. GEICO Gen. Ins. Co.*, No. 2:19-cv-00899-MCE-CKD, at *5 (E.D. Cal. May 15, 2020).  Hallmark has provided no objection that allows it to avoid identifying the Claims Manuals.

***Interrogatory 11:*** Explain in detail whether you are relying on the advice of counsel as an affirmative defense to Plaintiffs Bad Faith cause of action.

Hallmark contends that this interrogatory assumes that Hallmark breached the insurance policy. This is non-responsive and incorrect. The interrogatory does not assume this; it merely acknowledges that Oxnard has asserted a bad faith claim. Hallmark must provide a response.

***Interrogatory 13:*** If you contend that you gave Oxnard' s financial interests equal or greater consideration than your own financial interests in evaluating the DeSoto Claim, state all facts supporting your contention.

Hallmark's answer is non-responsive and evasive. It states that it "had the obligation to give Oxnard's interest equal consideration", but does not answer whether it contends that it did so.

***Interrogatory 14:*** State all facts supporting any of your pleaded defenses.

This response suffers from similar deficiencies as described in Interrogatories 4, 8, and 9 above. Hallmark has not explained how any statements by Oxnard's agents in relation to the *DeSoto* Claim, or litigation statements by non-party counsel in a separate action could support any of its pleaded defenses here.

***Interrogatory 15:*** State all facts supporting your contention in the Rule 26 Report that "prior claims and lawsuits against Rechnitz facilities in addition to Foreman, Arbitration Case No. 1220052954, and JCCP4988" (D.E. 10, 4-5) are relevant to adjudicating the instant case.

Hallmark's answer is non-responsive. "An answer to an interrogatory should be complete in itself and should not refer to the pleadings or other documents" *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-02420 YGR (DMR), at *3 (N.D. Cal. Mar. 17, 2015). Hallmark's answer consists of a general reference to various unidentified pieces of correspondence to Oxnard, unidentified documents filed in other actions against Oxnard, purported correspondence to another facility for which no citation is given, and four pages of case names for lawsuits filed against various entities over the past 15 years. Interrogatory Responses, 30:27-35:10. This provides no explanation of the basis for Hallmark's contention that prior claims are relevant to adjudicating the instant case. Hallmark's unexplained reference to statements by counsel in a separate action likewise are evasive and not responsive. Hallmark must cure this response.

***Interrogatory 16:*** State all facts supporting your contention in the Rule 26 Report that "written communications between…other Rechnitz facilities on the one hand, and California and/or federal agencies charged with overseeing…other Rechnitz facilities, on the other hand" (D.E. 10, 4) are relevant to adjudicating the instant case.

Hallmark's answer is non-responsive. Its entire answer consists of listing off enforcement activities taken by government entities against other skilled nursing facilities. Interrogatory Responses, 37:27-43:43:18. This is evasive and does not provide any explanation of Hallmark's basis for contending that communications between these facilities and the California and/or federal agencies charged with overseeing them are relevant to adjudicating this case.

***Interrogatories 17 and 18:***

Identify the actions you took in relation to coverage determinations, including but not limited to, changes in staffing or procedures used or any other cost-cutting

measures, in response to A.M. Best placing your credit rating "Under Review with Negative Implications" beginning in March 2020. …

Identify the actions you took in relation to coverage determinations, including but not limited to, changes in staffing or procedures used or any other cost-cutting measures, in response to the significant decrease in your parent company Hallmark Financial Services, Inc.'s stock value in early 2020.

Hallmark's answers are non-responsive and evasive.   These interrogatories seek information about actions taken in response to the diminished financial status that it and its parent company suffered in 2020.  Hallmark has responded as to the basis of its denial of the *DeSoto* Claim only.

Oxnard has alleged that Hallmark placed its own financial interests ahead of that of its insured.  Any changes by Oxnard in the manner of making coverage determination as a result of a diminished credit rating and per share stock price of its parent company are relevant to showing that Hallmark prioritized its own financial interests.  Hallmark must provide responsive answers.

***Interrogatory 19:***  If you have denied any of the Requests for Admission, Set One, identify all facts underlying your denial.

See discussion of Interrogatories 4, 8 and 9.

## II.   Deficiencies in RFP Responses

## A.   General and Recurring Deficiencies

### 1.   Hallmark Has Produced No Documents

Oxnard served the RFPs by mail on May 4, 2023; responsive documents were due to be produced by June 5, 2023.  It is now more than three weeks after that date and Hallmark has yet to produce a single document.  Hallmark must produce the responsive documents at once.

### 2.   Hallmark Must Provide a Privilege Log

Hallmark has stated that it will produce the "non-privileged" portions of the *DeSoto* and *Love* claims files.  Hallmark must produce a privilege log that specifically logs each withheld document.  It "cannot rest on the assertion that a variety of privileges justify its decision to categorically withhold a wide range of responsive documents." *Hartford Cas. Ins. Co. v. First Specialty Ins. Corp.*, No. 5:16-cv-00407 (HRL), at *5 (N.D. Cal. Aug. 24, 2016).

### 3.   Hallmark's Responses to RFPs Suffer from Deficiencies Already Described

Hallmark recycles many of the same boilerplate objections to the RFPs as it used in response to the Interrogatories.  These objections are equally meritless here.  Refer to the following sections for an explanation of why these objections fail in response to the RFPs:

- General objections; *see* Section I.A.1;
- Attorney-client privilege or work product doctrine (All RFPs), *see* Section I.A.2;
- FRE 401 and 403 (RFPs 1-6, 8-11, 15-23, 27), *see* Section I.A.3; and
- "Your" is overbroad (RFPS 2-13), *see* Section I.A.4.

6

> 4. *Objections to RFP as Vague, Ambiguous, Compound, Overbroad, Harassing, Annoying, Seeking Information that is Not Proportional to the Needs of the Case, and/or Exceeds the Bounds of the Legitimate Purposes of Discovery* (RFPs 6-11, 14-19, 21, 24, 25)

A party objecting to a request for production must state the reasons for the objection. FRCP 33(b)(2)(B). Hallmark has provided no reason for *any* of these objections. Hallmark must "clarify, explain, and support its objections" for them to have effect. *Herrera v. AllianceOne Receivable Mgmt., Inc*., Civil No. 14-CV-1844-BTM (WVG), at \*5 (S.D. Cal. Mar. 28, 2016).

## B. Deficiencies in Specific RFP Responses

*RFP 3:* A true and correct copy of your entire investigation file related to the DeSoto Claim.

Hallmark responds that it will produce "the responsive non-privileged portion of its DeSoto claim file." This is not responsive to the request, and Hallmark has provided no objection that would prevent discovery of the investigation file. "The investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies." *Klee v. Whirlpool Corp*.,251 F.R.D. 507, 512 (S.D. Cal. 2006) (citation omitted). Hallmark has offered no reason that the investigation file is protected by the work product doctrine or attorney-client privilege "[I]t can be presumed that `documents which were produced by an insurer for concurrent purposes before making a claims decision would have been produced regardless of litigation purposes. . . .'" *Id*. Hallmark has offered no information or argument that would overcome this presumption.

*RFP 4:* A true and correct copy of your entire underwriting file(s) related to the Policies from the date Plaintiff first applied for the Policies to the present.

Underwriting files, as well as policy drafting history are discoverable in cases involving breach of contract because it indicates what the coverage included and also whether the insurer failed to meet its obligation. *See, e.g*., *Int'l Game Tech. v. Ill. Nat'l Ins. Co*., 2017 WL 5505039, at \*2, \*4 (D. Nev. Nov. 16, 2017) (collecting cases). Hallmark has offered no specific objection that would render these files exempt from discovery

*RFP 5:* A true and correct copy of your entire underwriting file(s) related to any renewal quote generated for the Policies from the date Plaintiff first applied for the Policies to the present.

*See* RFP 4.

*RFP 6:* All documents and communications that support your contention that the DeSoto Claim was not covered under either of the Policies.

*RFP 7:* All communications between you and Plaintiff or Rockport regarding the DeSoto Claim.

*RFP 8:* All communications between you and your employees, insurance agents or insurance brokers, regarding the DeSoto Claim.

*RFP 9:* All communications between you and any third party regarding the *DeSoto* Claim.

In response to RFPs 6 to 9, Hallmark responds that it "will produce the responsive non-privileged portion of its *DeSoto* claim file." This is insufficient; Hallmark must produce *all* non-privileged documents which are responsive to RFPs 6 to 9, or any of them, irrespective of whether they appear in the *DeSoto* Claim file. Hallmark has offered no objection that would permit it to avoid this obligation.

**RFP 10:** All documents or communications, including, but not limited to, Claims Manuals which were, or should have been, utilized by you at the time Plaintiff submitted its request for coverage for the *DeSoto* Claim, including all additions, revisions, deletions, or other changes that have been made to the manuals since that time.

Oxnard has alleged a bad faith cause of action against Hallmark; claims manuals are within the scope of discovery in such cases. *Hovsepyan v. GEICO Gen. Ins. Co*., No. 2:19-cv-00899-MCE-CKD, at *5 (E.D. Cal. May 15, 2020); *Martinez v. James River Ins. Co*., 2020 WL 1975371, at *3 (D. Nev. Apr. 24, 2020) ("The case law is well settled that claims manuals are generally relevant and discoverable both for bad faith and breach of contract insurance claims.").

**RFP 11:** All documents and communications between you and any government agency including, but not limited to, the California Department of Insurance, regarding Plaintiff or Schlomo Rechnitz.

These documents are relevant to Oxnard's bad faith cause of action, because they show Hallmark went to the ends of the earth to elicit any kind of negative information about Mr. Rechnitz. In addition, Hallmark has identified designees from these agencies as relevant witnesses in this action. Rule 16 Report, D.E. 10,

**RFP 12:** A true and correct copy of your entire claim file (whether home office, regional office, local office, or other office) related to *Foreman* including, but not limited to, all related communications, all loss reserve documents, pre-trial reports, requests for authority, committee review reports and notes.

Hallmark has asserted that the *DeSoto* Claim is not a covered claim under the Policies because it is a "related claim" to, *inter alia*, *Foreman*. Hallmark's claim file for *Foreman* is thus relevant and discoverable.

**RFP 14:** A true and correct copy of your entire claim file (whether home office, regional office, local office, or other office) related to any and all claims which you assert are a "related claim" to the DeSoto Claim as defined by the Policies, or either of them, including, but not limited to, all related communications, all loss reserve documents, pre-trial reports, requests for authority, committee review reports and notes.

Hallmark has indicated that it intends to seek discovery on all claims against Oxnard and/or any other claims made since 2012 against other facilities that may have common ownership. Joint Rule 26(f) Report (D.E. 10), 4:3-9, 4:27-5:2. This suggests that Hallmark considers claims other than *Foreman* to be "related" to the *DeSoto* claim. If this is true, the claims file for each of these claims is relevant here. If it is not, Hallmark may state that it does not consider any other claims to be "related" to the *DeSoto* claim.

8

**RFP 15:**  The personnel file on the adjuster or adjusters who made a recommendation or the decision to deny coverage for the *DeSoto* Claim.

Personnel files are routinely found to be discoverable in insurance bad faith actions, as they are relevant to the competence of the individuals involved in the handling of a claim and the adequacy of their training. *Vibal v. Geico Cas. Co.*, Case No.: 17CV534-LAB(BLM), at *7-8 (S.D. Cal. Jan. 26, 2018).   Any privacy concerns can be addressed by redacting protected privacy information.  *Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc. Moore*, 2017 WL 80248, at *4-5 (D. Haw. Jan. 9, 2017),

**RFP 16:**  The personnel file on the adjuster or adjusters who made a recommendation or the decision to deny coverage for the *Love* Claim.

See discussion for RFP 15.  This applies with equal force with respect to the *Love* Claim, as Oxnard has alleged a pattern of bad faith by Hallmark.  The personnel file(s) of the adjuster(s) of the *Love* Claim are relevant to discovering broader claims handling issues at Hallmark.

**RFP 17:**  All communications between you and the agent or broker who sold either of the Policies to Plaintiff which relate to Plaintiff or the Policies.

See the discussion of RFPs 6 to 9.

**RFP 18:**  All documents and communications containing or reflecting organizational charts and directories, including any and all supervisors, officers and directors of the claim unit or organization handling the *DeSoto* Claim.

See the discussion of RFPs 6 to 9.  This information is relevant to Oxnard's bad faith claim as it is likely to reveal the individuals who have greater knowledge and authority with respect to policies that may have affected the handling of the *DeSoto* claim.

**RFP 19:**   All documents and communications related to Plaintiff's application for the Policies.

See the discussion of RFPs 6 to 9.  Hallmark has already represented that Oxnard's application for the Policies is relevant to several of its affirmative defenses.  D.E. 16, pp. 183, 189-90.   Communications related to the application are relevant to providing context for the application.

**RFP 20:**  The complete underwriting manuals and procedures manuals, policy statements, or memoranda that set forth company practices or policies regarding the underwriting of the Policies from June 1, 2017 through the present, including all additions, revisions, deletions, or other changes that have been made in these documents.

Underwriting manuals are relevant to insurance breach of contract and bad faith claims. *Phillips v. Clark Cty. Sch. Dist.*, 2012 U.S. Dist. LEXIS 5309, *11-14 (D. Nev. Jan. 18, 2012). Hallmark has offered no specific objection that would justify its refusal to produce these documents.

**RFP 21:**  All communications related to your entire underwriting file related to the Policies from the date Plaintiff first applied for the Policies to the present.

See the discussion of RFPs 6 to 9.  Hallmark has already represented that documents from the underwriting file are relevant to its affirmative defenses.  D.E. 16, pp. 183, 189-90; 16-1, ¶ 11.  Communications are relevant to evaluating Hallmark's understanding of the risks it considered when issuing the Policy, and whether that changed at any point.

**RFP 22:**  All balance sheets and profit and loss statements, as well as the 10-Ks and any other reports, filed by your parent company, Hallmark Financial Services, Inc., with the Securities and Exchange Commission from January 1, 2018 to the present.

Oxnard has alleged that Hallmark acted in bad faith by placing its own financial interests above that of its insured.  Documents showing the financial status of Hallmark as well as its parent company are relevant to this issue.  In addition, where a party opposing discovery on the basis that it seeks exempt commercial information, it bears the burden of showing that the information sought qualifies for the privilege *and* that disclosure would be harmful to the party's interest.  *Dobson v. Twin City Fire Ins. Co.*, No. SACV 11-0192-DOC (MLGx), at *4-5 (C.D. Cal. Dec. 14, 2011) (quoting *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991)).  Hallmark's conclusory objection fails to satisfy this standard.

**RFP 23:**  All documents and communication reflecting discussions between you and your employees regarding your rating with insurance ratings agency A.M. Best from January 1, 2018 to the present, including but not limited to, any documents or communications containing discussions of how that rating may affect staffing or procedures in relation to coverage determinations.

*See* discussion of RFP 22.  Oxnard has alleged that Hallmark acted in bad faith by placing its own financial interests above that of its insured.  Documents and communications reflecting discussions had about Hallmark's diminished credit rating are relevant to this issue.

**RFP 24:**  All documents which support any of your pleaded affirmative defenses.

See the discussion of RFPs 6 to 9.

**RFP 25:**  All documents identified or relied upon in your responses to Interrogatories, Set One, served concurrently herewith.

See the discussion of RFPs 6 to 9.

**RFP 26:**  All documents relating to the July 8, 2016 "Notice of Denial of Application" from the California Department of Public Health to Shlomo [sic] Rechnitz, submitted by Hallmark in this action as Docket Entry ("D.E.") 16-5, which demonstrate how the document pertains to any of your pleaded affirmative defenses*.*

See the discussion of RFPs 6 to 9.

*RFP 27:*  All documents relating to the August 28, 2015, Emergency Motion to Disqualify Stalking Horse Parties from (1) Interim Management of Debtors' Facilities, and (2) Purchasing Debtors' Facilities or Assets (with declaration and proof of service) filed in United States Bankruptcy Court for the Central District of California, number 8:14-bjk-11335-CB, submitted by Hallmark in this action as D.E. 16-6, which demonstrate how the document pertains to any of your pleaded affirmative defenses.

See the discussion of RFPs 6 to 9.

*RFP 27 [28]:*  All documents relating to the April 27, 2020 letter from Oxnard Manor LP counsel Kayla M. Robinson of Pasich, LLP, submitted by Hallmark in this action as D.E. 16-10, which demonstrate how the document pertains to any of your pleaded affirmative defenses.

See the discussion of RFPs 6 to 9.

*RFP 28 [29]:*  Any and all documents that you relied upon in formulating the positions reflected in your counsel's February 4, 2019 and June 6, 2019 correspondence regarding the DeSoto Claim (submitted in this action as D.E. 16-2 and 16-3).

See the discussion of RFPs 6 to 9.

## III.    Deficiencies in RFA Responses

## A.    General and Recurring Deficiencies

### 1.    *Hallmark's Responses to RFAs Suffer from Deficiencies Already Described*

Hallmark recycles many of the same boilerplate objections to the RFAs as it used in response to the Interrogatories.  These objections are equally meritless here.  Refer to the following sections for an explanation of why these objections fail in response to the RFAs:

- General objections; *see* Section I.A.1;
- FRE 401 and 403 (RFAs 1-6, 8-11, 15-23, 27), *see* Section I.A.3; and
- "Your" is overbroad (RFAs 8, 21-26), *see* Section I.A.4.

## 2.    Deficiencies in Specific RFA Responses

*RFA 12:*  Admit that you had a duty to diligently search for and consider evidence that supported coverage for the DeSoto Claim.

Hallmark's response is non-responsive as it admits that it "performed a reasonable investigation of the claim as required by applicable authority."  This is not responsive to a request for admission of its *duty*.

*RFA 16:*  Admit that you are not relying on advice of counsel as a defense to Oxnard Manor's Bad Faith Claim.

Hallmark may not rely on its objection to the term "Bad Faith Claim" as vague and ambiguous to avoid answering.  Where discovery requests include ambiguous or undefined terms, a responding party has "an obligation to construe . . . [them] in a reasonable manner." *Boston*

*v. ClubCorp USA*, *Inc.*, Case No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019).  The First Amended Complaint contains a cause of action for bad faith, and this term is otherwise well known to insurance companies.

 **RFA 18:** Admit that the DeSoto Claim is a "Claim" made within the 17/18 Policy period.

 Hallmark's answer is non-responsive.  While it admits that the *DeSoto* Claim was made during the 17/18 Policy period, it does not admit or deny that it is a "Claim" under either Policy.

 **RFA 21:** Admit that you have Claims Manuals that set forth company practices or policies regarding the handling, processing and/or investigation of claims for coverage.

 The existence of Claims Manuals is relevant to, at a minimum, Oxnard's bad faith cause of action.  Hallmark must admit or deny this request.

 **RFA 22:** Admit that you did not use your Claims Manuals in investigating the *DeSoto* Claim.

 Hallmark's use, or failure to use, Claims Manuals in investigating the *DeSoto* Claim is relevant to, at a minimum, Oxnard's bad faith cause of action.  Hallmark must admit or deny this request.

 **RFA 23:** Admit that you did not use your Claims Manuals in investigating the *Love* Claim.

 Hallmark's use, or failure to use, Claims Manuals in investigating the *Love* Claim is relevant to Oxnard's allegations that Hallmark has a pattern of bad faith conduct and unfair competition practices.

 **RFA 26:** Admit that the share price of the stock of your parent company Hallmark Services, Inc., decreased by nearly 90% between January and May 2020.

 Hallmark contends that this seeks an irrelevant admission, but then denies RFA 29, which is based on the financial condition of Hallmark's parent company.  This contradicts Hallmark's claim that the diminished stock price is not relevant in this action.  Hallmark must admit or deny the request.

 **RFA 27:** Admit that insuring ratings firm A.M. Best placed your credit rating "under review with negative implications:" beginning in March 2020.

 Hallmark contends that this seeks an irrelevant admission, but then denies RFA 28, which is based on its diminished credit rating.  This contradicts Hallmark's claim that the diminished credit rating is not relevant in this action.  Hallmark must admit or deny the request.

We look forward to working with you to resolve these issues.

Sincerely,

*/s/ Avi Wagner*

Avi Wagner

# Exhibit C

 Gmail

Charissa Morningstar <charissa.morningstar@gmail.com>

---

## Re: Hallmark Oxnard Manor - Meet and Confer on Discovery

**Avi Wagner** <avi@thewagnerfirm.com>                                              Wed, Jun 28, 2023 at 11:48 AM
To: Charissa Morningstar <charissa.morningstar@gmail.com>

---------- Forwarded message ---------
From: **Avi Wagner** <avi@thewagnerfirm.com>
Date: Wed, Jun 28, 2023 at 11:47 AM
Subject: Re: Hallmark Oxnard Manor - Meet and Confer on Discovery
To: Morison, William <wcm@morison.law>
Cc: Joanne M. Wendell <JMW@morison.law>

Dear Bill,

We can confer at 1 pm on July 11. I will send a calendar invite. We reserve all rights, including the assertion of waiver in respect to your non-compliance with LR 37-1.

Sincerely,

Avi Wagner

On Tue, Jun 27, 2023 at 5:29 PM Morison, William <wcm@morison.law> wrote:
I do not have time to deal with you Avi. I am in trial and Joanne's husband is in the hospital. I'm done repeating ourselves. Choose one of the dates we proposed.

## MORISON LAW, LLP

William C. Morison
Managing Partner
3478 Buskirk Avenue • Suite 342
Pleasant Hill • CA 94523
t 925.937.9990 • f 925.937.3272

On Jun 27, 2023, at 5:25 PM, Avi Wagner <avi@thewagnerfirm.com> wrote:

Bill,

Your email below is unprofessional and not appropriate. Further, contrary to the below, it did not take me 20 days to prepare a letter. You did not abide by our agreement to courtesy e-serve documents so I first got your discovery responses on the 12th of June and your verifications on the 21s.

I am concerned by your unprofessional tone, noncompliance with agreements on your end, and failure to produce even a single document over the weeks since production has been due. Given the foregoing, I must insist on a meet and confer within 10 days, as required by the local rules, not the 6-8 extension you are unilaterally giving yourself.

Pick any time consistent with LR 37-1 and I will make it work. As a reminder, that rule provides in pertinent part:

Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party must confer with counsel for the moving party within ten days after the moving party serves a letter requesting such conference.

Case 2:23-cv-01322-SPG-MAR   Document 43-1   Filed 08/31/23   Page 26 of 122   Page ID #:954

If you need an extra day or two I'll agree but absent an agreement, I must insist on compliance with the Local Rules.

Another thought: does your trial run all court day or are there breaks for law and motion and case conferences? If so we could confer later this week or Monday during such a conference.
I'm willing to be flexible but cooperation needs to be two ways.

Avi

On Tue, Jun 27, 2023 at 5:01 PM Morison, William <wcm@morison.law> wrote:

Avi:

We have proposed dates that are much less than the 20 days it took you to prepare and send your letter. Grow up. Gain perspective. Pick one of the alternatives we proposed.

# MORISON LAW, LLP

William C. Morison
Managing Partner
3478 Buskirk Avenue • Suite 342
Pleasant Hill • CA 94523
t 925.937.9990 • f 925.937.3272

On Jun 27, 2023, at 2:30 PM, Avi Wagner <avi@thewagnerfirm.com> wrote:

Bill,

I did not see your second email before I sent my 2:14 email. Since you are in trial every business day until September and the Local Rules require a meet and confer within 10 days, we should meet and confer on a weekend of evening. I can be flexible virtually any weekend, holiday or evening within the next 10 days, so please give me two options. I appreciate your anticipated courtesy.

Sincerely,

Avi Wagner

On Tue, Jun 27, 2023 at 2:14 PM Avi Wagner <avi@thewagnerfirm.com> wrote:

Ok, in that case let's definitely find a weekend or evening. How about Thursday, Sunday or Monday?

On Tue, Jun 27, 2023 at 1:52 PM Morison, William <wcm@morison.law> wrote:

Actually until mid September. Afternoon session about to commence

# MORISON LAW, LLP

William C. Morison
Managing Partner
3478 Buskirk Avenue • Suite 342
Pleasant Hill • CA 94523
t 925.937.9990 • f 925.937.3272

On Jun 27, 2023, at 1:22 PM, Avi Wagner <avi@thewagnerfirm.com> wrote:

Dear Joanne,

I am sorry to hear about your husband. Are you saying Bill is in trial every business day between now and July 10? If that is the case, it make makes sense to confer in the evening or on the weekend, as, to date, your client hasn't produced any documents in discovery (among other deficiencies) and I am concerned about the non-production, passage of time and repeated non-compliance with agreements to provide electronic courtesy copies (on both the discovery responses and verification). How about we confer one evening this week or else this Sunday?

Regards,

Avi Wagner

On Tue, Jun 27, 2023 at 10:45 AM Joanne M. Wendell <JMW@morison.law> wrote:

> Avi:
>
>
> We are in trial (and my husband is in the hospital). The first we can meet and confer is the week of July 10. We suggest July 11 at 1:00 pm., July 12 at 1:00 pm or July 13 at 1:00 pm. Please advise which of those work for you.
>
>
> Best regards, Joanne



> **MORISON LAW, LLP**
>
> Joanne M. Wendell, Esq.
>
> Morison Law, LLP
>
> 3478 Buskirk Avenue · Suite 342
>
> Pleasant Hill · CA 94523
>
> t 925.937.9990 · f 925.937.3272

--
Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

--
Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

--
Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

--
Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

# Exhibit D

 Gmail

**Charissa Morningstar <charissa.morningstar@gmail.com>**

---

## Oxnard: Meet and Confer Summary

---

**Charissa Morningstar** <charissa.morningstar@gmail.com>                    Fri, Jul 21, 2023 at 12:42 PM
To: "Joanne M. Wendell" <jmw@morison.law>
Cc: "Morison, William" <wcm@morison.law>, Avi Wagner <avi@thewagnerfirm.com>

Joanne,

Can you confirm whether you will be providing the last known addresses for the individuals identified in Hallmark's responses to Interrogatories 2 and 3 in today's supplemental responses?

In addition, I sent an e-mail on July 19 about deposition scheduling.  Can you get back to us with your availability by COB on Tuesday, July 25?  Otherwise, we will unilaterally notice depositions.

Best,

Charissa

On Wed, Jul 19, 2023 at 5:01 PM Charissa Morningstar <charissa.morningstar@gmail.com> wrote:
> Joanne,
>
> Consistent with Interrogatories 2 and 3, we would request that you provide the last known addresses for these now-former employees, either in the supplemental production or as soon as possible thereafter.
>
> Thank you for reaffirming the parties' prior agreement to provide courtesy copies via email.  We have been frustrated that the agreement was not adhered to previously, but are hopeful that the issue will be corrected going forward.  To that end, to simplify the supplemental production of documents, please send a share link for the documents on Friday.
>
> Best,
>
> Charissa
>
> On Tue, Jul 18, 2023 at 5:39 PM Joanne M. Wendell <JMW@morison.law> wrote:
>> Charissa:
>>
>>
>> Our understanding of the meet and confer will be reflected in the amended responses.  We can send a courtesy copy of the written discovery responses by e-mail along with the applicable copy sent by U.S. Mail.  Documents will be produced by thumb drive.
>>
>>
>> Eric L. Brady, Doris M. Aragon, Esq., Charles Stauber, and Christine Jensen, Esq., are no longer with Hallmark.
>>
>>
>> We will have to follow up regarding mediation.
>>
>>
>> Best regards, Joanne



# MORISON LAW, LLP

Joanne M. Wendell, Esq.

Morison Law, LLP

3478 Buskirk Avenue · Suite 342

Pleasant Hill · CA 94523

t 925.937.9990 · f 925.937.3272

---

**From:** Charissa Morningstar <charissa.morningstar@gmail.com>
**Sent:** Tuesday, July 18, 2023 4:33 PM
**To:** Joanne M. Wendell <JMW@morison.law>
**Cc:** Avi Wagner <avi@thewagnerfirm.com>; Morison, William <wcm@morison.law>
**Subject:** Re: FW: Oxnard: Meet and Confer Summary

Joanne,

Further follow-up on the meet and confer process.  During the July 12 session, you agreed to provide a further response to Request for Admission ("RFA") 18, and stated that you would consider providing a further response to RFA 16, but that Hallmark would stand on its objections to RFAs 12, 21-23, and 26-27.

I also wanted to confirm that during the July 11 call, you agreed to provide information as to whether the individuals identified in response to Interrogatories 2 and 3 (Eric L. Brady, Doris M. Aragon, Esq., Charles Stauber, and Christine Jensen, Esq.) are current or former Hallmark employees.  During this call, you and Avi also discussed mediation, with Avi suggesting Bruce Friedman (JAMS), Hon. Margaret Nagle (JAMS) and Ralph Williams (ADR Services) as three possibilities.

Finally, please confirm that you will provide a courtesy copy of Hallmark's supplemental production via email on July 21.

Thanks,

Charissa

On Wed, Jul 12, 2023 at 1:28 PM Joanne M. Wendell <JMW@morison.law> wrote:

    Charissa:

I will respond to your email below after the 2:30 call today.   Of note, I inquired during yesterday's call with Avi
whether you were on the line.  You did not identify yourself and he said that you had not joined.  You did not
thereafter identify yourself.  The presence of all participants on any call or zoom is required.  Identify yourself on all
future communications when you join.


Joanne




## MORISON LAW, LLP

Joanne M. Wendell, Esq.

Morison Law, LLP

3478 Buskirk Avenue · Suite 342

Pleasant Hill · CA 94523

t 925.937.9990 · f 925.937.3272

---

**From:** Charissa Morningstar <charissa.morningstar@gmail.com>
**Sent:** Tuesday, July 11, 2023 5:34 PM
**To:** Joanne M. Wendell <JMW@morison.law>
**Cc:** Avi Wagner <avi@thewagnerfirm.com>; Morison, William <wcm@morison.law>
**Subject:** Oxnard: Meet and Confer Summary


Joanne,


This e-mail summarizes my understanding of the issues discussed on today's meet and confer call in relation to
Hallmark's Responses to Plaintiff's Interrogatories and Requests for Production (Set One).  Hallmark's responses
to Plaintiff's Requests for Admission will be discussed tomorrow at 2:30.


**Interrogatories**


Hallmark stands on its inclusion of general objections based on its incorporation by reference into the response to
each interrogatory.  It also stands on its objections on the basis of: (1) privilege; (2) the definition of "your" used is
overbroad; and (3) the terms  "involved", "neutral standards", "identify", "bad faith", "financial interests", and
"changes in staffing or procedures used" are vague and overbroad so as to be unintelligible.  Hallmark believes
that these terms cannot be reasonably construed.  Hallmark withdraws its objections based on Federal Rule of
Evidence 403, and on the basis that the interrogatories require reference to another document.


Hallmark agrees to supplement its responses to Interrogatories 1, 11, 13, 15 and 16.  Hallmark stands on its
objections to Interrogatories 4, 7-9, 14, and 17-19.

**RFPs**

Hallmark agrees to produce further documents for RFPs 3, 6-9, 11, 12, 14, 17, 18, 19, 21, and 24-29.  It will consider producing further documents for RFPs 4 and 5.  Hallmark stands on its objections to RFPs 10, 15, 16, 20, 22 and 23.

Although Hallmark has not previously objected to any request as time-barred, Hallmark asserts that Interrogatory 10 is not relevant and RFP 4 is not proportional to the needs of the case because any tort bad faith claim is barred by the statute of limitations.

Hallmark agrees to make its further production by July 21, 2023, which will include a privilege log.  Plaintiff requests that Hallmark honors the parties' agreement to provide a courtesy copy via e-mail of all documents served by mail.

Best,

Charissa

--

The Wagner Firm

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

# Exhibit E

# PROOF OF SERVICE

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On July 3, 2023 I served true and correct copies of the foregoing documents,

- **PLAINTIFF'S INTERROGATORIES TO DEFENDANT HALLMARK SPECIALTY INSURANCE COMPANY, SET TWO; and**

- **PLAINTIFF'S REQUESTS FOR PRODUCTION TO DEFENDANT HALLMARK SPECIALTY INSURANCE COMPANY, SET TWO**

by placing a true and correct copy thereof, enclosed in a sealed envelope, addressed to the following:

WILLIAM C. MORISON
JOANNE M. WENDELL
MORISON LAW, LLP
3478 Buskirk Avenue, Suite 342
Pleasant Hill, California 94523
wcm@morison.law
jmw@morison.law

Attorneys for Defendant Hallmark Specialty Insurance Company

X (BY MAIL IN THE ORDINARY COURSE OF BUSINESS) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the U.S. Postal Service and the fact that correspondence would be deposited with the U.S. Postal Service that same day in the ordinary course of business; On this date, the above-named correspondence was placed for deposit at Los Angeles, CA and placed for collection and mailing following ordinary business practices.

I also sent courtesy copies of the foregoing documents to the e-mail addresses listed above.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 3, 2023, at Los Angeles, California.

*/s/ Charissa Morningstar*

Charissa Morningstar

PROOF OF SERVICE

# Exhibit F



Charissa Morningstar <charissa.morningstar@gmail.com>

---

## Hallmark Oxnard

**Charissa Morningstar** <charissa.morningstar@gmail.com>                Tue, Aug 15, 2023 at 5:26 PM
To: "Joanne M. Wendell" <jmw@morison.law>
Cc: Avi Wagner <avi@thewagnerfirm.com>, "Morison, William" <wcm@morison.law>

Dear Counsel:

Some of your statements about our August 9 call require correction.

During our call, you declined to divulge any details of any of Bill's trials that you contend are an obstacle to moving forward with setting deposition dates. You claim that this was due to Avi's hostility on the call. I do not believe that Avi's tone was hostile, but rather frustrated based on a continued lack of responsiveness. To date we have no clarity on Bill's trial dates; when will Bill be out of trial? It is also still unclear when you are willing to provide deposition dates; while you claim you never stated that you would not provide dates until the end of August, you also did not commit to providing them before the end of August.

Likewise, nobody has ever disclosed to me the specific details of your husband's medical situation in anything close to the manner you assert. I was aware that in June your husband was currently or had been hospitalized, and that you currently had ongoing family medical obligations. I had previously inquired in my August 2 e-mail as to whether this precluded you from being able to set deposition dates. I received no response, and you did not mention on the call that your husband's medical care prevented Hallmark from moving forward with depositions. I empathize with the situation you and your family are in, but it does not excuse a refusal to provide a clear answer about your availability.

Moving to Hallmark's responses to Set Two of Plaintiff's Discovery Requests, I did not accuse Hallmark of anything. I merely stated the fact that we had received neither a paper copy nor an e-mailed courtesy copy, even though you had not previously indicated Hallmark's intent to withdraw from the agreement to send courtesy copies via e-mail. Prior to withdrawal, Hallmark never once adhered to the parties' agreement. Nevertheless, we finally received the responses by mail on Friday afternoon. Their deficiencies are outlined below.

### Requests for Production

### General Objections

Hallmark's general, boilerplate objections that do not respond specifically to requests for production are not proper and thus have no effect. *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, No. 2:10-cv-1207-GEB-AC, at *1 (E.D. Cal. Oct. 9, 2014).

### Requests 29-36: Rule FRE 401

Hallmark's objections based on FRE 401 misstate the scope of discovery, which is governed by F.R.C.P. 26(b)(1). FRE 401 considers what materials are relevant in considering *admissibility*. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).

### Requests 29-36: Privilege

Hallmark has objected based on its assertion that each request "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege". These non-specific objections are insufficient to resist responding to these requests. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so.

### Requests 29-33

Hallmark has provided an identical response to each request. It contends that the requested files are "of no importance" to resolving the case. Not so. Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern of bad faith conduct. FAC, ¶¶ 67-72, 88-102. Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action.

Hallmark further contends that the request is burdensome and would take a "number of work years" to produce the requested claims files because "over 3,000 claims" were made in the relevant time period.  The total number of claims is irrelevant.  Each request seeks only a subset of denied claims. *See, e.g.* RFP 29 (seeking claims files for claims denied "on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy").  Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing the denial. Hallmark has refused to take even this initial step.  It is thus impossible to determine whether the request is *actually* burdensome.   Hallmark must perform an initial review to determine how many claims files are responsive to each request.

Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its UCL or bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

**Request 36:**  All documents and communications containing discussion of loss reserves in relation to the DeSoto Claim, including discussions with either DARAG or any other reinsurers, and comprising documents and communication located in the DeSoto Claim file or any other location.

Hallmark offers no additional objections to this request, but loss reserve documents are discoverable in a bad faith action.  *Bernstein v. Travelers Insurance Company*, 447 F.Supp.2d 1100 (N.D.Cal. 2006).

**Interrogatories 19 and 20:**

Identify the names, addresses, telephone numbers, and e-mail addresses of other insured long-term care facilities, skilled nursing facilities, assisted living facilities and/or hospitals with liability policies issued by Hallmark from 2017 to the present whose claims Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

Identify the names, addresses, telephone numbers, and e-mail addresses of all individuals who evaluated and/or investigated claims made by long-term care facilities assisted living facilities, skilled nursing facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claims Hallmark sought to, or did deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

These responses share the same deficiencies as described above, particularly because Hallmark's responses are identical to that provided for RFPs 29-33.  But Hallmark's assertion that the interrogatories are burdensome is even more misplaced here.  These merely seek the names and contact information of (1) the insureds who had their claims denied on a single basis; and (2) the individuals who evaluated and investigated these claims on behalf of Hallmark.

Courts regularly grant requests such as (1), and permit the party seeking discovery to obtain the Court's approval to contact those insureds to grant or deny the release of their claim files. *Colonial Life Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785 (Cal. 1982); *J M Assoc. v. National Union Fire Ins. Co.*, No. 06-CV-0903-W (JMA) (S.D. Cal. Mar. 4, 2008); *Shirley v. Allstate Ins. Co.*, Case No.: 18CV994 AJB (BGS) (S.D. Cal. July 16, 2019); *A-l Transmission Automotive Tech. Inc. v. AMCO Ins. Co.*, No. 2:10-cv-08496-RSWL-SS (C.D. Cal. Nov. 28, 2011) (including the protective order describing the means by which plaintiff may communicate with other insureds).

Hallmark has failed to describe any reason why it cannot identify the individuals who evaluated or investigated the claims described in Interrogatory 20.  As described above, it need only review the denials to determine whether claims are responsive.  Hallmark does not even know how many responsive claims exist, so it cannot demonstrate that it is overly burdensome to identify the individuals who evaluated or investigated the responsive claims.

Please provide 3 times within 7 days of this e-mail that you are available to confer on Plaintiff's Requests for Production, Set Two and Interrogatories, Set Two.


Best,

Charissa Morningstar


On Thu, Aug 10, 2023 at 2:59 PM Joanne M. Wendell <JMW@morison.law> wrote:
[Quoted text hidden]

8/25/23, 9:34 AM    Case 2:23-cv-01322-SPG-MAR    Document 43-1    Filed 08/31/23    Page 40 of 122    Page ID
Gmail - Re: abraxas@oovar.
#:968

--
The Wagner Firm
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

# Exhibit G

 Gmail

Charissa Morningstar <charissa.morningstar@gmail.com>

## Fwd: Hallmark Oxnard

**Charissa Morningstar** <charissa.morningstar@gmail.com>                    Mon, Aug 21, 2023 at 2:54 PM
To: "Joanne M. Wendell" <jmw@morison.law>
Cc: "Morison, William" <wcm@morison.law>, Avi Wagner <avi@thewagnerfirm.com>

Counsel:

This e-mail summarizes the issues discussed on today's meet and confer call. We discussed all of the issues raised in my August 15, 2023 e-mail outlining Oxnard's responses to Defendant's Objections to Plaintiff's Requests for Production, Set Two, and Interrogatories, Set Two. As Hallmark stands on all of its objections, the parties are at an impasse with respect to these requests as well as Oxnard's prior requests that the parties were unable to resolve, as referenced in Avi's e-mail at 2:45 p.m. today.

We requested that you provide three times within the next seven days that you are available for a telephonic conference with the Magistrate. You represented that you needed to confer with Bill on availability; please provide this information as soon as possible.

Charissa Morningstar

On Mon, Aug 21, 2023 at 2:45 PM Avi Wagner <avi@thewagnerfirm.com> wrote:
The claims files issues and the Colonial Life discovery. They are detailed in our prior correspondence.

On Mon, Aug 21, 2023 at 2:24 PM Joanne M. Wendell <JMW@morison.law> wrote:

Avi:

Specifically identify all discovery and issues you intend to raise with the magistrate.

Joanne



**MORISON LAW, LLP**

Joanne M. Wendell, Esq.

Morison Law, LLP

3478 Buskirk Avenue • Suite 342

Pleasant Hill • CA 94523

t 925.937.9990 • f 925.937.3272

--
Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

# Exhibit H

 Gmail

Charissa Morningstar <charissa.morningstar@gmail.com>

---

## Fwd: Hallmark Oxnard

**Avi Wagner** <avi@thewagnerfirm.com>                                          Tue, Aug 22, 2023 at 6:10 AM
To: "Joanne M. Wendell" <JMW@morison.law>
Cc: Charissa Morningstar <charissa.morningstar@gmail.com>, "Morison, William" <wcm@morison.law>

Joanne,

As per the magistrate's practices we reiterate our request for dates immediately for a discovery conference before her.

On Mon, Aug 21, 2023 at 5:12 PM Avi Wagner <avi@thewagnerfirm.com> wrote:
  Joanne,

  Here is the full list:

  **INTERROGATORIES, SET ONE**

  INTERROGATORY NO. 7:
  Describe in detail any neutral standards that you used to determine whether the DeSoto Claim is a covered "Claim" under the Policies.

  INTERROGATORY NO. 10:
  Identify any Claims Manuals governing coverage determinations under the Policies.

  **REQUESTS FOR PRODUCTION, SET ONE**

  REQUEST NO 10:
  All documents or communications, including, but not limited to, Claims Manuals which were, or should have been, utilized by you at the time Plaintiff submitted its request for coverage for the DeSoto Claim, including all additions, revisions, deletions, or other changes that have been made to the manuals since that time.

  REQUEST NO. 20:
  The complete underwriting manuals and procedures manuals, policy statements, or memoranda that set forth company practices or policies regarding the underwriting of the Policies from June 1, 2017 through the present, including all additions, revisions, deletions, or other changes that have been made in these documents.

  **INTERROGATORIES, SET TWO**

  INTERROGATORY NO. 19:
  Identify the names, addresses, telephone numbers, and e-mail addresses of all other insured long-term care facilities, skilled nursing facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claims Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

  INTERROGATORY NO. 20:
  Identify the names, addresses, telephone numbers, and e-mail addresses of all individuals who evaluated and/or investigated claims made by long-term care facilities, assisted living facilities, skilled nursing facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose

claims Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

## REQUESTS FOR PRODUCTION, SET TWO

REQUEST NO. 29:
A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

REQUEST NO. 30:
A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insured did not allege an "occurrence" within the applicable policy because it alleged knowing, conscious, purposeful, fraudulent, malicious, and/or oppressive conduct by the insured.

REQUEST NO. 31:
A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that California Insurance Code section 533 precluded coverage of the claim.

REQUEST NO. 32:
A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the insured failed to disclose, concealed, or misrepresented facts that were material to underwriting the Hallmark policy.

REQUEST NO. 33:
A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the insured failed to cooperate with Hallmark's investigation of the claim.

REQUEST NO. 36:
All documents and communications containing discussion of loss reserves in relation to the DeSoto Claim, including discussions with either DARAG or any other reinsurers, and comprising documents and communication located in the DeSoto Claim file or any other location.


On Mon, Aug 21, 2023 at 3:31 PM Joanne M. Wendell <JMW@morison.law> wrote:

Avi:


That is insufficiently specific. Is the issue you intend to raise limited to claim files of non-Rechnitz facilities and Colonial Life discovery?


Joanne



# MORISON LAW, LLP

Joanne M. Wendell, Esq.

Morison Law, LLP

3478 Buskirk Avenue · Suite 342

Pleasant Hill · CA 94523

t 925.937.9990 · f 925.937.3272

---

**From:** Avi Wagner <avi@thewagnerfirm.com>
**Sent:** Monday, August 21, 2023 2:45 PM
**To:** Joanne M. Wendell <JMW@morison.law>; Charissa Morningstar <charissa.morningstar@gmail.com>
**Cc:** Morison, William <wcm@morison.law>
**Subject:** Re: Hallmark Oxnard


The claims files issues and the Colonial Life discovery. They are detailed in our prior correspondence.


On Mon, Aug 21, 2023 at 2:24 PM Joanne M. Wendell <JMW@morison.law> wrote:

> Avi:
>
>
> Specifically identify all discovery and issues you intend to raise with the magistrate.
>
>
> Joanne
>
>
> 
>
> ## MORISON LAW, LLP
>
> Joanne M. Wendell, Esq.
>
> Morison Law, LLP
>
> 3478 Buskirk Avenue • Suite 342
>
> Pleasant Hill • CA 94523
>
> t 925.937.9990 • f 925.937.3272

--

Avi Wagner

THE WAGNER FIRM

1925 Century Park East, Suite 2100

Los Angeles, CA 90067

avi@thewagnerfirm.com

310.491.7949 x1

# Exhibit I

 Gmail

Charissa Morningstar <charissa.morningstar@gmail.com>

---

## Request for Telephonic Conference in Case No. 2:23-cv-01322-SPG-MAR

**Charissa Morningstar** <charissa.morningstar@gmail.com>                     Tue, Aug 22, 2023 at 1:37 PM
To: MARChambers <MAR_Chambers@cacd.uscourts.gov>
Cc: Avi Wagner <avi@thewagnerfirm.com>, "Morison, William" <wcm@morison.law>, "Joanne M. Wendell" <jmw@morison.law>

Dear Magistrate Rocconi:

The parties in Oxnard Manor, LP v. Hallmark Specialty Insurance Company in Case No. 2:23-cv-01322-SPG-MAR are at an impasse on discovery issues. Plaintiff Oxnard Manor ("Oxnard") requests an informal conference prior to filing a motion to compel.

**The Dispute**

This is a dispute between insured Oxnard and insurer Hallmark Specialty Insurance Company ("Hallmark"). Oxnard has alleged causes of action arising from Hallmark's conduct with respect to a claim tendered by Oxnard under a long-term care organization liability policy issued by Hallmark. Oxnard has asserted the following causes of action: (1) Breach of Contract; (2) Breach of Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Unfair Business Practices; and (5) Unjust Enrichment/Restitution.

Hallmark has filed a motion for judgment on the pleadings as to causes of action (3) and (5).

Oxnard has served two sets of discovery on Hallmark and the parties' counsel have conferred on both sets, resolving a number of issues. There remain several interrogatories and requests for production for which Hallmark is unwilling to respond or produce responsive documents. These relate to claims manuals and requests pursuant to *Colonial Life & Accident Ins. Co. v. Superior Court*, (1982) 31 Cal.3d 785, which permits insureds to obtain discovery of similarly situated insurance claims to pursue a cause of action for a breach of the duty of good faith and fair dealing.

**The Parties' Positions**

Hallmark objects on a number of bases, but the two primary ones appear to be that (1) Hallmark believes that the bad faith claim is barred by the statute of limitations and these are not discoverable in relation to the other causes of action; and (2) for *Colonial Life* requests, it would be overly burdensome to seek out this information, as over 3,000 claims were made in this period and a page by page review would be necessary to determine the basis for the denial.

Oxnard's position is that (1) the Court has not ruled on the bad faith claim and so discovery is available and may be available for the claims manuals in the absence of the bad faith claim; and (2) the *Colonial Life* requests seek information about a subset of the 3,000 plus purported claims, which should be readily identified as responsive or not based on the denial.

The parties request a telephonic conference on these issues at one of the following three times: Friday, August 25 at 2:00 PM; or Monday, August 28 at 10:30 AM or 2:00 PM.

Sincerely,

Charissa Morningstar


--
The Wagner Firm
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

# Exhibit J



Charissa Morningstar <charissa.morningstar@gmail.com>

---

# Request for Telephonic Conference in Case No. 2:23-cv-01322-SPG-MAR

**MARChambers** <MAR_Chambers@cacd.uscourts.gov>                Fri, Aug 25, 2023 at 2:07 PM
To: Charissa Morningstar <charissa.morningstar@gmail.com>

Good afternoon,

The request has been received and still pending.

Thank you.



**VALERIE VELASCO**
COURTROOM DEPUTY TO THE HONORABLE MARGO A. ROCCONI
**UNITED STATES DISTRICT COURT**
CALIFORNIA CENTRAL DISTRICT COURT
255 East Temple Street
Los Angeles, CA 90012
Office: (213) 894-3589
Email: valerie_velasco@cacd.uscourts.gov

---

**From:** Charissa Morningstar <charissa.morningstar@gmail.com>
**Sent:** Tuesday, August 22, 2023 1:37 PM
**To:** MARChambers <MAR_Chambers@cacd.uscourts.gov>
**Cc:** Avi Wagner <avi@thewagnerfirm.com>; Morison, William <wcm@morison.law>; Joanne M. Wendell <jmw@morison.law>
**Subject:** Request for Telephonic Conference in Case No. 2:23-cv-01322-SPG-MAR

**CAUTION - EXTERNAL:**

[Quoted text hidden]

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# Exhibit K

## JUDGE SHERILYN PEACE GARNETT
## <u>SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET</u>

*Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.*
**The Court <u>ORDERS</u> the parties to make every effort to agree on dates.**

| Case No. 2:23-cv-01322-S ⊞ | Case Name: Oxnard Manor v. Hallmark Specialty Insurance | | |
|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | **Parties' Joint Date** mm/dd/yyyy | **Court Order** |
| Check one: ☑ Jury Trial or ☐ Court Trial ☐ Magistrate Judge (*Tuesday* at 8:30 a.m., within 12 months of Scheduling Conference) Estimated Duration: 7 Days | | 02/27/2024 | ☒ Jury Trial ☐ Court Trial 02/27/2024 |
| Final Pretrial Conference ("FPTC") [L.R. 16] **(Wednesday at 3:00 p.m., at least 18 days before trial)** | | 02/07/2024 | 02/07/2024 |
| **Event** [1] <u>Note</u>: Hearings shall be on **Wednesday** at 1:30pm Other dates can be any day of the week | **Weeks Before FPTC**[2] | **Parties' Joint Date** mm/dd/yyyy | **Court Order** |
| Last Date to <u>Hear</u> Motion to Amend Pleadings / Add Parties [Wednesday] | | 5/03/2023 | 05/03/2023 |
| Fact Discovery Cut-Off (No later than deadline for filing dispositive motion) | 18 | 10/04/2023 | 10/04/2023 |
| Expert Disclosure (Initial) | 16 | 10/18/2023 | 10/18/2023 |
| Expert Disclosure (Rebuttal) | 14 | 11/01/2023 | 11/01/2023 |
| Expert Discovery Cut-Off | 14[2] | 11/15/2023 | 11/15/2023 |
| Last Date to <u>Hear</u> Motions • Rule 56 Motion due at least 6 weeks before hearing; • Opposition due 2 weeks after motion is filed before hearing; • Reply due 1 week after Opposition is filed | 12 | 11/15/2023 | 11/15/2023 |
| Last Date to <u>Hear</u> *Daubert* Motions | 8 | 01/02/2024 | 01/03/2024 |
| Deadline to Complete Settlement Conference [L.R. 16-15] *Select* one: ☐ 1. Magistrate Judge *(with Court approval)* ☐ 2. Court's Mediation Panel ☑ 3. Private Mediation | 5 | 10/30/2023 | 10/30/2023 ☐ 1. Mag. J. ☐ 2. Panel ☒ 3. Private |
| **Trial Filings (first round)** • Motions *In Limine* (except *Daubert*) • Memoranda of Contentions of Fact and Law [L.R. 16-4] • Witness Lists [L.R. 16-5] • Joint Exhibit List [L.R. 16-6.1] • Joint Status Report Regarding Settlement • Proposed Findings of Fact and Conclusions of Law [L.R. 52] (court trial only) • Declarations containing Direct Testimony, if ordered (court trial only) ) | 4 | 1/30/2024 | 01/10/2024 |
| **Trial Filings (second round)** • Oppositions to Motions in Limine • Joint Proposed Final Pretrial Conference Order [L.R. 16-7] • Joint/Agreed Proposed Jury Instructions (jury trial only) • Disputed Proposed Jury Instructions (jury trial only) • Joint Proposed Verdict Forms (jury trial only) • Joint Proposed Statement of the Case (jury trial only) • Proposed Additional Voir Dire Questions, if any (jury trial only) • Evidentiary Objections to Declarations. of Direct Testimony (court trial only) | 2 | 2/13/2024 | 01/24/2024 |

---

[1] Once issued, this "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)4).

[2] The numbers below represent the Court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. Class Actions and ERISA cases may need to vary from the above.

# Exhibit L

Avi Wagner (No. 226688)
Jennifer N. Hinds (No. 301804)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 491-7949
Facsimile:   (310) 694-3967
Email:        avi@thewagnerfirm.com

*Attorneys for Plaintiff Oxnard Manor LP
dba Oxnard Manor Health Center*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Oxnard Manor LP dba Oxnard Manor Health Center, a California Limited Partnership,<br><br>            Plaintiff,<br><br>    vs.<br><br>Hallmark Specialty Insurance Company, an Oklahoma Corporation, and DOES 1-100,<br><br>            Defendant(s). | Case No.: 2:23-cv-01322-SPG-MAR (Removed from Los Angeles County Superior Court, Case No. 23STCV02077)<br><br>Hon. Sherilyn Peace Garnett<br>Magistrate Margo A. Rocconi<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION**<br><br>Date:  October 4, 2023<br>Time: 11:00 a.m.<br>Courtroom:  790<br><br>Discovery Cutoff: 10/4/23<br>Pre-Trial Conference: 2/7/24<br>Trial: 2/27/24 |

This Joint Stipulation is submitted by Plaintiff Oxnard Manor, LP ("Plaintiff" or "Oxnard") and Defendant Hallmark Specialty Insurance Company ("Hallmark" or "Defendant") pursuant to Local Rule 37-2 in connection with Plaintiff's Motion to Compel Hallmark's Further Responses to Interrogatories and Requests for Production. The parties have met and conferred pursuant to Local Rule 37-1, but have been unable to resolve the issues set forth below.

## I.    INTRODUCTORY STATEMENTS

### A.    Plaintiff's Introductory Statement

This is an insurance coverage dispute brought by insured Oxnard against insurer Hallmark.  Oxnard has alleged causes of action arising from Hallmark's conduct with respect to a claim tendered by Oxnard under a long-term care organization liability policy issued by Hallmark.  Oxnard has asserted the following causes of action: (1) Breach of Contract; (2) Breach of Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Unfair Business Practices; and (5) Unjust Enrichment/Restitution.  First Amended Complaint, Docket Entry ("D.E.") 32, attached hereto as Exhibit L to the Declaration of Avi Wagner ("Wagner Decl.").

The discovery subject to the instant Motion to Compel involves: (1) Oxnard's Interrogatories and Requests for Production, Set One, propounded on Hallmark on May 4, 2023 ("Set One"); and (2) Oxnard's Interrogatories and Requests for Production, Set Two ("Set Two"), propounded on Halmark on July 3, 2023.  Wagner Decl., ¶¶ 3, 12. Given the overlapping meet and confer efforts on the discovery, much of which pertains

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

to claims handling issues, and to conserve judicial resources, Oxnard waited until both sets were at issue to pursue a Motion to Compel.

### 1. Meet and Confer on Oxnard's Set One

Hallmark's initial responses to Set One were served by mail only on June 6, 2023. Wagner Decl., ¶ 4. On June 26, 2023, Oxnard counsel sent a meet and confer letter which specified Hallmark's deficient response and provided legal authorities requiring Hallmark to supplement said responses and requested a telephonic conference on these issues within 10 days of the date of the letter, pursuant to L.R. 37-1. *Id*. at ¶ 5. Hallmark's counsel failed to comply with this request. As a result, the parties first conferred telephonically on July 11, 2023, wherein Hallmark agreed to supplement certain responses. *Id*. at ¶¶ 6-7. This telephonic conference continued on July 12, 2023. *Id*.

During the July 11 call, Hallmark first raised its claim that certain discovery requests were not relevant because Hallmark believed that the bad faith cause of action was time-barred. *Id*. at ¶ 8. Hallmark counsel did not explain why this belief would excuse Hallmark from responding to discovery. On July 11, and 18, 2023 Oxnard counsel sent an e-mail summarizing what the parties had agreed to. *Id*. at ¶ 9. Hallmark has never disputed this summary. *Id*. at ¶ 10. Hallmark provided its supplemental responses on July 21, 2023 by mail. *Id*. at ¶ 11.

### 2. Meet and Confer on Oxnard's Set Two

Oxnard served its Set Two requests on July 3, 2023 and received Hallmark's

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

responses by mail only on August 11, 2023.  Wagner Decl., ¶¶ 12-13.  Oxnard sent a meet and confer email on August 15, 2023 which specified Hallmark's deficient response and provided legal authorities requiring Hallmark to supplement said responses and requested a telephonic conference on these issues within 7 days of the date of the e-mail.  *Id.* at ¶ 14.  The parties conferred telephonically on August 21, 2023, but were unable to resolve any issues.  *Id*. at ¶ 15.

During that call, Oxnard's counsel requested, but did not receive, Hallmark counsel's availability for a telephonic conference with Magistrate Rocconi prior to filing any motion to compel.  *Id*. at ¶ 16.  After Oxnard counsel made two further requests, Hallmark counsel provided its availability, and Oxnard's counsel promptly e-mailed Magistrate Rocconi's Courtroom Deputy ("CRD") on August 22, 2023 requesting a telephonic conference on August 25 or August 28.  *Id*. at ¶¶ 17-19, Ex. I.  Oxnard has received no further information on the request following an August 25, 2023 email stating that the request was still pending.  *Id*. at ¶¶ 20, 21; Ex. J.

## B.    Hallmark's Introductory Statement

INSERT HERE

## II.    LEGAL AUTHORITY

Federal Rules of Civil Procedure 37(a)(3)(B) provides:

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

(i) a deponent fails to answer a question asked under Rule 30 or 31;

3

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."

Here, Plaintiff brings the instant Motion under subparts (iii) and (iv) due to Defendant's failure to adequately respond to Interrogatories and Requests for Production propounded by Plaintiff.

## III.    DISPUTED ISSUES

### A.    Set One Interrogatories

**INTERROGATORY NO. 7:**

Describe in detail any neutral standards that you used to determine whether the DeSoto Claim is a covered "Claim" under the Policies.

**RESPONSE TO INTERROGATORY NO. 7:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds that this interrogatory is vague and ambiguous as to "neutral standards", invades the attorney-client privilege and the work product doctrine, seeks information previously disclosed, seeks information equally available to plaintiff, seeks information not relevant under FRE 401, is subject to FRE 403, and "your" as defined is overbroad and compound. It also is not sufficient in itself in that it requires reference to another document not attached. Subject to and without waiving its objections, Hallmark

4

responds as follows: Hallmark thoroughly compared the language of the Policy with the underlying complaint; Hallmark thoroughly investigated the corporate status and business relationships among and between the numerous defendants to determine whether each was an insured and if so, to what extent; Hallmark hired coverage counsel to provide advice; Hallmark provided Oxnard with a detailed coverage analysis based on all facts and law of which Hallmark was aware; Hallmark requested that Oxnard provide additional facts and information of which Oxnard thought Hallmark was not but should be aware.

### 1.    Plaintiffs' Contentions and Points and Authorities

Plaintiff is entitled to discovery of any non-privileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Hallmark's vague and nonspecific objections do not allow it to withhold discoverable information. Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n,* 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

relevant in considering admissibility.[1] But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).  Nor has Hallmark effectively shown that the use of the term "neutral standards" is so vague and ambiguous that it justifies a refusal to answer.  Hallmark has "an obligation to construe . . . [vague and ambiguous terms] in a reasonable manner." *Bos. v. ClubCorp USA, Inc.,* No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019); *In re Pioneer Corp.*, Case No. CV 18-4524 JAK (SSx), 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9, 2019) ("A responding party must apply a reasonable interpretation to a discovery request."). Finally, Hallmark's contention that the request "invades the attorney-client privilege" and/or work product doctrine without any further explanation, does not justify withholding discovery.  "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so.  Such bare, unsupported assertions are likewise insufficient to assert work product protection. *Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720 at *9 (E.D. Cal. June 5, 2012).

Hallmark's response neither identifies the neutral standards used nor states that it did not use any.  Evasive answers such as this "must be treated as a failure to disclose,

---

[1] Hallmark has since withdrawn its objection on the basis of FRE 403.  Wagner Decl., Ex. D.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

answer, or respond." Fed. R. Civ. P. 37, (a)(4). While Hallmark has listed a series of actions it took, it does not indicate whether it consider any of these "neutral standards...used to determine whether the *DeSoto* Claim is a covered claim".

## 2.    Plaintiff's Proposed Resolutions

Hallmark must identify the neutral standards it used or state that it used no neutral standards.

## 3.    Hallmark's Contentions and Points and Authorities

INSERT HERE

## 4.    Hallmark's Proposed Resolution

INSERT HERE

## INTERROGATORY NO. 10:

Identify any Claims Manuals governing coverage determinations under the Policies.

## RESPONSE TO INTERROGATORY NO.10:

Hallmark incorporates all general objections. Hallmark further objects on the grounds that this interrogatory seeks information not relevant under FRE 401, is subject to FRE 403, and "Identify" as defined is vague, ambiguous, burdensome, and does not apply (wholesalefashionsquare.com).

## 1.    Plaintiffs' Contentions and Points and Authorities

Plaintiff is entitled to discovery of any non-privileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

7

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

"Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.  Under California law, claims manuals are discoverable in insurance breach of contract and bad faith actions.  *Glenfed Dev. Corp. v. Superior Court*, 53 Cal.App.4th 1113, 1117-18 (Cal. Ct. App. 1997) ("it makes no sense to suggest that the book designed to serve as the instruction manual for the carrier's employees would be completely silent about policy terms"); *Hovsepyan v. GEICO Gen. Ins. Co*., No. 2:19-cv-00899-MCE-CKD, 2020 WL 2512403 at *5 (E.D. Cal. May 15, 2020).

Hallmark's vague and nonspecific objections do not allow it to withhold discoverable information. Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig*., 317 F.R.D. 562, 566 (D. Ariz. 2016).  Nor has Hallmark effectively shown that the use of the term "identify" is so vague and ambiguous that it justifies a refusal to answer.  Hallmark has "an obligation to construe . . . [vague and ambiguous terms] in a reasonable manner." *Boston v. ClubCorp USA, Inc*., Case No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019); *In re Pioneer Corp*., Case No. CV 18-4524 JAK (SSx), 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9, 2019) ("A responding

8

party must apply a reasonable interpretation to a discovery request.")

During the July 11, 2023 meet and confer call, Hallmark's counsel for the first time represented that she did not believe this request was relevant because she believed the bad faith cause of action was time-barred.  Wagner Decl., ¶ 8.  Hallmark provided no legal authority for the assertion that the claim was time barred until the parties conferred on Hallmark's Motion for Partial Judgment on the Pleadings on August 7, 2023.  Hallmark's refusal to produce discovery based on its belated assertion that the bad faith claim is time barred suffers from three fatal deficiencies.

First, as described *supra,* claims manuals are relevant and discoverable for insurance breach of contract claims.  Thus, even if Hallmark prevailed on its pending Motion, these claims manuals would still be still discoverable.

Second, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until *six months* after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39.  This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream.  Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Finally, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed.

9

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".).  A court may stay discovery only where the party resisting discovery makes demonstrates that an exception is warranted.  *Cf. Wood v. McEwen,* 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  Here, Hallmark has not requested a stay.  Nor could it show that good cause exists for one. Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

### 2.      Plaintiff's Proposed Resolutions

Hallmark has provided no cognizable justification for withholding this discoverable information; the Court should order Hallmark to respond.

### 3.      Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4.      Hallmarks' Proposed Resolution

INSERT HERE

## B.      Set One Requests for Production

**REQUEST NO 10:**

All documents or communications, including, but not limited to, Claims Manuals which were, or should have been, utilized by you at the time Plaintiff submitted its request for coverage for the DeSoto Claim, including all additions, revisions, deletions,

10

or other changes that have been made to the manuals since that time.

**RESPONSE TO REQUEST NO. 10:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request is vague, ambiguous, and overbroad, invades the attorney-client privilege and the work product doctrine, violates Federal Rule of Civil Procedure 26(b)(3)(A), seeks documents not relevant under FRE 401, is subject to FRE 403, and "your" as defined is overbroad and compound.

### 1.    Plaintiffs' Contentions and Points and Authorities

Plaintiff is entitled to discovery of any non-privileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*  Under California law, claims manuals are discoverable in insurance breach of contract and bad faith actions.  *Glenfed Dev. Corp. v. Superior Court*, 53 Cal.App.4th 1113, 1117-18 (Cal. Ct. App. 1997) ("it makes no sense to suggest that the book designed to serve as the instruction manual for the carrier's employees would be completely silent about policy terms"); *Hovsepyan v. GEICO Gen. Ins. Co*., No. 2:19-cv-00899-MCE-CKD, 2020 WL 2512403 at *5 (E.D. Cal. May 15, 2020).

Hallmark's vague and nonspecific objections do not allow it to withhold discoverable information. Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate,

11

generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).  Nor has Hallmark effectively shown that the use of the term "identify" is so vague and ambiguous that it justifies a refusal to answer.  Hallmark has "an obligation to construe . . . [vague and ambiguous terms] in a reasonable manner." *Boston v. ClubCorp USA, Inc*., Case No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019); *In re Pioneer Corp*., Case No. CV 18-4524 JAK (SSx), 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9, 2019) ("A responding party must apply a reasonable interpretation to a discovery request.")   Finally, Hallmark's contention that the request "invades the attorney-client privilege" and/or work product doctrine without any further explanation, does not justify withholding discovery.  "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs*., 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022).  Hallmark has made no attempt to do so.  Such bare, unsupported assertions are likewise insufficient to assert work product protection. *Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720 at *9 (E.D. Cal. June 5, 2012).

During the July 11, 2023 meet and confer call, Hallmark's counsel for the first time represented that she did not believe this request was relevant because she believed

12

the bad faith cause of action was time-barred.  Wagner Decl., ¶ 8.  Hallmark provided no legal authority for the assertion that the claim was time barred until the parties conferred on Hallmark's Motion for Partial Judgment on the Pleadings on August 7, 2023.  Hallmark's refusal to produce discovery based on its belated assertion that the bad faith claim is time barred suffers from three fatal deficiencies.

First, as described *supra,* claims manuals are relevant and discoverable for insurance breach of contract claims.  Thus, even if Hallmark prevailed on its pending Motion, these claims manuals would still be still discoverable.

Second, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until *six months* after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39.  This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream.  Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Finally, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A*., 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".).  A court may stay discovery only where the party resisting discovery

13

makes demonstrates that an exception is warranted. *Cf. Wood v. McEwen,* 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief."). Here, Hallmark has not requested a stay. Nor could it show that good cause exists for one. Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

Plaintiff is entitled to discovery of any non-privileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Under California law, claims manuals are discoverable in insurance breach of contract and bad faith actions. *Glenfed Dev. Corp. v. Superior Court*, 53 Cal.App.4th 1113, 1117-18 (Cal. Ct. App. 1997) ("it makes no sense to suggest that the book designed to serve as the instruction manual for the carrier's employees would be completely silent about policy terms"); *Hovsepyan v. GEICO Gen. Ins. Co*., No. 2:19-cv-00899-MCE-CKD, 2020 WL 2512403 at *5 (E.D. Cal. May 15, 2020).

Hallmark's vague and nonspecific objections do not allow it to withhold discoverable information. Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.") Invoking FRE 401 is equally meritless. FRE 401 considers what materials are

relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." In re Bard IVC Bard Filters Prods. Liab. Litig., 317 F.R.D. 562, 566 (D. Ariz. 2016).  Nor has Hallmark effectively shown that the use of the term "identify" is so vague and ambiguous that it justifies a refusal to answer.  Hallmark has "an obligation to construe . . . [vague and ambiguous terms] in a reasonable manner." Boston v. ClubCorp USA, Inc., Case No. CV 18-3746 PSG (SS), 2019 WL 1873293, at *2 (C.D. Cal. Mar. 11, 2019); In re Pioneer Corp., Case No. CV 18-4524 JAK (SSx), 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9, 2019) ("A responding party must apply a reasonable interpretation to a discovery request.")

During the July 11, 2023 meet and confer call, Hallmark's counsel for the first time represented that she did not believe this request was relevant because she believed the bad faith cause of action was time-barred.  Wagner Decl., ¶ 8.  Hallmark provided no legal authority for the assertion that the claim was time barred until the parties conferred on Hallmark's Motion for Partial Judgment on the Pleadings on August 7, 2023.  Hallmark's refusal to produce discovery based on its belated assertion that the bad faith claim is time barred suffers from three fatal deficiencies.

First, as described *supra*, claims manuals are relevant and discoverable for insurance breach of contract claims.  Thus, even if Hallmark prevailed on its pending Motion, these claims manuals would still be still discoverable.

Second, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until six months after the case was

removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39. This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream. Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Finally, the filing of a dispositive motion does excuse a party from responding to discovery. *See Skellerup Indus. Ltd. v. City of L.*A., 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".). A court may stay discovery only where the party resisting discovery makes demonstrates that an exception is warranted. *Cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief."). Here, Hallmark has not requested a stay. Nor could it show that good cause exists for one. Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

### 2.    Plaintiff's Proposed Resolutions

Hallmark has provided no cognizable justification for withholding these discoverable documents; the Court should order Hallmark to produce them.

### 3.    Hallmark's Contentions and Points and Authorities

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

INSERT HERE

### 4.    Hallmark's Proposed Resolution

INSERT HERE

**REQUEST NO. 20:**

The complete underwriting manuals and procedures manuals, policy statements, or memoranda that set forth company practices or policies regarding the underwriting of the Policies from June 1, 2017 through the present, including all additions, revisions, deletions, or other changes that have been made in these documents.

**RESPONSE TO REQUEST NO. 20:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds that this request seeks documents not relevant under FRE 401, is subject to FRE 403, violates Federal Rule of Civil Procedure 26(b)(3)(A), is harassing and annoying, seeks information that is not relevant to the subject matter of the action or proportional to the needs of the case, and exceeds the bounds of the legitimate purposes of discovery.

### 1.    Plaintiffs' Contentions and Points and Authorities

Plaintiff is entitled to discovery of any non-privileged matter that is relevant to any claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Underwriting manuals are relevant to and discoverable in insurance breach of contract and bad faith actions. *Phillips v. Clark Cty. Sch. Dist.*, 2012 U.S. Dist. LEXIS

5309, *11-14 (D. Nev. Jan. 18, 2012); *GBTI, Inc. v. Ins. Co. of State of Pa.*, No. 1:09cv1173 LJO DLB, 2010 WL 2942631, at *4 (E.D. Cal. July 23, 2010) (finding underwriting manuals discoverable and noting that, "[a]t the discovery stage, the Court does not decide whether parol evidence will or will not be admitted to address interpretation of the policy").

Hallmark's vague and nonspecific objections do not allow it to withhold discoverable information. Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.") Invoking FRE 401 is equally meritless. FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016). Finally, Hallmark objects that the request "is harassing and annoying, seeks information that is not relevant to the subject matter of the action or proportional to the needs of the case, and exceeds the bounds of the legitimate purposes of discovery." These general objections, lacking specific reasons describing their basis, do not justify a failure to respond to the request. *In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litigation*, 2012 WL 10450139, at *4 (C.D. Cal., June 7, 2012).

Finally, while Hallmark has not yet raised this argument in relation to this

18

request, Oxnard assumes that it will argue that this request is not relevant because the bad faith cause of action is time barred, and subject to a Motion for Partial Judgment on the Pleadings.

.  Any refusal by Hallmark to produce discovery based on its belated assertion that the bad faith claim is time barred suffers from two fatal deficiencies.

First, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until six months after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39.  This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream.  Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Second, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".).  A court may stay discovery only where the party resisting discovery makes demonstrates that an exception is warranted.  *Cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  Here,

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

Hallmark has not requested a stay.  Nor could it show that good cause exists for one. Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

**2.      Plaintiff's Proposed Resolutions**

Hallmark has provided no cognizable justification for withholding these discoverable documents; the Court should order Hallmark to produce them.

**3.      Hallmark's Contentions and Points and Authorities**

INSERT HERE

**4.      Hallmark's Proposed Resolution**

INSERT HERE

**C.      Set Two Interrogatories**

**INTERROGATORY NO. 19:**

Identify the names, addresses, telephone numbers, and e-mail addresses of all other insured long-term care facilities, skilled nursing facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claims Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

**RESPONSE TO INTERROGATORY NO. 19:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds that this interrogatory exceeds the permissible number of interrogatories,

20

invades the work product doctrine, requires a compilation, violates Federal Rule of Civil Procedure ("FRCP") 26(b)(l) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under Federal Rule of Evidence ("FRE") 401 (information that has no tendency to make more or less probable a fact of consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory, constitutional or common law privilege including, without limitation, third parties' right to privacy, even if the information is responsive to the interrogatory and not otherwise protected from discovery, is unduly burdensome, annoying, harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000 was incurred in DeSoto for defense and indemnity (settlement). More than that amount would be required to be spent, over the course of a sum number of work years, in order to respond to this interrogatory. There are approximately three thousand claims opened during the stated time period (the number is materially higher if the interrogatory seeks information from files that were opened earlier but were still pending during that time period. These sorts of claim files are voluminous, often exceeding one thousand pages

21

and sometimes a multiple of that number. Each claim file would need to be manually reviewed page-by-page to determine whether it fit the requested criteria. Following that review, each page of each such claim file would need to be assiduously redacted given that the vast majority of the information in any such file would implicate, among other things, the privacy rights of third parties, including those under HIPAA. Given the privacy interests at stake, and the potential liability of disclosing third-party information subject to privacy privileges, an attorney would then need to review each and every page to ensure that the redactions were accurate and complete. The cost of conducting the review outlined above far exceeds the amount at issue. In addition, the information requested is of no importance to resolving the issues in this case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons.

## 1.    Plaintiffs' Contentions and Points and Authorities

Hallmark has made no attempt to support most of its objections, and so they may be discarded.  Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are

relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).   Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege."   *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022).  Hallmark has made no attempt to do so, much less one that factors in the protections afforded under the stipulated protective order in this action. Finally, with respect to the permissible number of interrogatories. Hallmark has failed to specify what number of interrogatories they contend have been propounded. Irrespective of the number already propounded, good cause exists to exceed 35 interrogatories, as Hallmark has not produced any documents or information showing the standards it used to evaluate the *DeSoto* Claim.  The only objections that Hallmark attempts to substantiate are those with respect to burden and proportionality.  But this attempt fails as well.  Hallmark grossly overstates both the burden and underestimates the value in proportion to the case.

Hallmark contends that the interrogatory is burdensome as it would take a "number of work years" to produce the requested information because "over 3,000

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

claims" were made in the relevant time period.  The total number of claims is irrelevant. The interrogatory seeks information *only* for insureds who had their claims *denied* on a single specified basis. Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for many claims the answer will be no), and the contents of the denial. Hallmark has refused to take even this initial step.  Moreover, once the number and identity of insureds is determined, Hallmark has failed to explain how providing contact information would be burdensome.

Once the contact information is produced, Oxnard may seek the Court's permission to contact the insureds to grant or deny access to their claims files.  Courts regularly grant requests these requests. *Colonial Life Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785 (Cal. 1982); *J M Assoc. v. National Union Fire Ins. Co*., No. 06-CV-0903-W (JMA) (S.D. Cal. Mar. 4, 2008); *Shirley v. Allstate Ins. Co*., Case No.: 18CV994 AJB (BGS), 2019 WL 3208000 at *1, *3 (S.D. Cal. July 16, 2019) ("[A] defendant insurance company can be compelled to provide the names and addresses of insureds whose claim files are likely to provide information relevant to the plaintiff's claim despite [CIIPPA's] limitations on an insurer's disclosure of information about its insureds."); *A-l Transmission Automotive Tech. Inc. v. AMCO Ins. Co*., No. 2:10-cv-08496-RSWL-SS (C.D. Cal. Nov. 28, 2011) (including the protective order describing the means by which plaintiff may communicate with other insureds).  Hallmark has

24

failed to support its claim that reviewing its denials and producing responsive information would be overly burdensome.

Nor has Hallmark sufficiently shown that the Interrogatory is not proportional to the needs of the case. Hallmark contends that the requested information is "of no importance" to resolving the case. Not so. Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern and practice of bad faith conduct. FAC, ¶¶ 67-72, 88-102. Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action. Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002). Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its bad faith cause of action. Any award may also include six figures in prejudgment interest. Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

Hallmark has previously contended that it need not produce this information because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action. Hallmark's refusal to produce discovery based on its belated assertion that the bad faith claim is time barred suffers from two fatal deficiencies.

First, Hallmark apparently believes that the complaint contains a fundamental

Case 2:23-cv-01322-SPG-MAR   Document 43-1   Filed 08/31/23   Page 82 of 122   Page ID #:1010

facial defect that entitles it to judgment, yet waited until six months after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39.   This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream. Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Second, the filing of a dispositive motion does excuse a party from responding to discovery. *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".).  A court may stay discovery only where the party resisting discovery makes demonstrates that an exception is warranted.  *Cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  Here, Hallmark has not requested a stay.  Nor could it show that good cause exists for one. Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

### 2.      Plaintiff's Proposed Resolutions

Hallmark has provided no cognizable justification for withholding this discoverable information; the Court should order Hallmark to produce it.

26

### 3. Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4. Hallmark's Proposed Resolution

INSERT HERE

**INTERROGATORY NO. 20:**

Identify the names, addresses, telephone numbers, and e-mail addresses of all individuals who evaluated and/or investigated claims made by long-term care facilities assisted living facilities, skilled nursing facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claims Hallmark sought to, or did deny coverage for on the basis that the claim alleged against the insureds is related to claim made prior to the inception of the applicable policy.

**RESPONSE TO INTERROGATORY NO. 20:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds that this interrogatory exceeds the permissible number of interrogatories, invades the work product doctrine, requires a compilation, violates Federal Rule of Civil Procedure ("FRCP") 26(b)(l) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks

information not relevant under Federal Rule of Evidence ("FRE") 401 (information that has no tendency to make more or less probable a fact of consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory, constitutional or common law privilege including, without limitation, third parties' right to privacy, even if the information is responsive to the interrogatory and not otherwise protected from discovery, is unduly burdensome, annoying, harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000 was incurred in DeSoto for defense and indemnity (settlement). More than that amount would be required to be spent, over the course of a sum number of work years, in order to respond to this interrogatory. There are approximately three thousand claims opened during the stated time period (the number is materially higher if the interrogatory seeks information from files that were opened earlier but were still pending during that time period. These sorts of claim files are voluminous, often exceeding one thousand pages and sometimes a multiple of that number. Each claim file would need to be manually reviewed page-by-page to determine whether it fit the requested criteria. Following that review, each page of each such claim file would need to be assiduously redacted given that the vast majority of the information in any such file would implicate, among other things, the privacy rights of third parties, including those under HIPAA. Given the privacy interests at stake, and the potential liability of disclosing third-party

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

information subject to privacy privileges, an attorney would then need to review each and every page to ensure that the redactions were accurate and complete. The cost of conducting the review outlined above far exceeds the amount at issue. In addition, the information requested is of no importance to resolving the issues in this case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons.

## 1. Plaintiffs' Contentions and Points and Authorities

Hallmark has made no attempt to support most of its objections, and so they may be discarded. Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.") Invoking FRE 401 is equally meritless. FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016). Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is

29

insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so, much less one that factors in the protections afforded under the stipulated protective order in this action. Finally, with respect to the permissible number of interrogatories. Hallmark has failed to specify what number of interrogatories they contend have been propounded. Irrespective of the number already propounded, good cause exists to exceed 35 interrogatories, as Hallmark has not produced any documents or information showing the standards it used to evaluate the DeSoto Claim.

The only objections that Hallmark attempts to substantiate are those with respect to burden and proportionality.  But this attempt fails as well.  Hallmark grossly overstates both the burden and underestimates the value in proportion to the case.

Hallmark contends that the interrogatory is burdensome as it would take a "number of work years" to produce the requested information because "over 3,000 claims" were made in the relevant time period.  The total number of claims is irrelevant. The interrogatory seeks information *only* for individuals who investigated or evaluated claims whose denial was based on the purported interrelation of claims. Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

many claims the answer will be no), and the contents of the denial. Hallmark has refused to take even this initial step.  Crucially, if Hallmark provides the information responsive to Interrogatory 19, there would be a limited additional burden to respond to this request.  Hallmark would not need to review "over 3,000" claims, but rather just the claims responsive to Interrogatory 19, which is likely to be a much smaller number. Finally, once the number and identity of individuals is determined, Hallmark has failed to explain how providing contact information would be burdensome.  Hallmark has failed to support its claim that reviewing its denials and producing responsive information would be overly burdensome.

Nor has Hallmark sufficiently shown that the Interrogatory is not proportional to the needs of the case.  Hallmark contends that the requested information is "of no importance" to resolving the case.  Not so.  Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern of bad faith conduct.  FAC, ¶¶ 67-72, 88-102.  Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action.  Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded. *Amadeo v. Principal Mut. Life Ins. Co*., 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

Hallmark has previously contended that it need not produce this information because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action.  Hallmark's refusal to produce discoverable documents based on its belated assertion that the bad faith claim is time barred suffers from two fatal deficiencies.

First, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until six months after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39.  This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream. Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Second, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".).  A court may stay discovery only where the party resisting discovery makes demonstrates that an exception is warranted.  *Cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  Here,

Hallmark has not requested a stay.  Nor could it show one is appropriate, as the conflict is a result of Oxnard's own dilatory conduct.

### 2.      Plaintiff's Proposed Resolutions

Hallmark has provided no cognizable justification for withholding this discoverable information; the Court should order Hallmark to produce it.

### 3.      Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4.      Hallmark's Proposed Resolution

INSERT HERE

### D.      Set Two Requests for Production

**REQUEST NO. 29:**

A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insureds is related to a claim made prior to the inception of the applicable policy.

**RESPONSE TO REQUEST NO. 29:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request invades the attorney-client privilege an work product doctrine, violates Federal Rule of Civil Procedure 26(b )(3)(A), seek information previously disclosed, seeks information equally available to plaintiff violates Federal

33

Rule of Civil Procedure ("FRCP") 26(b )(1) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under Federal Rule of Evidence ("FRE") 401 (the information that has no tendency to make more or less probable a fact or consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory, constitutional or common law privilege, including without limitation, third parties' right to privacy and HIPAA, is unduly burdensome annoying, harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000 was incurred in DeSoto for defense and indemnity (settlement). More than that amount would be required to be spent, over the course of a sum number of work years, in order to respond to this document request. There are approximately three thousand claims opened during the stated time period (the number is materially higher if the document request seeks information from files that were opened earlier but were still pending during that time period. These sorts of claim files are voluminous, often exceeding one thousand pages and sometimes a multiple of that number. Each claim file would need to be manually reviewed page-by-page to determine whether it fit the requested criteria.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

Following that review, each page of each such claim file would need to be assiduously redacted given that the vast majority of the information in any such file would implicate, among other things, the privacy rights of third parties, including those under HIPAA. Given the privacy interests at stake, and the potential liability of disclosing third-party information subject to privacy privileges, an attorney would then need to review each and every page to ensure that the redactions were accurate and complete. The cost of conducting the review outlined above far exceeds the amount at issue. In addition, the information requested is of no importance to resolving the issues in this case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons. Subject to and without waiving the foregoing, Hallmark has produced responsive documents in regard to facilities owned by Schlomo [sic] Rechnitz.

1.    **Plaintiffs' Contentions and Points and Authorities**

Hallmark has made no attempt to support most of its objections, and so they may be discarded.  Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are

relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016). Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so, much less one that factors in the protections afforded under the stipulated protective order in this action.

The only objections that Hallmark attempts to substantiate are those with respect to burden and proportionality. But this attempt fails as well. Hallmark grossly overstates both the burden and underestimates the value in proportion to the case.

Hallmark contends that the interrogatory is burdensome as it would take a "number of work years" to produce the requested documents because "over 3,000 claims" were made in the relevant time period. The total number of claims is irrelevant. The interrogatory seeks claims files only for claims that satisfy both conditions: (1) claim was denied; and (2) the denial was based on the claim's purported relation to a claim first made prior to the policy period. Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for many claims the answer will be no), and the contents of the denial.[2]  Hallmark has refused to take even this initial step. It is thus impossible to determine whether the request is actually burdensome.  Moreover, when reviewing the denials, Hallmark can determine whether it is responsive to RFP 29-33 in one review by recording the bases of the denial.  Thus, the time spent responding to RFP 29 can also identify the files responsive to RFPs 30-33, greatly decreasing the burden of each Request. Hallmark must perform an initial review to determine how many claims files are responsive to the request.

Nor has Hallmark sufficiently shown that the RFP is not proportional to the needs of the case.  Hallmark contends that the requested information is "of no importance" to resolving the case.  Not so.  Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern and practice of bad faith conduct.  FAC, ¶¶ 67-72, 88-102.  Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action. *Colonial Life Accident Ins. Co. v. Superior Court*, 31 Cal.3d 785 (Cal. 1982).  Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in

---

[2] Hallmark does not contend that its denials of other such claims are issued in a format that would render it cumbersome to determine the basis for denial.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

litigating this action if it prevails on its bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

Hallmark has previously contended that it need not produce this information because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action.  Hallmark's refusal to produce discoverable documents based on its belated assertion that the bad faith claim is time barred suffers from two fatal deficiencies.

First, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until six months after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39.  This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream.  Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Second, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A*., 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".).  A court may stay discovery only where the party resisting discovery

makes demonstrates that an exception is warranted.  *Cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  Here, Hallmark has not requested a stay.  Nor could it show one is appropriate, as the conflict is a result of Oxnard's own dilatory conduct in pursuing an argument that is plainly wrong.

### 2.    Plaintiff's Proposed Resolutions

Hallmark must conduct a review of the denials of the claims files to determine how many responsive files exist and produce responsive documents.

### 3.    Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4.    Hallmark's Proposed Resolution

INSERT HERE

**REQUEST NO. 30:**

A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the claim alleged against the insured did not allege an "occurrence" within the applicable policy because it alleged knowing, conscious purposeful, fraudulent, malicious, and/or oppressive conduct by the insured.

**RESPONSE TO REQUEST NO. 30:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request invades the attorney-client privilege an work product doctrine, violates Federal Rule of Civil Procedure 26(b )(3)(A), seek information previously disclosed, seeks information equally available to plaintiff violates Federal Rule of Civil Procedure ("FRCP") 26(b )(1) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under Federal Rule of Evidence ("FRE") 401 (the information that has no tendency to make more or less probable a fact or

consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory, constitutional or common law privilege, including without limitation, third parties' right to privacy and HIPAA, is unduly burdensome annoying, harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000 was incurred in DeSoto for defense and indemnity (settlement). More than that amount would be required to be spent, over the course of a sum number of work years, in order to respond to this document request. There are approximately three thousand claims

40

opened during the stated time period (the number is materially higher if the document request seeks information from files that were opened earlier but were still pending during that time period. These sorts of claim files are voluminous, often exceeding one thousand pages and sometimes a multiple of that number. Each claim file would need to be manually reviewed page-by-page to determine whether it fit the requested criteria. Following that review, each page of each such claim file would need to be assiduously redacted given that the vast majority of the information in any such file would implicate, among other things, the privacy rights of third parties, including those under HIPAA. Given the privacy interests at stake, and the potential liability of disclosing third-party information subject to privacy privileges, an attorney would then need to review each and every page to ensure that the redactions were accurate and complete. The cost of conducting the review outlined above far exceeds the amount at issue. In addition, the information requested is of no importance to resolving the issues in this case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons. Subject to and without waiving the foregoing, Hallmark has produced responsive documents in regard to facilities owned by Schlomo [sic] Rechnitz.

### 1.    Plaintiffs' Contentions and Points and Authorities

Hallmark has made no attempt to support most of its objections, and so they may

be discarded.   Hallmark's general objections, which it incorporates by reference,
provide no support for the objection, and thus have no effect. *Walker v. Lakewood
Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate,
generalized objections are inadequate and tantamount to not making any objection at
all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are
relevant in considering admissibility. But "relevancy for purposes of discovery is
broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab.
Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).   Likewise, Hallmark's non-specific
objection based on its assertion that the interrogatory "seeks confidential, proprietary,
business or commercial information that is exempt from disclosure under any
applicable evidentiary, statutory, constitutional or common law privilege" is
insufficient to resist responding to this request. "[T]he party asserting a privilege to
resist discovery must show that the requested disclosure falls within the scope of the
asserted privilege."  *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2
(N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so, much less one that
factors in the protections afforded under the stipulated protective order in this action.

The only objections that Hallmark attempts to substantiate are those with respect
to burden and proportionality.  But this attempt fails as well.  Hallmark grossly
overstates both the burden and underestimates the value of the discoverable documents
in proportion to the case.

Hallmark contends that the interrogatory is burdensome as it would take a

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

"number of work years" to produce the requested documents because "over 3,000 claims" were made in the relevant time period.  The total number of claims is irrelevant.  The interrogatory seeks claims files only for claims that satisfy both conditions: (1) claim was denied; (2) the claim was denied on the basis that the claim alleged against the insured did not allege an "occurrence" within the applicable policy because it alleged knowing, conscious purposeful, fraudulent, malicious, and/or oppressive conduct by the insured.  Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for many claims the answer will be no), and the contents of the denial. Hallmark has refused to take even this initial step. It is thus impossible to determine whether the request is actually burdensome.  Moreover, when reviewing the denials, Hallmark can determine whether each is responsive to RFP 29-33 in one review by recording the bases of the denial.  Thus, the time spent responding to RFP 29 can also identify the files responsive to RFPs 30-33, greatly decreasing the burden of each Request. Hallmark must perform an initial review to determine how many claims files are responsive to the request.

Nor has Hallmark sufficiently shown that the RFP is not proportional to the needs of the case.  Hallmark contends that the requested documents are "of no importance" to resolving the case.  Not so.  Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

of bad faith conduct.  FAC, ¶¶ 67-72, 88-102.  Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action.  Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

Hallmark has previously contended that it need not produce these documents because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action.  This does not permit Hallmark to resist discovery.   Generally, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".); *cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  To date, Hallmark has not requested a stay. Nor could it show that good cause exists for one.  Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of

Hallmark's own dilatory conduct.

### 2. Plaintiff's Proposed Resolutions

Hallmark must conduct a review of the denials of the claims files to determine how many responsive files exist and produce responsive documents.

### 3. Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4. Hallmark's Proposed Resolution

INSERT HERE

**REQUEST NO. 31:**

A true and correct copy of the claims files of all other insured long-term care facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that California Insurance Code section 533 precluded coverage of the claim.

**RESPONSE TO REQUEST NO. 31:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request invades the attorney-client privilege an work product doctrine, violates Federal Rule of Civil Procedure 26(b )(3)(A), seek information previously disclosed, seeks information equally available to plaintiff violates Federal Rule of Civil Procedure ("FRCP") 26(b )(1) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action

the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under Federal Rule of Evidence ("FRE") 401 (the information that has no tendency to make more or less probable a fact or consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory, constitutional or common law privilege, including without limitation, third parties' right to privacy and HIPAA, is unduly burdensome annoying, harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000 was incurred in DeSoto for defense and indemnity (settlement). More than that amount would be required to be spent, over the course of a sum number of work years, in order to respond to this document request. There are approximately three thousand claims opened during the stated time period (the number is materially higher if the document request seeks information from files that were opened earlier but were still pending during that time period. These sorts of claim files are voluminous, often exceeding one thousand pages and sometimes a multiple of that number. Each claim file would need to be manually reviewed page-by-page to determine whether it fit the requested criteria. Following that review, each page of each such claim file would need to be assiduously

46

redacted given that the vast majority of the information in any such file would implicate, among other things, the privacy rights of third parties, including those under HIPAA. Given the privacy interests at stake, and the potential liability of disclosing third-party information subject to privacy privileges, an attorney would then need to review each and every page to ensure that the redactions were accurate and complete. The cost of conducting the review outlined above far exceeds the amount at issue. In addition, the information requested is of no importance to resolving the issues in this case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons. Subject to and without waiving the foregoing, Hallmark has produced responsive documents in regard to facilities owned by Schlomo Rechnitz.

## 1.    Plaintiffs' Contentions and Points and Authorities

Hallmark has made no attempt to support most of its objections, and so they may be discarded.   Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is

broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016). Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so, much less one that factors in the protections afforded under the stipulated protective order in this action.

The only objections that Hallmark attempts to substantiate are those with respect to burden and proportionality. But this attempt fails as well. Hallmark grossly overstates both the burden and underestimates the value of the discoverable documents in proportion to the case.

Hallmark contends that the interrogatory is burdensome as it would take a "number of work years" to produce the requested documents because "over 3,000 claims" were made in the relevant time period. The total number of claims is irrelevant. The interrogatory seeks claims files only for claims that satisfy both conditions: (1) claim was denied; (2) the claim was denied on the basis that California Insurance Code section 533 precluded coverage of the claim. Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed

48

page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for many claims the answer will be no), and the contents of the denial. Hallmark has refused to take even this initial step. It is thus impossible to determine whether the request is actually burdensome. Moreover, when reviewing the denials, Hallmark can determine whether each is responsive to RFP 29-33 in one review by recording the bases of the denial. Thus, the time spent responding to RFP 29 can also identify the files responsive to RFPs 30-33, greatly decreasing the burden of each Request. Hallmark must perform an initial review to determine how many claims files are responsive to the request.

Nor has Hallmark sufficiently shown that the RFP is not proportional to the needs of the case.  Hallmark contends that the requested documents are "of no importance" to resolving the case.  Not so.  Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern of bad faith conduct.  FAC, ¶¶ 67-72, 88-102.  Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action.  Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded. *Amadeo v. Principal Mut. Life Ins. Co*., 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

Hallmark has previously contended that it need not produce these documents because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action.  This does not permit Hallmark to resist discovery.   Generally, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".); *cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  To date, Hallmark has not requested a stay.  Nor could it show that good cause exists for one.  Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

### 2.    Plaintiff's Proposed Resolutions

Hallmark must conduct a review of the denials of the claims files to determine how many responsive files exist and produce responsive documents.

### 3.    Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4.    Hallmark's Proposed Resolution

INSERT HERE

50

**REQUEST NO. 32:**

A true and correct copy of the claims files of all other insured long-term care facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the insured failed to disclose, concealed, or misrepresent facts that were material to underwriting the Hallmark policy.

**RESPONSE TO REQUEST NO. 32:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request invades the attorney-client privilege an work product doctrine, violates Federal Rule of Civil Procedure 26(b )(3)(A), seek information previously disclosed, seeks information equally available to plaintiff violates Federal Rule of Civil Procedure ("FRCP") 26(b )(1) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under Federal Rule of Evidence ("FRE") 401 (the information that has no tendency to make more or less probable a fact or consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable

evidentiary, statutory, constitutional or common law privilege, including without

limitation, third parties' right to privacy and HIPAA, is unduly burdensome annoying,

harassing, and overly broad, and exceeds the bounds of the legitimate purposes of

discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000

was incurred in DeSoto for defense and indemnity (settlement). More than that amount

would be required to be spent, over the course of a sum number of work years, in order

to respond to this document request. There are approximately three thousand claims

opened during the stated time period (the number is materially higher if the document

request seeks information from files that were opened earlier but were still pending

during that time period. These sorts of claim files are voluminous, often exceeding one

thousand pages and sometimes a multiple of that number. Each claim file would need

to be manually reviewed page-by-page to determine whether it fit the requested criteria.

Following that review, each page of each such claim file would need to be assiduously

redacted given that the vast majority of the information in any such file would

implicate, among other things, the privacy rights of third parties, including those under

HIPAA. Given the privacy interests at stake, and the potential liability of disclosing

third-party information subject to privacy privileges, an attorney would then need to

review each and every page to ensure that the redactions were accurate and complete.

The cost of conducting the review outlined above far exceeds the amount at issue. In

addition, the information requested is of no importance to resolving the issues in this

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons. Subject to and without waiving the foregoing, Hallmark has produced responsive documents in regard to facilities owned by Schlomo Rechnitz.

### 1.    Plaintiffs' Contentions and Points and Authorities

Hallmark has made no attempt to support most of its objections, and so they may be discarded.  Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).  Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the

53

asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so, much less one that factors in the protections afforded under the stipulated protective order in this action.

The only objections that Hallmark attempts to substantiate are those with respect to burden and proportionality.  But this attempt fails as well.  Hallmark grossly overstates both the burden and underestimates the value of the discoverable documents in proportion to the case.

Hallmark contends that the interrogatory is burdensome as it would take a "number of work years" to produce the requested documents because "over 3,000 claims" were made in the relevant time period.  The total number of claims is irrelevant. The interrogatory seeks claims files only for claims that satisfy both conditions: (1) claim was denied; (2) the claim was denied on the basis that the insured failed to disclose, concealed, or misrepresent facts that were material to underwriting the Hallmark policy.

. Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for many claims the answer will be no), and the contents of the denial. Hallmark has refused to take even this initial step. It is thus impossible to determine whether the request is actually burdensome.  Moreover, when reviewing the denials, Hallmark can determine whether each is responsive to RFP 29-33 in one review by recording the

bases of the denial.  Thus, the time spent responding to RFP 29 can also identify the files responsive to RFPs 20-33, greatly decreasing the burden of each Request. Hallmark must perform an initial review to determine how many claims files are responsive to the request.

Nor has Hallmark sufficiently shown that the RFP is not proportional to the needs of the case.  Hallmark contends that the requested documents are "of no importance" to resolving the case.  Not so.  Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern of bad faith conduct.  FAC, ¶¶ 67-72, 88-102.  Hallmark's conduct with respect to its treatment of other claims is relevant to proving both causes of action.  Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded. *Amadeo v. Principal Mut. Life Ins. Co*., 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

Hallmark has previously contended that it need not produce these documents because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action.  This does not permit Hallmark to resist discovery.   Generally, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A*., 163 F.R.D.

598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation".); *cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  To date, Hallmark has not requested a stay.  Nor could it show that good cause exists for one.  Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

### 2.    Plaintiff's Proposed Resolutions

Hallmark must conduct a review of the denials of the claims files to determine how many responsive files exist and produce responsive documents.

### 3.    Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4.    Hallmark's Proposed Resolution

INSERT HERE

**REQUEST NO. 33:**

A true and correct copy of the claims files of all other insured long-term care facilities, and/or hospitals with liability policies issued by Hallmark from 2017 to the present, whose claim Hallmark sought to, or did, deny coverage for on the basis that the insured failed to cooperate with Hallmark's investigation of the claim.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**RESPONSE TO REQUEST NO. 33:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request invades the attorney-client privilege an work product doctrine, violates Federal Rule of Civil Procedure 26(b )(3)(A), seek information previously disclosed, seeks information equally available to plaintiff violates Federal Rule of Civil Procedure ("FRCP") 26(b )(1) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under Federal Rule of Evidence ("FRE") 401 (the information that has no tendency to make more or less probable a fact or consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory, constitutional or common law privilege, including without limitation, third parties' right to privacy and HIPAA, is unduly burdensome annoying, harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

Even if the DeSoto claim was covered (which it was not), less than $500,000 was incurred in DeSoto for defense and indemnity (settlement). More than that amount would be required to be spent, over the course of a sum number of work years, in order

57

to respond to this document request. There are approximately three thousand claims opened during the stated time period (the number is materially higher if the document request seeks information from files that were opened earlier but were still pending during that time period. These sorts of claim files are voluminous, often exceeding one thousand pages and sometimes a multiple of that number. Each claim file would need to be manually reviewed page-by-page to determine whether it fit the requested criteria. Following that review, each page of each such claim file would need to be assiduously redacted given that the vast majority of the information in any such file would implicate, among other things, the privacy rights of third parties, including those under HIPAA. Given the privacy interests at stake, and the potential liability of disclosing third-party information subject to privacy privileges, an attorney would then need to review each and every page to ensure that the redactions were accurate and complete. The cost of conducting the review outlined above far exceeds the amount at issue. In addition, the information requested is of no importance to resolving the issues in this case. That resolution will involve the court analyzing the insurance policy at issue, the DeSoto complaint, and the other information available regarding the DeSoto claim, not other claims. Finally, the burden and expense of the proposed discovery far, far outweighs its likely benefit for the same reasons. Subject to and without waiving the foregoing, Hallmark has produced responsive documents in regard to facilities owned by Schlomo Rechnitz.

## 1.   Plaintiffs' Contentions and Points and Authorities

Hallmark has made no attempt to support most of its objections, and so they may be discarded.   Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).   Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so, much less one that factors in the protections afforded under the stipulated protective order in this action.

The only objections that Hallmark attempts to substantiate are those with respect to burden and proportionality.  But this attempt fails as well.  Hallmark grossly overstates both the burden and underestimates the value of the discoverable documents in proportion to the case.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

Hallmark contends that the interrogatory is burdensome as it would take a "number of work years" to produce the requested documents because "over 3,000 claims" were made in the relevant time period.  The total number of claims is irrelevant. The interrogatory seeks claims files only for claims that satisfy both conditions: (1) claim was denied; (2) the claim was denied on the basis that the insured failed to cooperate with Hallmark's investigation of the claim.  Hallmark's response provides no explanation of why the claim file would supposedly need to be "manually reviewed page-by-page to determine whether it fits the requested criteria" when this can readily be determined by reviewing: whether there was a denial (for many claims the answer will be no), and the contents of the denial. Hallmark has refused to take even this initial step. It is thus impossible to determine whether the request is actually burdensome. Moreover, when reviewing the denials, Hallmark can determine whether each is responsive to RFP 29-33 in one review by recording the bases of the denial.  Thus, the time spent responding to RFP 30 can also identify the files responsive to RFPs 29 and 31-33, greatly decreasing the burden of each Request. Hallmark must perform an initial review to determine how many claims files are responsive to the request.

Nor has Hallmark sufficiently shown that the RFP is not proportional to the needs of the case.  Hallmark contends that the requested documents are "of no importance" to resolving the case.  Not so.  Plaintiff has alleged causes of action for bad faith and violations of California's Unfair Competition Law ("UCL") for its pattern of bad faith conduct.  FAC, ¶¶ 67-72, 88-102.  Hallmark's conduct with respect to its

60

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

treatment of other claims is relevant to proving both causes of action.  Hallmark also misstates the amount in dispute. Plaintiff has alleged a bad faith cause of action, for which punitive damages may be awarded.  *Amadeo v. Principal Mut. Life Ins. Co*., 290 F.3d 1152, 1161 (9th Cir. 2002).  Plaintiff may also recover its attorneys' fees in litigating this action if it prevails on its bad faith cause of action.  Any award may also include six figures in prejudgment interest.  Thus, the burden of reviewing whether the sought claims files are responsive is not disproportionate to the needs of the case.

Hallmark has previously contended that it need not produce these documents because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action.  This does not permit Hallmark to resist discovery.   Generally, the filing of a dispositive motion does excuse a party from responding to discovery.  *See Skellerup Indus. Ltd. v. City of L.A*., 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation"); *cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  To date, Hallmark has not requested a stay.  Nor could it show that good cause exists for one.  Any stay would require extending all case scheduling deadlines, prejudicing Hallmark, because of Oxnard's own dilatory conduct.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

**2.    Plaintiff's Proposed Resolutions**

Hallmark must conduct a review of the denials of the claims files to determine how many responsive files exist and produce responsive documents.

**3.    Hallmark's Contentions and Points and Authorities**

INSERT HERE

**4.    Hallmark's Proposed Resolution**

**REQUEST NO. 36:**

All documents and communications containing discussion of loss reserves in relation to the *DeSoto* Claim, including discussions with either DARAG or any other reinsurers, and comprising documents and communication located in the *DeSoto* Claim· file or any other location.

**RESPONSE TO REQUEST NO. 36:**

Hallmark incorporates all general objections. Hallmark further objects on the grounds and to the extent that this request invades the attorney-client privilege and work product doctrine, seeks documents already produced to plaintiff (e.g., the DeSoto claim file), is duplicative of previous requests for production, violates FRCP 26(b)(l) (it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' issues, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit), seeks information not relevant under FRE 401 (the

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

information that has no tendency to make more or less probable a fact of consequence in determining the action), seeks confidential, proprietary, business or commercial information that is exempt from disclosure under and applicable evidentiary, statutory or common law privilege, even if the information is responsive and not otherwise protected from discovery, is unduly burdensome, annoying harassing, and overly broad, and exceeds the bounds of the legitimate purposes of discovery.

### 1.  Plaintiffs' Contentions and Points and Authorities

Loss reserve documents are discoverable in a bad faith action. *Bernstein v. Travelers Insurance Company*, 447 F.Supp.2d 1100 (N.D. Cal. 2006).

Hallmark has made no attempt to support most of its objections, and so they may be discarded.  Hallmark's general objections, which it incorporates by reference, provide no support for the objection, and thus have no effect. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")  Invoking FRE 401 is equally meritless.  FRE 401 considers what materials are relevant in considering admissibility. But "relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard IVC Bard Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016).  Likewise, Hallmark's non-specific objection based on its assertion that the interrogatory "seeks confidential, proprietary, business or commercial information that is exempt from disclosure under any applicable evidentiary, statutory, constitutional or common law privilege" is

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

insufficient to resist responding to this request. "[T]he party asserting a privilege to resist discovery must show that the requested disclosure falls within the scope of the asserted privilege." *Doe v. Uber Techs.*, 19-cv-03310-JSC, 2022 WL 767088 at *2 (N.D. Cal. Mar. 11, 2022). Hallmark has made no attempt to do so.

During the meet and confer process Hallmark contended that it need not produce these documents because it believes the bad faith cause of action is time barred, and has filed a Motion for Judgment on the Pleadings as to that cause of action. Hallmark's refusal to produce discoverable documents based on its belated assertion that the bad faith claim is time barred suffers from two fatal deficiencies.

First, Hallmark apparently believes that the complaint contains a fundamental facial defect that entitles it to judgment, yet waited until six months after the case was removed to file a 7-page motion on the issue, which Plaintiff has opposed based on the judicially noticeable facts which show that Hallmark is wrong. D.E. 39. This dilatory conduct is insufficient to allow Hallmark to stop the discovery process midstream. Tellingly, Hallmark has never provided authority that supports its refusal to produce discovery on this basis.

Second, the filing of a dispositive motion does excuse a party from responding to discovery. *See Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION

of litigation".).  A court may stay discovery only where the party resisting discovery makes demonstrates that an exception is warranted.  *Cf. Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam) ("[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief.").  Here, Hallmark has not requested a stay.  Nor could it show that good cause exists for one.  Any stay would require extending all case scheduling deadlines, prejudicing Oxnard, because of Hallmark's own dilatory conduct.

### 2.   Plaintiff's Proposed Resolutions

Hallmark has provided no cognizable justification for withholding these discoverable documents; the Court should order Hallmark to produce them.

### 3.   Hallmark's Contentions and Points and Authorities

INSERT HERE

### 4.   Hallmark's Proposed Resolution

INSERT HERE

DATED: September XX, 2023          THE WAGNER FIRM

By:_____ */s/ Avi Wagner*_____
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 491-7949
Facsimile:   (310) 694-3967
Email:        avi@thewagnerfirm.com

1

*Attorneys for Plaintiff Oxnard Manor LP dba Oxnard Manor Health Center*

2

3 DATED: September XX, 2023          MORISON LAW, LLP

4

5                                    By: _____

6                                    William C. Morison
                                      3478 Buskirk Avenue, Suite 342
7                                     Pleasant Hill, California 94523
                                      Telephone: (925) 937-9990
8                                     Facsimile:  (925) 937-3272
                                      Email: wcm@morison.law
9

10                                   *Attorneys for Defendant Hallmark Specialty Insurance Company*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION