1  WILLIAM C. MORISON (No. 99981)
   wcm@morison.law
2  JOANNE M. WENDELL (No. 191785)
   jmw@morison.law
3  MORISON LAW, LLP
   3478 Buskirk Avenue, Suite 342
4  Walnut Creek, CA  94523
   Telephone: (925) 937-9990
5  Facsimile: (925) 937-3272

6  Attorneys for Defendant
   HALLMARK SPECIALTY
7  INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | OXNARD MANOR LP dba          | No. 2:23-cv-01322-SPG-MAR
   | OXNARD MANOR HEALTH          |
12 | CENTER, a California Limited | Honorable Sherilyn Peace Garnett
   | Partnership,                 |
13 |                              | DEFENDANT'S OPPOSITION
   |         Plaintiff,           | TO PLAINTIFF'S MOTION
14 |                              | TO EXCLUDE TESTIMONY
   |    vs.                       | OF DEFENDANT'S EXPERT
15 |                              | WITNESS BURL DANIEL
   | HALLMARK SPECIALTY           |
16 | INSURANCE COMPANY, an        | [Filed concurrently with Declaration
   | Oklahoma Corporation,        | of Burl Daniel]
17 |                              |
   |         Defendant.           | Date:   February 21, 2024
18 |                              | Time:   1:30 PM
                                    Place:  First Street Courthouse
19                                          350 West 1st Street
                                            Courtroom 5C
20                                          Los Angeles, CA 90012

21

22

23

24

25

26

27

28
                                    - 1 -

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT……………………………………….  5

II. DANIEL'S OPINIONS ARE BASED ON SUFFICIENT
FACTS AND DATA (RULE 702(b))…………………………………  5

    A. Daniel Received And Reviewed All Documents Produced By
       Both Parties, Which Is More Than Ten Times The Pages That
       Plaintiff's Counsel Provided To Its Own Expert……………………  6

    B. Daniel May Properly Rely On Terry
       Kelly's Rule 30(b)(6) Testimony………………………………..  7

III. DANIEL'S OPINIONS ARE BASED ON A RELIABLE
AND DISCERNABLE METHODOLOGY (RULE 702(c))………….  8

IV. EVEN IF PLAINTIFF'S NOTICE OF MOTION STATED THE
MOTION WAS CHALLENGING DANIEL'S QUALIFICATIONS,
WHICH IT DID NOT, DANIEL IS QUALIFIED TO TESTIFY AS
AN EXPERT ON CLAIMS HANDLING AND REASONABLENESS
IN THIS ACTION (RULE 702(a))………………………………….. 12

V. DANIEL'S REBUTTAL OPINIONS ARE ALL IN REFERENCE
TO ZALMA'S REPORT AND TESTIMONY……………………… 15

VI. CONCLUSION………………………………………………….. 16

# TABLE OF AUTHORITIES

Cases

Federal

*Cal. Dept. of Toxic Subs. Control v. NL Industries*,
    636 F.Supp.3d 1092, 1127 (C.D. Cal. 2022)……………………………….  13

*Cook v. Allstate Ins. Co.*, 337 F.Supp.2d 1206 (C.D. Cal. 2004)……………....  9

*Domingo ex Rel Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002)………………..  12

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014)…………  8

*Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003)…………………  9

*Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004)……  13

*In re Live Concert Antitrust Litigation*, 863 F.Supp.2d 966 (C.D. Cal. 2012)…..  6

*Lundsford v. Am. Guar. Liab. Ins. Co.*, 18 F.3d 653 (9th Cir. 1994)……………..  9

*Pyramid Techns., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014)….  9

*Teleflex Med., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    851 F.3d 976 (9th Cir. 2017)……………………………………………….  9

State

*Pinto v. Farmers Ins. Exch.*, 61 Cal.App.5th 676, 688 (2021)…………………..  9

Rules and Statutes

Federal

Federal Rule of Evidence 201……………………………………………………  6

Federal Rule of Evidence 702……………………………………………………  13

Federal Rule of Evidence 702(a)…………………………………………………  12

Federal Rule of Evidence 702(b)…………………………………………………  5

Federal Rule of Evidence 702(c)…………………………………………………  8

State

California Code of Civil Procedure § 364(f)(1)…………………………………  10

California Health & Safety Code § 1250(c)(1)…………………………………  10

Regulations

State

10 California Code of Regulations § 2695………………………………………….. 10

10 California Code of Regulations § 2695.1(b)(2)………………………………. 10

I. PRELIMINARY STATEMENT

Plaintiff's motion mirrors the approach plaintiff took with providing information to its own expert. Plaintiff repeatedly attempts to mislead the Court by omission. In addition, plaintiff mischaracterizes, sometimes egregiously, the testimony and report of defendant's expert, Burl Daniel ("Daniel"). What authority is cited beyond Rule 702 is between inapposite and irrelevant.

Daniel's opinions are demonstrably based on sufficient facts and data. He received and reviewed all the documents produced by both parties to this litigation. He also reviewed the complaints, motions, responses, substantive discovery responses, and five deposition transcripts with their exhibits. He received and reviewed more than ten times what was reviewed by plaintiff's expert Barry Zalma ("Zalma"). Daniel properly relied on the deposition testimony of defendant's Rule 30(b)(6) witness, Terry Kelly, as a partial basis for his opinions.

Daniel's report is expressly based on a reliable and discernable methodology applicable in California to which he referred specifically throughout his report.

Daniel is clearly qualified under *Hangarter* through his education and 47+ years of experience and knowledge. Daniel has been found to be qualified as an insurance expert witness by at least three separate federal district courts, and four separate state courts. He has never been found to be unqualified, i.e., he has never failed a *Daubert* challenge. Daniel has been retained and deposed in eight separate federal district court cases, five California state court cases, and eight other state court cases (each in a different state). He obtained his bachelor's degree in business administration – insurance from the University of Texas. He has held and continues to hold the insurance professional designations of CPCU, CIC, and CRM. He has taught curriculum courses as an adjunct professor at two universities and a community college.

II. DANIEL'S OPINIONS ARE BASED ON SUFFICIENT FACTS AND DATA (RULE 702(b))

### A. Daniel Received And Reviewed All Documents Produced By Both Parties, Which Is More Than Ten Times The Pages That Plaintiff's Counsel Provided To Its Own Expert

It is rather astonishing that plaintiff argues Daniel's opinions are not based on sufficient facts and data. Plaintiff provided approximately 2,000 pages of documents, cherry-picked by plaintiff's counsel, to its expert Barry Zalma. Those documents did *not* include, e.g., Hallmark's June 2019 coverage correspondence to plaintiff or plaintiff's discovery response in *DeSoto* in which plaintiff *admitted under oath* by omission that Hallmark was not a potential insurer in *DeSoto* (ECF 75 ## 3672:22-3674:2, ## 3674:18-3675:7; 75-1 # 3685:2-10, ## 3692:23-3693:14, # 3694:9-15; ECF 74-1 # 3505:22-23, # 3580:14-17, # 3613).[1] In contrast, Daniel received and reviewed 21,000+ documents produced in this action, plus all deposition transcripts, motions and exhibits, and substantive written discovery in this action (Daniel Decl. ¶¶ 13). Unlike plaintiff, defendant did not hide any documents from its expert to skew what should be a neutral analysis. Daniel received and based his opinions on the full universe of facts (Daniel Decl. ¶¶ 13).

Far from plaintiff's mischaracterization of a purported "series of redacted documents" (ECF 74 at 7:26-8:9), there were no redactions outside of the claim notes observed within the 21,000+ pages of documents provided. The few redactions did not in any way prevent Daniel from offering his opinion nor in concluding that Hallmark acted reasonably in its claims handling under the circumstances. (Daniel Decl. ¶ 14.)

Plaintiff's citation to *In re Live Concert Antitrust Litigation*, 863 F.Supp.2d 966 (C.D. Cal. 2012) is patently inapposite on the facts. This case does not involve, e.g., antitrust statistical analysis, submarket indicia, or cross-elasticity of demand between products and product substitutes, and an economist with no qualification or experience in the statistics at issue. *Live Concert* also did not involve a handful of

---

[1] Hallmark requests that the Court take judicial notice of all documents to which Hallmark cites from the Court's docket. *See* Federal Rule of Evidence 201.

- 6 -
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS BURL DANIEL

MORISON LAW, LLP

redactions in the 21,000+ documents provided to an expert in an insurance action.

### B. Daniel May Properly Rely On Terry Kelly's Rule 30(b)(6) Testimony

Plaintiff argued that Daniel's reliance on the testimony of Terry Kelly ("Kelly") is somehow improper. Plaintiff's counsel knows better. Kelly was presented as Hallmark's 30(b)(6) witness. Kelly is employed by Hallmark as the Vice President of Claims (ECF 62-14, JAE 62 Declaration of Terry Kelly # 3347 ¶ 1; ECF 62-14, JAE 65 Supplemental Declaration of Terry Kelly ## 3360-3363).

Federal Rule of Evidence 703 provides that "An expert may base an opinion on facts or data in the case that the expert has been made aware of…If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Experts in insurance matters rely on testimony such as that which Kelly provided. (Daniel Decl. ¶ 15.) Insurance litigation typically takes place years after the underlying claim concludes. Plaintiff knew this when it chose to wait four years prior to filing this lawsuit. Kelly's Rule 30(b)(6) testimony is admissible, and is at a minimum reliable as a partial basis for Daniel's opinions (ECF 62-14, JAE 65 ## 3360-3363).

Kelly testified under oath that he personally handles long term care claims and oversees all long term care claims for Hallmark. Based on his experience at Hallmark, he is familiar with the long term care policies and claims handling practices of Hallmark, and with Hallmark practices in investigating claims and analyzing coverage for at least the last 8-10 years. As a regular part of his employment as Vice President of Claims, he regularly reviews and analyzes Hallmark claim files and other material Hallmark obtained or reviewed when claims were made and investigated, dating back at least 10 years. Those claim files and other material consist of business records of a regularly conducted activity, event, condition, or opinion made, collected, kept, and relied upon in the ordinary course and scope of Hallmark's regularly conducted business activity. The

preparation and maintenance of claim files was and is Hallmark's regular business practice. Kelly has personal knowledge regarding the procedure under which Hallmark business records are created, collected, and maintained. (ECF 62-14, JAE 65 ## 3360-61.)

Kelly testified under oath regarding Hallmark's standard procedures and how they were followed in the ordinary course and scope of Hallmark's claim investigation and coverage determination regarding *DeSoto* (ECF 62-14, JAE 65 ## 3360-63). Kelly testified that Hallmark never received requested information from Oxnard (ECF 62-14, JAE 65 # 3363:3-4). He testified that Hallmark handled at least seven claims against facilities owned by Shlomo Rechnitz, and that each claim was evaluated on its own merits. Some claims were defended under a reservation of rights and settled. Some were denied. (ECF 62-14, JAE 65 # 3363:5-8.)

Contrary to plaintiff's assertion, Daniel never "admit[ted] that his opinions about defendant's handling and investigation of *DeSoto* are based almost exclusively on the testimony of Terry Kelly" (ECF 74 # 3491:13-15; Daniel Decl. ¶ 13). As explained above, Daniel received all documents produced in the action and relied on those containing facts material to claims handling and the implied covenant of good faith and fair dealing including, without limitation, both of Hallmark's letters (February and June 2019) (Daniel Decl. ¶ 13; ECF 62-5 JAE 11 ## 1980-2008, ECF 62-2 JAE 12 ## 2009-2022), which contained plain evidence of Hallmark's thorough claim investigation.

### III. DANIEL'S OPINIONS ARE BASED ON A RELIABLE AND DISCERNABLE METHODOLOGY (RULE 702(c))

"The issue here is reliability: whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). Plaintiff argued that Daniel's report did not contain a standard, while acknowledging Daniel's "statements" regarding reasonableness (ECF 74 ## 3494:15; 3495:2-7).

Remarkably, plaintiff studiously ignored Daniel's plain statement on page 11 of his report (ECF 74-1 at 3518): "**The *standard* is whether Hallmark's investigation and analysis were *reasonable*"; "Insurance industry and *California practice standards* require that the investigation be *reasonable under the circumstances of the claim*"; "Hallmark's investigation and analysis of the DeSoto claim, as evidenced in the documents produced in this matter along with Hallmark's deposition testimony met the *'reasonableness' standard* and fell well within accepted insurance industry and *California claims handling practices*"**. Reasonableness is the standard Daniel expressly relied on, the only standard that applies in this California case, which Daniel expressly identified in his report above.[2]

Plaintiff falsely claims that Daniel conceded that his report contained no conclusions about whether Hallmark had complied with its own claim practices (ECF 74 # 3495:14-20). Daniel made no such concession. The Court will see on

---

[2] "Under California law, to establish a breach of the implied covenant of good faith and fair dealing [in claims-handling], 'a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was *unreasonable or without proper cause*." *Pyramid Techns., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 823 (9th Cir. 2014) (emphasis supplied) *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) ("*Feldman*"); *accord Cook v. Allstate Ins. Co.*, 337 F.Supp.2d 1206, 1216-17 (C.D. Cal. 2004) ("The reasonableness of the insurer's decisions and actions must be evaluated at the time that they were made"). "Mere errors by an insurer in discharging its obligations to its insured 'does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been *unreasonable*.'" *Pinto v. Farmers Ins. Exch.*, 61 Cal.App.5th 676, 688 (2021) (emphasis in original).

In determining whether an insurer acted unreasonably, the Ninth Circuit has applied the genuine dispute doctrine to third party liability cases. *See, e.g., Teleflex Med., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 851 F.3d 976, 988 (9th Cir. 2017); *Lundsford v. Am. Guar. Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) ("*Lundsford*"). "[U]nder the Ninth Circuit's interpretation of California law, a genuine dispute may concern either a reasonable factual dispute or an unsettled area of insurance law." *Feldman*, 322 F.3d at 669. "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Lundsford*, 18 F.3d at 656. Daniel also reviewed Hallmark's portion of the joint brief regarding authority on breach of the implied covenant of good faith and fair dealing (ECF 62 ## 1606:7-1606:6, ## 1608:2-1609:5).

reviewing the transcript that Daniel requested plaintiff's counsel narrow his vague and overbroad questioning, which plaintiff's counsel chose not to do. Plaintiff's counsel asked a broad question to which he received a broad answer. In no way does the testimony that plaintiff cites demonstrate any Daniel "concession", express or otherwise.

As demonstrated in Hallmark's *Daubert* motion (ECF 75 ## 3677:18-3678:2), Title 10 California Code of Regulations ("CCR") sections 2695, *et seq.*, do not apply in this case.[3] Plaintiff's own expert is the one that applied the inapplicable standard and failed to apply the *relevant* standard. Hallmark's expert applied the correct standard. Ironically, this demonstrates that an expert need not reside in a State to qualify as reliable under 702(c) and *Daubert* and its progeny, and that an in-State expert is certainly not *per se* reliable.

Plaintiff argues that Daniel did not explain how his knowledge and experience is a sufficient basis for his opinions and led to his conclusions. Wrong again. Without limitation, Daniel stated in his report (74-1 ## 3508):

> The following report is based on my review and analysis of case documents provided by counsel, my insurance experience and independent research.
>
> Relevant to this matter, I placed hundreds of Professional Liability and/or Claims Made policies during my years as an insurance agent [Coverage A in this case]. Service to those policyholder clients included assistance in completing applications, explaining how/when coverage applied under the terms and conditions of Claims Made

---

[3] CCR section 2695.1(b)(2) provides that section 2695's regulations do not apply to liability insurance for professional negligence (Coverage A) of "health care providers" as defined in California Code of Civil Procedure section 364(f)(1), which includes "any…health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." Health and Safety Code section 1250(c) defines "health facility" to include a skilled nursing facility such as plaintiff. See Cal. Health & Safety § 1250(c)(1). Section 2695 regulations do not apply in this case and, therefore, they are not reliable principles that satisfy the requirements of FRE 702(c). Plaintiff's purported expert Barry Zalma had no idea the regulations -- on their face -- do not apply to professional liability claims asserted against a healthcare facility such as plaintiff (ECF 75-1, Morison Decl. ¶ 2, Exh. A at 88:2-22). In contrast, Daniel did (ECF 74-1 # 3522).

> policies, placing coverage with dozens of insurance companies, and claims assistance. As an insurance expert witness, I have been engaged to render expert reports on dozens of cases requiring analysis of Professional Liability, Claims Made policies, coverage, and associated claims handling issues. My Curriculum Vitae is attached as Exhibit A; www.burldaniel.com provides further background regarding my credentials.
>
> References or citations to specific documents (Bates numbered or otherwise) are offered only by way of example and should not be construed as the sole basis for my opinions on a given issue….
>
> …
>
> …In my five decades in the insurance industry, I never encountered any such requirement in a carrier's claim guidelines or any state's rules of regulations [no obligation to adjust a claim "to the satisfaction of the insured"].
>
> …
>
> The standard is whether Hallmark's investigation and analysis were reasonable…Insurance industry and California practice standards require that the investigation be reasonable under the circumstances of the claim….
>
> …
>
> My opinions offered in this report are expressed to a reasonable degree of professional certainty based on my areas of insurance expertise. I have relied on my 47+ years of insurance industry education, experience and training during review and evaluation of documents provided to date.
>
> ….

Daniel's report demonstrates his correct understanding of California standards that apply to claims handling and coverage investigations. Daniel's report demonstrates his detailed review of the documents, including the many contradictory and otherwise incorrect statements in Zalma's report. Throughout his report, Daniel connected his 47+ years of knowledge, education, and experience with the facts of this case. (Daniel Decl. ¶¶ 1-19.)

///

Plaintiff's citation to *Domingo ex Rel Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) is unavailing. It is based on distinguishable facts and scientific analysis ("(1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community"). *Id*. at 605. The expert in *Domingo* opined that plaintiff's brain damage from hip surgery was caused by the length of time plaintiff spent on the malleting, that "(1) intramedullary events (such as reaming, inserting a prosthesis, and malleting) are likely to produce fat emboli due to increases in intramedullary pressure and other causes; (2) surgeons recognize the risk of FES [fat embolism syndrome] from the increase in fat emboli and therefore seek out techniques to minimize the production of fat emboli; (3) an increase in any of the factors that contribute to the production of fat emboli necessarily increases the risk of FES; and (4) the only atypical aspect of Domingo's surgery was the length of time spent malleting." *Id*. at 606. The court excluded the expert's testimony because "there was no evidence of widespread acceptable of Dr. Harrington's theory linking extended malleting to FES; indeed, no theory linking extensive malleting to FES had ever been published. The court also noted the lack of any objective source, peer review, clinical tests, establishment of an error rate or other evidence to show that Dr. Harrington followed a valid scientific method in developing his theory." *Id*. "He did not establish that the studies he use[d] to support his theory [were] applicable to human operations." *Id*. Like most of plaintiff's briefing, *Domingo* does not withstand close inspection.

IV. **EVEN IF PLAINTIFF'S NOTICE OF MOTION STATED THE MOTION WAS CHALLENGING DANIEL'S QUALIFICATIONS, WHICH IT DID NOT, DANIEL IS QUALIFIED TO TESTIFY AS AN EXPERT ON CLAIMS HANDLING AND REASONABLENESS IN THIS ACTION (RULE 702(a))**

1    Plaintiff's argument regarding Daniel's qualifications exceeded plaintiff's
2    notice of motion (# 3486:16-21), which makes no mention of any challenge to
3    Daniel's qualifications. More importantly, plaintiff's purported challenge willfully
4    ignored Daniel's qualifications and is devoid of authority. Plaintiff submitted
5    Daniel's "expert report" but purposefully and without explanation failed to attach
6    its exhibits (ECF 74-1 Exh. A ## 3508-3526).

7    "Rule 702 requires that a testifying expert be 'qualified as an expert by
8    knowledge, skill, experience, training, or education'…Rule 702 contemplates a
9    broad conception of expert qualifications'…'the advisory committee notes
10   emphasis that Rule 702 is broadly phrased and intended to embrace more than a
11   narrow definition of qualified expert'…'In certain fields, experience is the
12   predominant, if not sole, basis for a great deal of reliable expert testimony.'"
13   *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004)
14   (insurance); *accord Cal. Dept. of Toxic Subs. Control v. NL Industries*, 636
15   F.Supp.3d 1092, 1127 (C.D. Cal. 2022) (doctor with 40 years of experience in
16   environmental science but no degree in statistics could testify to statistics in case
17   because he used statistics throughout his career and worked with others that
18   performed statistical analyses for projects in which he was involved).

19   The Ninth Circuit in *Hangarter* found an expert to be qualified that had
20   twenty-five years of experience working in part as an independent consultant and
21   also in part for insurance companies. "His experience…included evaluating
22   insurance claims, assisting insureds in dealing with insurance companies to obtain
23   payment of their claims…and evaluating insurance policies…He [was] also…found
24   qualified to testify on insurance practices and standards within the industry twelve
25   times before (once in an insurance bad faith case), and [was] never…found to be
26   unqualified." *Hangarter*, 373 F.3d at 1015-16. "Clearly, this lays at least the
27   *minimal foundation* of knowledge, skill, and experience required in order to give
28   'expert testimony' on the practices and norms of insurance companies in the

1  context of a bad faith claim." *Id.* at 1016 (emphasis in original).

2  Daniel has more than 47 years of experience in assisting customers,
3  interfacing with insurance companies regarding the handling of claims, alongside
4  dozens of professional liability engagements as an expert witness.  He has more
5  than 47 years of experience analyzing various insurance policies, various claims,
6  and claims-handling under multiple (approximately 25) state laws, including
7  California (ECF 74-1 ## 3553-3554; Daniel Decl. ¶¶ 2-9, 16-19).  Daniel has been
8  retained as an expert in federal and state courts (including California) (Daniel Decl.
9  ¶¶ 4-7.)

10  Daniel has been qualified in multiple jurisdictions within and outside his
11  Texas domicile, including the United States District Court for the Southern District
12  of Florida, the United States District Court for the District of Nevada, the United
13  States District Court for the Southern District of Alabama, and state courts in
14  Arizona, Oklahoma, New Mexico, and Texas.  (Daniel Decl. ¶ 4, Exh. A (Exhibit C
15  to Daniel's Expert Report)).  Plaintiff intentionally omitted the foregoing from its
16  motion, although plaintiff purported to attach Daniel's report.

17  Daniel has never been held to be unqualified as an expert witness, including
18  in regard to claims handling.  He has been so qualified multiple times.  (Daniel
19  Decl. ¶¶ 4, 5).

20  Exhibit C to Daniel's expert report also demonstrates that he has been
21  retained and deposed in actions in California state court, the United States District
22  Court for the District of Colorado, the United States District Court for the Southern
23  District of Ohio, the United States District Court for the Northern District of
24  Indiana, the United States District Court for the Eastern District of Tennessee, the
25  United States District Court for the Eastern District of Louisiana, the United States
26  District Court for the District of Arizona, the United States District Court for the
27  Southern District of West Virginia, the United States District Court for the
28  Northern District of Texas, and state courts of Nevada, Mississippi, Arizona,

Missouri, Louisiana, Indiana, Kansas, and Texas. (Daniel Decl. ¶¶ 6.) Whether plaintiff's counsel located retentions or qualifications in California federal courts on Daniel's website (# 3506:4-7) is not evidence that Daniel has not been so retained or qualified.

Daniel obtained his Bachelor of Business Administration - Insurance from the University of Texas (Austin) (Daniel Decl. ¶ 16). He passed all exams required to attain his Chartered Property Casualty Underwriter ("CPCU") certifications, including Commercial Liability Insurance and Risk Management, Insurance Operations, Management (as it relates to the insurance industry), Insurance Issues and Professional Ethics, and The Legal Environment (Daniel Decl. ¶ 17_). He is also a Certified Insurance Counselor ("CIC") and Certified Risk Manager ("CRM") (Daniel Decl. ¶17). He has taught insurance as an adjunct professor at three universities (ECF 74-1 ## 3553-3554; Daniel Decl. ¶ 18).

Arguing that Daniel has no experience in claims handling because he was not a claims adjuster is absurd on its face. Daniel is more than qualified based on his experience and knowledge to provide rebuttal opinions on claims handling and bad faith, i.e., the matters on which Zalma testified. (Daniel Decl. ¶¶ 2-9, 16-19.)

## V. DANIEL'S REBUTTAL OPINIONS ARE ALL IN REFERENCE TO ZALMA'S REPORT AND TESTIMONY

Plaintiff argues that Daniel's reference and discussion of warranties made in Oxnard's insurance application was outside of Zalma's report and deposition testimony on claims-handling. Not so. A routine step in claims-handling, which necessarily includes analyzing the insurance policy, is reviewing the application, which is incorporated into and *becomes a part of the insurance contract* (ECF 62-1 JAF 2 # 1622; 62-4 # 1825 at the bottom of the declarations page, *see* "These Declarations, the completed and signed *Application* and the Policy with Endorsements *shall constitute the contract* between the Named Insured and the Company") (emphasis supplied). *See* 62-4 # 1845 ("VII. CONDITIONS, B.

MORISON LAW, LLP

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS BURL DANIEL

1  Application. By accepting this Policy, the Named Insured agrees that the statements
2  in the Application and Declarations, and in any subsequent notice relating to this
3  insurance, are true and correct. In addition, it is understood and agreed that those
4  statements are incorporated into, and shall form a part of, this Policy. The
5  representations made in the Application are the basis for the coverage provided. If
6  any Insured conceals or misrepresents any material fact or circumstance concerning
7  this insurance, this Policy will be voidable from inception…."); 62-4 # 1827 ("in
8  reliance on all statements made and information furnished to the Company….").
9  (Daniel Decl. ¶ 11.)

10  Zalma claimed that he reviewed the entire policy (ECF 75-1 # 3696:20-24, #
11  3697:1-9, # 3699:12, # 3702:20, # 3706:16-18). The insurance application and
12  warranties are part of the insurance contract between plaintiff and defendant.
13  Claims-handling includes analyzing the insurance contract (including the
14  application and warranties contained therein) and comparing it to the facts of which
15  the insurer is aware at tender of the defense after reasonable investigation. The
16  insurance application and warranties are clearly within the issue of claims-handling.
17  They are not outside of Zalma's purported "claims-handling" scope limitation.
18  Zalma claimed to have read the entire policy. Daniel appropriately discussed them
19  in rebutting Zalma's unreliable opinions. (Daniel Decl. ¶ 11.)

20  VI.  CONCLUSION

21  Daniel is a qualified expert through specialized knowledge, experience,
22  training, and education. His opinions are based on sufficient facts and data. His
23  testimony is the product of reliable principles and methods. His testimony is
24  reliable, relevant, and will assist the trier of fact. Based on the foregoing, defendant
25  respectfully requests that the Court DENY plaintiff's motion, and permit Burl
26  Daniel to testify as an expert on defendant's behalf.

27  Dated: January 17, 2024                    Respectfully submitted,
28                                              MORISON LAW, LLP

By: <u>*/s/ William C. Morison*</u>
      William C. Morison

Attorneys for Defendant
HALLMARK SPECIALTY
INSURANCE COMPANY