Avi Wagner (SBN #226688)
Jennifer N. Hinds (SBN #301804)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 491-7949
Facsimile:   (310) 694-3967
Email:          avi@thewagnerfirm.com

*Attorneys for Plaintiff Oxnard Manor LP
dba Oxnard Manor Health Center*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Oxnard Manor LP dba Oxnard Manor Health Center, a California Limited Partnership,<br><br>Plaintiff,<br><br>vs.<br><br>Hallmark Specialty Insurance Company, an Oklahoma Corporation, and DOES 1-100,<br><br>Defendant(s). | Case No.: 2:23-cv-01322-SPG-MAR<br>(Removed from Los Angeles County Superior Court, Case No. 23STCV02077)<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>Original Complaint Filed: 2/6/23<br>Removal: 2/22/23<br>Trial: 4/30/24 |

0
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT

# MEMORANDUM OF CONTENTIONS OF LAW AND FACT PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULE ("L.R.") 16-4

**L.R. 16-4.1 Claims and Defenses.**

**Claim 1: Breach of Contract, 17/18 Policy [Resolved in Plaintiff's favor under the Court's Order on Motion for Summary Judgement, but relevant to the remaining bad faith claim]**

   **(a)**   Defendant Hallmark Specialty Insurance Company ("Hallmark") breached its duty to defend Plaintiff Oxnard Manor L.P. ("Oxnard") in a lawsuit brought by the heirs of former resident Kathleen DeSoto ("*DeSoto*") under the Long-Term Care Organization Insurance Policy, Policy No. 75LTP000118 (Eff. 06/01/17-06/01/18) (the "17/18 Policy") it had issued to Oxnard.  The Court found defense coverage for the *DeSoto* Action existed and that, therefore, Defendant breached its duty to defend, thereby breaching its contract. Order on Summary Judgment dated December 21, 2023, Docket Entry ("D.E.") 68, 18:11-13.  The court recognized that this breach included Hallmark's abandonment of the defense of *DeSoto* and Oxnard's settlement of *DeSoto* incurred without Hallmark's participation.  *Id*. at 5:10-15; 6:11-21.

   Hallmark wrongly contends that the duty to indemnify must still be resolved. The Court granted summary judgment as to the entire breach of contract claim. *Id*. at 24:11-13.  Further, as described below, Oxnard's damages stem from Hallmark's breach of the duty to defend, not the, so there never was anything for the Court to resolve on this issue.  Indeed, Hallmark never raised this issue at summary judgment or in seeking reconsideration of the Court's Order.

**(b)** An insurer who is liable for the duty to defend is liable for the consequences of that breach. This includes defense costs incurred. *Emerald Bay Community Ass'n. v. Golden Eagle Ins. Corp.,* 130 Cal.App.4th 1078, 1088-89 (2005). It also includes settlements. "[A]n insurer who wrongfully refuses to defend is also liable for the amount of any reasonable settlement that the insured makes in good faith." *Cathay Mortuary (Wah Sang) Inc. v. United Pacific Ins. Co*., 582 F. Supp. 650, 660 (N.D. Cal. 1984); *Riverbank Holding Co. v. N.H. Ins. Co*., No. 2:11-cv-02681-WBS-GGH, at *4 (E.D. Cal. Oct. 3, 2012) (collecting cases).

**(c)** Oxnard has presented the following evidence of its attorneys' fees and costs in the underlying litigation, and the resulting settlement: invoices to Oxnard from counsel Sean S. Cowdrey; records of Oxnard's payments of these invoices; Lewis Brisbois initial report on *DeSoto* case, including settlement ranges; communications related to October 2019 mediation of *DeSoto* settlement agreement in *DeSoto* action; records of payments by Oxnard in *DeSoto* action. Oxnard presented uncontroverted evidence that it incurred and paid $116, 205.63 in attorneys' fees and costs in defending *DeSoto*, and $400,000 for the settlement of *DeSoto*. D.E. 62-10, JAE 23, 24, Invoices from Cowdrey Firm; D.E. 55-2 (filed under seal), *DeSoto* Settlement. Hallmark has not disputed either of these sums. Pre-judgment interest of approximately $175,000 as of the date of the Final Pre-Trial Conference is also available on these sums. Thus, the total sum Oxnard is entitled to on the breach of contract claim is $691,381.63. While these sums are not disputed, they remain relevant to the bad faith cause of action and any punitive damages award.

While the Court has not yet entered judgment on these sums, it fully resolved the breach of contract claim. D.E. 68, 24:15-17.

**(d)     Affirmative Defenses**

**First Affirmative Defense:**     Allocation of Damages

Oxnard was unaware that Hallmark intended to pursue this defense at trial until provided with its jury instructions less than 24 hours ago. Hallmark did not assert this defense at summary judgment, and did not develop any evidence on this defense during litigation.

**(e)     Elements of Affirmative Defenses**

**First Affirmative Defense:**     Allocation of Damages

The "Larger Settlement" Rule renders this affirmative defense null here. Under this rule, in the absence of an allocation clause specifying how a court should allocate loss, the insurer must pay the full amount of the settlement unless the settlement was increased by the presence of uninsured parties or uncovered claim. *Nordstrom, Inc. v. Chubb Son, Inc*., 54 F.3d 1424, 1433 (9th Cir. 1995).

**(f)**     For Hallmark only.

**(g)**     No third-parties are involved.

**Claim 2: Bad Faith**

**(a)**     Hallmark breached the 17/18 Policy's implied covenant of good faith and fair dealing by unreasonably denying its duty to defend the *DeSoto* action.

**(b)**     To establish this claim, Oxnard Manor must prove all of the following:

1. That Oxnard was insured under an insurance policy with Hallmark;

2. That a lawsuit was brought against Oxnard;

3. That Oxnard gave Hallmark timely notice that it had been sued;

4. That Hallmark, unreasonably, that is, without proper cause, failed to defend Oxnard against the lawsuit;

5. That Oxnard was harmed; and

6. That Hallmark's conduct was a substantial factor in causing Oxnard's harm.

CACI 2336.

"[A]n insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind" *Dalrymple v. United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 511.

In order for Oxnard to be entitled to damages on the bad faith cause of action, the jury must determine that, because of Hallmark's bad faith, it was reasonably necessary for Oxnard Manor to employ the services of an attorney to collect the benefits due under the policy. If the jury determines this, then Oxnard Manor entitled to an award for attorney fees incurred to obtain the policy benefits. These fees are referred to as *Brandt* fees under *Brandt v. Superior Court*, 37 Cal.3d 813 (1985).

In order to recover *Brandt* fees, Oxnard Manor must prove "(1) the amount to which it was entitled to recover under the policy, (2) that Hallmark withheld payment unreasonably or without proper cause, (3) the amount that Oxnard Manor paid or incurred in legal fees and expenses in establishing the insured's right to contract benefits and (4) the reasonableness of the fees and expenses so incurred." *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1079 (2007). These recoverable Brandt fees include only fees attributable to obtaining the insurance benefits, not "those attributable to the bringing of the bad faith action itself." *Brandt*, 37 Cal. 3d at 815.

To recover these *Brandt* fees, Oxnard Manor will demarcate the fees attributable to the pursuit of the benefits to which it is entitled under the policy from fees expended

on other work.  *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1362 (9th Cir. 1993)

To properly calculate *Brandt* fees in cases of mixed coverage and bad faith cases, like the case at hand, the jury must determine the total number of hours an attorney spent on the case and then determine how many hours were spent working exclusively on the contract recovery. Hours spent working on issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort. *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 811-12 (2004). Oxnard Manor must prove by a preponderance of evidence both the existence and the amount of damages proximately caused by Hallmark's tortious conduct.

Oxnard also seeks punitive damages on its bad faith cause of action.  Oxnard has the burden of proving by clear and convincing evidence that punitive damages should be awarded and, if so, the amount of any such damages.

Punitive damages may be awarded if there is a finding that Hallmark's conduct that harmed Oxnard was malicious, oppressive or in reckless disregard of the Oxnard's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of Oxnard.

5
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT

**(c)** To support its bad faith claim, Oxnard will submit Oxnard's tender of *DeSoto* as a medical records request; Hallmark's claims notes on the medical record request; Hallmark's tender of *DeSoto* following filing of the lawsuit; Oxnard's correspondence with Hallmark in relation to *DeSoto*, including Hallmark's denial and correspondence requesting Hallmark's participation in the October 2019 mediation; Hallmark's claims notes and claim files for *DeSoto*; Hallmark's Best Practices for Healthcare Claims; Hallmark's privilege log in this action; the expert report of Barry Zalma; Hallmark's motions in the instant litigation and certain of the Court's orders.

To support its request for *Brandt* fees, Oxnard will submit its legal invoices in these actions, and Oxnard's records documenting payment of these invoices.

To support its request for punitive damages, Oxnard will submit evidence on the financial condition of Hallmark and the financial condition of Oxnard at the time it litigated and settled *DeSoto*.

**(d)  Affirmative Defenses**

**First Affirmative Defense:** Hallmark behaved reasonably in denying the defense of *DeSoto* as there was a "genuine dispute" as to the existence of coverage.

**(e)  Elements of Affirmative Defenses**

**Elements of First Affirmative Defense, "Genuine Dispute"**

If there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad-faith liability imposed on the insurer for advancing its side of that dispute. This is known as the "genuine dispute" doctrine. The genuine-dispute doctrine is subsumed within the test of reasonableness or proper cause (element 3). No specific instruction on the doctrine need be given. CACI 2331, citing *McCoy v. Progressive West Ins. Co*. (2009) 171 Cal.App.4th 785, 792–794.

"The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724.

"While many, if not most, of the cases finding a genuine dispute over an insurer's coverage liability have involved legal rather than factual disputes, we see no reason why the genuine dispute doctrine should be limited to legal issues. That does not mean, however, that the genuine dispute doctrine may properly be applied in every case involving purely a factual dispute between an insurer and its insured. This is an issue which should be decided on a case-by-case basis." *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.,* (2001) 90 Cal.App.4th 335, 348.

**(f)** For Hallmark only.

**(g)** No third-parties are involved.

**(h)** Oxnard will seek to exclude all evidence about Shlomo Rechnitz as irrelevant to both the bad faith cause of action and Oxnard's request for damages.

Oxnard will also object to any evidence related to whether coverage for *DeSoto* existed under the 17/18 Policy. The Court has already granted summary judgment on this claim, finding that coverage did exist, and Hallmark breached its duty to defend. The duty to indemnify is not in issue, as all of Oxnard's damages flow from the breach of the duty to defend. Thus, evidence on coverage is irrelevant to any disputed issue.

Oxnard will further object to the admission of the testimony of Terry Kelly as lacking foundation and probative value. Mr. Kelly did not work for Hallmark when it handled the *DeSoto* claim, and so he lacks personal knowledge of its handling. Further,

his testimony appears to rely on inadmissible hearsay in the form of privileged communications with counsel.

### (i) Issues of Law

Oxnard is not aware of any unresolved issues of law that are central to the remaining issues.

## L.R. 16-4.3 Bifurcation of Issues

The parties agree to bifurcate the issue of punitive damages, although Hallmark also seeks to further bifurcate the trial. Oxnard only agrees to bifurcating punitive damages.

In determining whether to bifurcate, the Court may consider such factors as potential prejudice to the parties, jury confusion, convenience and judicial economy. *See, e.g., Green v. Baca*, 226 F.R.D. 624, 630 (C.D. Cal. 2005). Bifurcating punitive damages will not prejudice either party. It will be more convenient for both parties and the Court if the jury receives evidence and argument on punitive damages only if it finds liability on the bad faith claim. This approach avoids potentially unnecessary costs for the parties and use of the Court and jury's time. Presenting punitive damages as a single separate, issue to the jury will also decrease the risk of jury confusion that may arise if they were simultaneously deciding liability and punitive damages.

## L.R. 16-4.4 Jury Trial

Oxnard has demanded a jury trial on its bad faith claim. The issue of *Brandt* fees is tried by a jury unless the parties stipulate to have the Court decide entitlement and amount of fees. *Brandt*, 37 Cal.3d at 819. Oxnard is amenable to having the Court decide the amount of fees. Hallmark has not indicated whether it will so stipulate.

## L.R. 16-4.4 Attorneys' Fees

The legal basis for Oxnard's request for *Brandt* fees is described *supra* in Claim 2, (b).

**L.R. 16-4.5 Abandonment of Issues**

Oxnard has not abandoned any claims, but the Court has previously entered order granting summary judgment under the 17/18 Hallmark Policy and dismissing Oxnard's causes of action for: breach of the 18/19 Hallmark Policy; unfair business practices; and, unjust enrichment/restitution.

DATED: March 13, 2024           THE WAGNER FIRM

                                By:*/s/ Avi Wagner*
                                Avi Wagner
                                1925 Century Park East, Suite 2100
                                Los Angeles, California 90067
                                Telephone:  (310) 491-7949
                                Facsimile:   (310) 694-3967
                                Email:         avi@thewagnerfirm.com

                                *Attorneys for Plaintiff Oxnard Manor LP dba Oxnard Manor Health Center*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say: I am not a party to the above case, and am over eighteen years old. On March 13, 2024 I served true and correct copies of the foregoing documents,

- **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW;**

- **PLAINTIFF'S MOTION IN LIMINE 1 (EXCLUDE ARGUMENT OR EVIDENCE RE: SHLOMO RECHNITZ);**

- **PLAINTIFF'S MOTION IN LIMINE 2 (EXCLUDE ARGUMENT OR EVIDENCE RE: EXISTENCE OF COVERAGE FOR DE SOTO);**

- **PLAINTIFF'S MOTION IN LIMINE 3 (EXCLUDE ARGUMENT OR INFERENCE RE: REDACTED OR WITHHELD PRIVILEGED MATERIALS EVIDENCE A REASONABLE INVESTIGATION BY HALLMARK AND ITS COUNSEL);**

- **PLAINTIFF'S MOTION IN LIMINE 4 (EXCLUDE TERRY KELLY TESTIMONY ON HALLMARK'S HANDLING OF DESOTO);**

- **PLAINTIFF'S MOTION IN LIMINE 5 (EXCLUDE NON-REBUTTAL TESTIMONY OF REBUTTAL EXPERT BURL DANIEL);**

- **PLAINTIFF'S MOTION TO BIFURCATE;**

- **OMNIBUS DECLARATION OF AVI WAGNER IN SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE AND MOTION TO BIFURCATE;**

- **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE 1 (EXCLUDE ARGUMENT OR EVIDENCE RE: SHLOMO RECHNITZ);**

- **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE 2 (EXCLUDE ARGUMENT OR EVIDENCE RE: EXISTENCE OF COVERAGE FOR DE SOTO);**

- **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE 3 (EXCLUDE ARGUMENT OR INFERENCE RE: REDACTED OR WITHHELD PRIVILEGED MATERIALS EVIDENCE A REASONABLE INVESTIGATION BY HALLMARK AND ITS COUNSEL);**

- **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE 4 (EXCLUDE TERRY KELLY TESTIMONY ON HALLMARK'S HANDLING OF DESOTO);**

- **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE 5 (EXCLUDE NON-REBUTTAL TESTIMONY OF REBUTTAL EXPERT BURL DANIEL);**

- **[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION TO BIFURCATE;**

- **JOINT EXHIBIT LIST;**

- **PLAINTIFF'S WITNESS LIST; AND**

- **JOINT STATUS REPORT ON SETTLEMENT**

by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 13, 2024, at Los Angeles, California.

*/s/ Charissa Morningstar*

Charissa Morningstar
