Avi Wagner (SBN #226688)
Jennifer N. Hinds (SBN #301804)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile:  (310) 694-3967
Email:        avi@thewagnerfirm.com

*Attorneys for Plaintiff Oxnard Manor LP*
*dba Oxnard Manor Health Center*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Oxnard Manor LP dba Oxnard Manor Health Center, a California Limited Partnership, <br><br> Plaintiff, <br><br> vs. <br><br> Hallmark Specialty Insurance Company, an Oklahoma Corporation, and DOES 1-100, <br><br> Defendant(s). | Case No.: 2:23-cv-01322-SPG-MAR (Removed from Los Angeles County Superior Court, Case No. 23STCV02077) <br><br> Hon. Sherilyn Peace Garnett <br><br> **OMNIBUS DECLARATION OF AVI WAGNER IN SUPPORT OF PLAINTIFF OXNARD MANOR LP'S MOTIONS IN LIMINE 1-5; MOTION TO BIFURCATE** |

I, Avi Wagner, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am the principal of The Wagner Firm, counsel for plaintiff Oxnard Manor LP dba Oxnard Manor Health Center ("Oxnard") in this matter.  I have personal knowledge of the matters set forth herein and if called to testify could and would truthfully testify to the following.

2.      I make this Omnibus Declaration in support of Plaintiff Oxnard Manor's Motions *in Limine* 1-5 and Motion to Bifurcate (collectively, "Motions").

3.      I conferred by telephone with counsel for Hallmark Specialty Insurance Company ("Hallmark") William Morison on March 12, 2024 on all Motions.  We were unable to resolve any Motion.

4.      During this call Morison represented that it contended that the duty to indemnify must still be adjudicated on Oxnard's breach of contract action and that evidence related to Shlomo Rechnitz was relevant to the issue of Hallmark's duty to indemnify Oxnard and Oxnard's bad faith claim.

5.      On the call, Hallmark counsel indicated that Hallmark was amenable to bifurcating the issue of punitive damages, but further proposed separate bench trials for certain bad faith and coverage issues, which Oxnard does not believe is necessary or appropriate.

6.      This application contains no indication that Shlomo Rechnitz was involved in procuring the Hallmark Long-Term Care Organization Insurance Policy, Policy No. 75LTP000118 (Eff. 06/01/17-06/01/18) ("17/18 Policy"), nor any other policy, for Oxnard.

7.      During the purported investigation of the action filed against Oxnard by the heirs of deceased resident Kathleen DeSoto ("*DeSoto*") Hallmark never

DECLARATION OF AVI WAGNER

interviewed Mr. Rechnitz, or otherwise personally involved him in its handling of *DeSoto*.

8.    I am not aware of Hallmark ever contending that it had access to Oxnard's discovery responses submitted in the underlying *DeSoto* when forming its coverage decision about *DeSoto*, or at any time before such discovery responses produced during discovery in this action.

9.    Attached hereto as Exhibit A is a true and correct copy of Oxnard's application for a Long-Term Organization Liability insurance policy as produced by Hallmark in this action.

10.    Attached hereto as Exhibit B is a true and correct copy of Hallmark First Amended Initial Disclosures served in this action.

11.    Attached hereto as Exhibit C is a true and correct copy of an excerpt of the deposition transcript of Hallmark Rule 30 (b)(6) Terry Kelly.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 13, 2024.          */s/ Avi Wagner*

                                                                 Avi Wagner

DECLARATION OF AVI WAGNER

# Exhibit A



**LONG TERM CARE ORGANIZATION LIABILITY**
**NEW BUSINESS APPLICATION**

**INSTRUCTIONS:**

1 Please complete all tabs (General, Facility, Staffing-RM, Ins. Coverage, Claims & Warranty)
2 Sections C - H should be completed for all insured locations
3 Please sign and date the application on the Claims & Warranty Tab
4 Please complete the Claims Supplement if the Applicant answers "Yes" to Question 3 in Section M, Claims

**CORPORATE INFORMATION:**

**A.  Applicant Information**

| | |
|---|---|
| 1 Corporate Name: | Oxnard Manor, LP dba Oxnard Manor Healthcare Center |
| 2 Address: | 1400 West Gonzales Road   Oxnard, CA 93030 |
| 3 Website: | |

4 Ownership Type:

| | | | |
|---|---|---|---|
| | Individual | x | Corporation |
| | Partnership | | Joint Venture |

5 Profit Status:  [x]  For Profit    [ ]  Not For Profit

6 Number of facilities:  1

**B.  General Information**

| | | | |
|---|---|---|---|
| 1 Is any part of the applicant operated / leased by a management corporation? | x | Yes | No |
| If "Yes" please explain and/or provide an organization chart: | | | |

| | | | |
|---|---|---|---|
| 2 Has the Applicant or any associated entity ever had a license suspended, revoked, or placed under probation by any government licensing agency? | Yes | x | No |
| 3 Has the Applicant been accused of any Medicare or Medicaid fraud or abuse violations, or paid any fines or penalties? | Yes | x | No |
| 4 Has the applicant ever filed for bankruptcy? | Yes | x | No |
| 5 Does the Applicant anticipate any facility expansions (increase in licensed beds or new facilities) within the next 12 months? | Yes | x | No |
| 6 Does Applicant have any plans for mergers, acquisitions, new services, sale of assets or business, or any similar corporate plans within the next 12 months? | Yes | x | No |

7 Please explain any "Yes" answer for questions 1-6:

© 2010 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

HSIC-000228

**FACILITY INFORMATION:**
Please complete a separate copy of sections C - H for each facility or building location

Facility Name: Oxnard Manor, LP dba Oxnard Manor Healthcare Center
Address: 1400 West Gonzales Road
City: Oxnard          State: ca          Zip Code: 93036

## C. Description of Services

1 Exposures:

| | Licensed Beds / Units | Occupied Beds / Units |
|---|---|---|
| Skilled Nursing / Intermediate: | 82 | |
| Sub Acute / Rehabilitation: | | |
| Assisted Living: | | |
| Independent Living: | | |
| Dementia / Alzheimer: | | |

Home Health Services: _____ number of annual visits    Adult Daycare: _____ number of daily attendees

Is there a separate Alzheimer unit?    Yes _____    x  No _____

2 Resident Groups:

Age of Resident:   Under 21: _____ residents   21 to 64: _____ residents   65 Yrs + _____ residents

Length of Stay:   0 - 60 days: _____ residents   61 - 180 days: 20% residents   181 + days: 80% residents

## D. Physical Premises

1 Number of stories: 1          Square feet: 32,311   Year built: 1975

2 Construction Type:   Fire Resistive [ ]   Frame [ ]   Brick [ ]
                        Masonry Non-Combustible [x]   Other [ ]

3 Sprinklers:   None [ ]   Entire Facility [x]   Common Areas [ ]

4 Smoke Detectors:   None [ ]   Entire Facility [x]   Common Areas [ ]

5 Was the building originally designed and constructed for Nursing Home occupancy?   x Yes   No
6 Does the facility maintain a centralized alarm system?   x Yes   No
7 Are there alarms on all exit doors?   x Yes   No

## E. Daycare

1 Do you offer onsite daycare for children?   Yes   x No
2 If "Yes" to the previous question, is it open to the public?   Yes   No

## F. Medication Administration

1 Indicate who is responsible for administering residents medications   x Licensed Staff   Medication Aide

## G. State Inspections (Nursing Homes Only)

1 Total number of deficiencies on most recent survey:   See survey
2 Total number of deficiencies with severity level of G or higher on most recent survey:
3 Total number of life safety code deficiencies on most recent survey:

© 2010 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

HSIC-000229

## H. Staffing

| 1 | Employed or Contracted | Years at this facility | Years of experience | Full-Time | Part-Time |
|---|---|---|---|---|---|
| Director of Nursing | E | 2 | 5+ | FT | |
| Medical Director | C | | | | x |
| Administrator | E | 5 | 5+ | FT | |

2 Does Medical Director provide direct patient care?    x    Yes    No

3 What medical malpractice limits is Medical Director required to carry?    $1MM/$3MM

4 How many hours per week is the Medical Director physically at the facility?    16+

5 Other Staffing:

| | Employed | Contracted |
|---|---|---|
| MD/Physicians | | |
| Registered Nurses | x | |
| Licensed Practical Nurses | x | |
| Certified Nursing Assistants | x | |
| Nurse Aides | x | |
| Medication Aides | x | |
| Psychologists | | x |
| Counselors | | x |
| Physical Therapists | x | |

| | Employed | Contracted |
|---|---|---|
| Students/Volunteers | | |
| Pharmacists | | x |
| Dieticians | x | |
| Administrative Personnel | x | |
| Independent Contractors | | |
| Maintenance/Security Personnel | | |
| Beauticians/Barbers | | x |
| Other | | |
| TOTAL # of EMPLOYEES | | |

6 Please list departments for any contracted employees that were indicated in the "Other" row:

7 Actual number of employees working at a time on each shift (average):

| | 1st shift | 2nd Shift | 3rd Shift | Weekends | Holidays |
|---|---|---|---|---|---|
| RNs | | | | | |
| LPNs | | | | | |
| CNAs | | | | | |
| Medication Aides | | | | | |

8 Are Certificates of Insurance obtained for all independent contractors?    x    Yes    No

9 What percentage of the licensed nursing staff has been working for the applicant for more than one year?    65%    %

## I. Risk Management Policies and Procedures:

1 Is there an established risk management program?    x    Yes    No

2 Are nursing assessment protocols in place to identify residents at risk for:

Falls: x    Yes    No
Elopement: x    Yes    No
Nutritional deficiency: x    Yes    No

3 Is a comprehensive nursing assessment conducted for new residents?    x    Yes    No

4 Does the facility have a formalized resident complaint resolution program?    x    Yes    No

5 Who is responsible for overseeing any documents resulting from a resident complaint?    Administrative

6 Are Wander Guards or similar devices used?    x    Yes    No

7 Are all visitors required to sign-in at the receptionists area?    x    Yes    No

8 Does the facility have locked doors prior to entering the reception area?    Yes    No

9 Is there a written evacuation plan?    x    Yes    No

10 Are evacuation plans posted in all areas of the facility?    x    Yes    No

11 Is review and "walk through" of disaster plans a part of staff orientation?    x    Yes    No

12 How often are fire/evacuation drills conducted?    Annually

13 Does the Applicant offer continuing education for their staff?    x    Yes    No

14 Does the Applicant provide an Employee Handbook to every employee?    x    Yes    No

15 Does the Applicant utilize a vendor to analyze MDS submissions?    Yes    x    No

© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

LAA-STND (11/10 ed.)    3

HSIC-000230

**J. Current and Past Professional Liability Coverage History**

List prior Primary Professional & General Liability insurance carried for each of the past five (5) years:

| Insurance Carrier | Effective Date | SIR | Premium | Limits of Liability | Retro Date | GL Included (Y or N) | Excess Carrier (N/A if none) | Excess Limits | Excess Premium |
|---|---|---|---|---|---|---|---|---|---|
| Lloyds, London | 06-01-2016 | 10,000 | 65,000 | 1m/3m | 06-01-2012 | Y | | 2M | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**K. Coverage Terms Requested**

(Please note that coverage for this request is not automatically available; the terms and conditions of the policy, if issued, will determine actual coverage.)

Requested Limits of Liability:    1,000,000             3,000,000
                                  _____           _____
                                  Per Claim             Annual Aggregate

Requested Self-Insured Retention:  10,000-25,000
                                   _____
                                   Per Claim

**L. MISSOURI APPLICANTS/AGENTS: DO NOT ANSWER THIS QUESTION:**

Has any insurance company ever cancelled, non-renewed or declined to accept your Professional Liability and/or General Liability insurance?          _____ Yes    x _____ No
If Yes, please provide details:    _____

_____
_____

© 2010 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

4

HSIC-000231

**M. Claims**

1  Please provide five (5) years of insurance company or third party adminstrator produced loss runs that have been valued within the last three (3) months.  The loss run should describe all claims/incidents during the past five (5) years made against the Applicant or any individual or entity proposed for coverage hereunder that would fall within the scope of the proposed insurance. Please include both primary and excess coverage loss runs as applicable.
If you are not aware of any claims in the last five (5) years, please state, "None".        <u>Loss runs enclosed</u>

2  Please provide detailed descriptions of all claims with either paid or reserved amounts of $50,000 or more.  Attach the descriptions to this application.

3  During the past five (5) years are you aware of any fact, circumstance, situation, transaction, event, act, error, or omission which you have reason to believe may result in a claim that has not been reported on the loss runs attached to this application?                                                             Yes     x     No

If the Applicant answered "Yes" to question number 3 above, please complete the attached Claims Supplement.

**N.  Warranty Statement**

FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSONS AND ENTITY(IES) PROPOSED FOR THIS INSURANCE DECLARES THAT TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS HEREIN ARE TRUE AND COMPLETE. THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. SIGNING THIS APPLICATION DOES NOT BIND THE INSURER TO COMPLETE THE INSURANCE.

IF THE INFORMATION IN THIS APPLICATION MATERIALLY CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE POLICY EFFECTIVE DATE, THE APPLICANT WILL NOTIFY THE INSURER WHO MAY MODIFY OR WITHDRAW ANY QUOTATION.

THE INFORMATION CONTAINED AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND, ALONG WITH THE APPLICATION, IS CONSIDERED TO BE PHYSICALLY ATTACHED TO THE POLICY AND WILL BECOME PART OF THE POLICY ISSUED.

Print Applicant Name:        AARON ROBIN

Applicant Signature:
Title:                              COO
Date:                              5/26/14

Please attach the following documents to the application:
      Information on disciplinary actions or license revocations
      IF any of Applicant's skilled nursing facilities are located in PA - MCare Loss Runs
      Copy of Current certificate of Licensure
      Copy of Brochure(s) , marketing  or advertising materials
      Copy of most current declarations page from professional liability policy

© 2010 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

HSIC-000232

# Exhibit B

WILLIAM C. MORISON (No. 99981)
wcm@morison.law
JOANNE M. WENDELL (No. 191785)
jmw@morison.law
MORISON LAW, LLP
3478 Buskirk Avenue, Suite 342
Pleasant Hill, California 94523
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Defendant
HALLMARK SPECIALTY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OXNARD MANOR LP dba OXNARD MANOR HEALTH CENTER, a California Limited Partnership,<br><br>Plaintiff,<br><br>vs.<br><br>HALLMARK SPECIALTY INSURANCE COMPANY, an Oklahoma Corporation, and DOES 1 through 100,<br><br>Defendants. | No.: 2:23-cv-01322-SPG-MAR<br><br>Hon. Sherilyn Peace Garnett<br><br>FIRST AMENDED INITIAL DISCLOSURES OF HALLMARK SPECIALTY INSURANCE COMPANY |

Pursuant to Federal Rule of Civil Procedure 26(a)(1), defendant Hallmark Specialty Insurance Company ("Hallmark") makes the following initial disclosures. Hallmark reserves the right to rely on any information or other evidence that may later develop or come to its attention. Hallmark reserves the right to amend or modify its responses under Federal Rule of Civil Procedure 26(e), as its investigation and discovery continue and new or more complete information may become available.

- 1 -

A. <u>Persons Likely To Have Discoverable Information</u>

Hallmark provides the following list of persons who may have discoverable information that Hallmark may use to support its claims or defenses, other than solely for impeachment.  Hallmark does not warrant or represent that all of the following persons have knowledge of relevant information, or knowledge of information that has any tendency to make a fact more or less probable and of consequence in determining the action.  By disclosing any particular witness, Hallmark does not intend to waive, and instead expressly reserves, all objections whatsoever with regard to that witness's potential testimony including, without limitation, all claims of privilege and work product.

1. Person Most Knowledgeable ("PMK") for Hallmark, Hallmark Financial Services, Inc. ("HFS"), Two Lincoln Centre, 5420 Lyndon B. Johnson Freeway, Suite 1100, Dallas, TX  75240-2345 regarding underwriting of Hallmark policies 75LTP000118, LTP000118-01, 75LTX000119, and LTX000119-01.

2. PMK for Hallmark, Two Lincoln Centre, 5420 Lyndon B. Johnson Freeway, Suite 1100, Dallas, TX  75240-2345 regarding Hallmark's claims-handling actions taken with respect to the underlying lawsuit (*DeSoto*").

3. Schlomo Rechnitz ("Rechnitz").  This person is identified individually and in his capacity as a representative or agent of Oxnard Healthcare & Wellness Centre, LP ("Centre"), owner of Oxnard Manor, LP ("Oxnard"), and owner of numerous other nursing facilities.  This person has knowledge with respect to, without limitation, Centre, Oxnard, SR Capital, LLC ("SR Cap") (of which Rechnitz was the sole member on formation and is the sole member), SR Administrative Services, LLC ("SR Admin") (of which SR Cap is the sole member), Brius, LLC ("BLLC"), Brius Management Co., Inc. ("BMC"), Rockport Administrative Services, LLC ("RAS"), Boardwalk West Financial Services, LLC ("BWF"), *DeSoto*, damages, other Rechnitz-owned nursing facilities, and claims against other Rechnitz-owned facilities.

4. Aaron Robin, Oxnard's Chief Operating Officer. This person is identified individually and in his capacity as a representative or agent of Oxnard. This person has knowledge with respect to, without limitation, Rechnitz, Oxnard operations, BLLC, BMC, RAS, and BWF, preparing applications for insurance coverage for Oxnard, and Hallmark policies 75LTP000118, LTP000118-01, 75LTX000119, and LTX000119-01.

5. Bertie Krieger. This person is identified individually and in his capacity as an owner of Oxnard, and owner of numerous other nursing facilities. This person has knowledge with respect to, without limitation, Rechnitz, Centre, Oxnard, BLLC, BMC, RAS, BWF, *DeSoto*, damages, other owned nursing facilities, and claims against other owned nursing facilities.

6. Yalda S. Neil. This person is identified individually and in her capacity as a representative or agent of RAS, 3580 Wilshire Boulevard, 6th Floor, Los Angeles, California 90010. This person has knowledge with respect to Rechnitz, Centre, Oxnard, BLLC, BMC, RAS, BWF, *DeSoto*, damages, other owned nursing facilities, and claims against other owned nursing facilities.

7. PMK for Americana Program Insurance Services, 214 Senate Avenue, Suite 201, Camp Hill, Pennsylvania 17011-2336.

8. Amanda Fioretti, Assistant Vice President, AmWins Program Underwriters, Inc., 308 Farmington Avenue, Farmington, Connecticut, 06032, T: (860) 269-6114, E: amanda.fioretti@amwins.com. This person is identified individually, in her capacity as a representative or agent of AmWins, in her capacity as a representative or agent of Oxnard, and as a broker for other Rechnitz-owned nursing facilities. This person has knowledge with respect to insurance policies obtained for Rechnitz-owned nursing facilities, including Oxnard.

9. Steven Riss, Senior Vice President, AmWins Insurance Brokerage of California, LLC, 21550 Oxnard Street, Suite 1100, Woodland Hills, California 91367, T: (818) 772, 3819, E: steven.riss@amwins.com. This person is identified

individually and in his capacity as a representative or agent of AmWins, as a representative or agent of Oxnard, and as broker for other Rechnitz-owned nursing facilities.  This person has knowledge with respect to insurance policies obtained for Rechnitz-owned nursing facilities, including Oxnard.

10.    PMK for Rechnitz-owned nursing facilities regarding nursing operations from June 1, 2012 to June 1, 2019.  This person is identified individually and in his or her capacity as a representative or agent of Rechnitz-owned nursing facilities.  This person has knowledge with respect to, without limitation, reported, and actual, personnel per resident.

11.    PMK for Rechnitz-owned nursing facilities regarding business operations from June 1, 2012 to June 1, 2019.  This person is identified individually and in his or her capacity as a representative or agent of Rechnitz-owned nursing facilities.  This person has knowledge with respect to business operations among and between Rechnitz, Centre, Oxnard, BLLC, BMC, RAS, BWF, SR Cap, SR Admin, and other owned nursing facilities.

12.    PMK regarding claims against Oxnard from June 1, 2012 to June 1, 2019.  This person is identified in his or her capacity as a representative or agent of Oxnard.

13.    PMK regarding claims against other Rechnitz-owned facilities from June 1, 2012 to June 1, 2019.  This person is identified in his or her capacity as a representative or agent of Rechnitz and Rechnitz owned or affiliated entities.

14.    PMK regarding damages that Oxnard seeks from Hallmark in this litigation.

15.    PMK for Centre (if different from Rechnitz).  This person is identified individually and in his or her capacity as a representative or agent of Centre.  This person has knowledge with respect to business operations among and between Rechnitz, Centre, Oxnard, BLLC, BMC, RAS, BWF, SR Cap, SR Admin, and claims against Centre from June 1, 2012 to June 1, 2019, including *DeSoto*.

- 4 -

16.     PMK for BLLC.  This person is identified individually and in his or her capacity as a representative or agent of BLLC.  This person has knowledge with respect to business operations among and between Rechnitz, Oxnard, BLLC, BMC, RAS, BWF, SR Cap, SR Admin, and claims against BLLC from June 1, 2012 to June 1, 2019, including *DeSoto*.

17.     PMK for BMC.  This person is identified individually and in his or her capacity as a representative or agent of BMC.  This person has knowledge with respect to business operations among and between Rechnitz, Oxnard, BLLC, BMC, RAS, BWF, SR Cap, SR Admin, and claims against BMC from June 1, 2012 to June 1, 2019, including *DeSoto*.

18.     PMK for RAS (if different from Yalda S. Neil), 3580 Wilshire Boulevard, 6ᵗʰ Floor, Los Angeles, California 90010 (of which Steven Stroll is the sole member).  This person is identified individually and in his or her capacity as a representative or agent of RAS.  This person has knowledge with respect to business operations among and between Rechnitz, Oxnard, BLLC, BMC, RAS, BWF, SR Cap, SR Admin, and claims against RAS from June 1, 2012 to June 1, 2019, including *DeSoto*.

19.     PMK for BWF (if different from Rechnitz), 7223 Beverly Boulevard, Suite 205, Los Angeles, California 90036.  This person is identified individually and in his or her capacity as a representative or agent of BWF.  This person has knowledge with respect to business operations among and between Rechnitz, Oxnard, BLLC, BMC, RAS, and BWF, and claims against BWF from June 1, 2012 to June 1, 2019, including *DeSoto*.

20.     Oxnard coverage counsel Kayla M. Robinson.  This person is identified individually and in her capacity as an attorney, representative or agent of Pasich LLP, 10880 Wilshire Boulevard, Suite 2000, Los Angeles California 90024, KRobinson@PasichLLP.com, (424) 313-7856, and as an agent of Oxnard.

21.    PMK at defense counsel for Oxnard, BLLC, BMC, RAS, and BWF. This person is identified individually and in his or her capacity as defense counsel for Oxnard, BLLC, BMC, RAS, and BWF in *DeSoto*.  They have knowledge of the defense provided in *DeSoto,* the cost thereof, and the settlement reached.

22.    PMK at each defense law firm for Rechnitz, Oxnard, BLLC, BMC, RAS, and BWF regarding timekeeping and business records including, without limitation, invoices, and payments.

23.    PMK at California Department of Public Health regarding investigations of, and actions taken against, Rechnitz and Rechnitz-owned or potentially owned nursing facilities including, without limitation, correspondence dated July 8, 2016.

24.    PMK at California's Attorney General's Office regarding investigations of, and actions taken against, Rechnitz and Rechnitz-owned nursing facilities, directly or indirectly, in whole or in part, including, without limitation, Emergency Motion to Disqualify Stalking Horse Parties From (1) Interim Management Of Debtor's Facilities, and (2) Purchasing Debtor's Facilities Or Assets filed August 28, 2014, in United States Bankruptcy Court Central District of California, lead case 8:14-bk-11335-CB.

25.    PMK at the California Legislature regarding the "Skilled Nursing Facility Ownership and Management Reform Act of 2022", e.g., AB 1502, introduced and signed into law September 27, 2022 in response to Rechnitz and Rechnitz-owned nursing facilities including Oxnard, enacting Health & Safety Code sections 1253.2 and 1253.3, and amending sections 1265 and 1267.5.

26.    PMK at California Advocates for Nursing Home Reform regarding investigations of, actions against, and the results of actions against Rechnitz and Rechnitz-owned nursing facilities including Oxnard, and its letter to the California Department of Public Health dated January 4, 2016.

27.     PMK at PROTECT Plan Coalition regarding investigations of, actions against, and the results of actions against Rechnitz and Rechnitz-owned nursing facilities including Oxnard, and its Press Release dated March 23, 2021.

28.     PMK at defense counsel in the *Forman* action/arbitration and in the JCCP litigation.

29.     All witnesses disclosed by Oxnard in its initial and supplemental disclosures.

30.     Dr. Michael Wasserman, former CEO of RAS.

31.     PMK of SR Cap (if different from Rechnitz), 7223 Beverly Boulevard, Suite 205, Los Angeles, California 90036.  This person has knowledge of Rechnitz business operations and ownership.

32.     PMK of SR Admin (if different from Rechnitz), 7223 Beverly Boulevard, Suite 205, Los Angeles, California 90036.  This person has knowledge of Rechnitz business operations and ownership.

33.     Steven Stroll, CPA, 3580 Wilshire Boulevard, 6th Floor, Los Angeles, California 90010.  This person has knowledge of Rechnitz business formation, operations, and ownership.  He is the sole member of RAS and signed the articles of organization and was the initial agent for service of process for SR Cap (of which Rechnitz is the sole member).  He signed the articles of organization for BWF (of which Rechnitz is the sole member).

34.     Devora Pinson, office manager and agent for service of process for SR Cap, SR Admin, and BWF, 7223 Beverly Boulevard, Suite 205, Los Angeles, California 90036.  This person has knowledge of Rechnitz business operations and ownership (including a labor judgment against BWF).

B. Relevant Documents

Hallmark identifies the following documents that it presently believes may be used to support its claims or defenses, other than solely for impeachment:

1. Hallmark insurance policies.

2.   Insurance applications.

3.   *DeSoto* Complaint.

4.   *Foreman* Complaint and documents in arbitration.

5.   The JCCP 4988 Complaint and documents in litigation.

6.   Correspondence between Hallmark and anyone on behalf of Rechnitz, Oxnard, BLLC, BMC, RAS, or BWF regarding *DeSoto*, Hallmark policies, and applications.

7.   Non-privileged, non-confidential portions of Hallmark's *DeSoto* claim file.

8.   Documents between the California Department Of Public Health and Rechnitz and/or any nursing facility owned directly or indirectly, in whole or in part, by Rechnitz.

9.   Documents between the California Attorney General's Office and Rechnitz and/or any nursing facility owned or sought to be owned directly or indirectly, in whole or in part, by Rechnitz.

10.  Legislative history of the "Skilled Nursing Facility Ownership and Management Reform Act of 2022", e.g., AB 1502, introduced and signed into law September 27, 2022 in response to Rechnitz and Rechnitz-owned nursing facilities including Oxnard, enacting Health & Safety Code sections 1253.2 and 1253.3, and amending sections 1265 and 1267.5.

11.  All penal documents (e.g., arrest warrant, indictment, plea agreement) for Rechnitz or any Rechnitz-owned or managed entity.

12.  All documents disclosed by Oxnard in its initial and supplemental disclosures.

13.  All documents between Rechnitz, Oxnard, BLLC, BMC, RAS, BWF, SR Cap, SR Admin and/or anyone on their behalf.

Hallmark does not admit or agree that all of these documents are relevant, will lead to the discovery of admissible evidence, or are otherwise admissible in

this action.  Additionally, in identifying these documents, Hallmark does not intend
to waive, but instead expressly continues to reserve any and all rights, protections
and privileges whatsoever that might apply to some or all of the documents
including (1) all objections relating to the confidentiality, privilege, relevance,
materiality, and admissibility of documents identified herein; (2) the right to object
to the use of any produced document, in whole or in part, or to the subject matter
covered thereby at any later stage or proceeding in this litigation; and (3) the right
to claw back or seek the return of any documents inadvertently produced.  Hallmark
recognizes its right and duty to supplement its disclosures as appropriate.

    C. <u>Damages:</u>

    Not applicable.

    D. <u>Insurance Agreements</u>

    Not applicable.

Dated: March 28, 2023          MORISON LAW, LLP

                    By: <u>/s/ William C. Morison</u>
                       William C. Morison

                    Attorneys for Defendant
                    HALLMARK SPECIALTY
                    INSURANCE COMPANY

ID 7693

MORISON LAW, LLP

FIRST AMENDED INITIAL DISCLOSURES OF HALLMARK  2:23-CV-1322-SPG-MAR

## **PROOF OF SERVICE**

*Oxnard Manor LP dba Oxnard Manor Health Center v. Hallmark Specialty Ins. Co.*

I, the undersigned, declare:

I am employed in the County of Contra Costa, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 3478 Buskirk Avenue, Suite 342, Pleasant Hill, California 94523.

On March 28, 2023, I served via U.S. Mail the following document(s) **FIRST AMENDED INITIAL DISCLOSURES OF HALLMARK SPECIALTY INSURANCE COMPANY** on the interested parties in this action, addressed as follows:

Avraham N. Wagner
Jennifer N. Hinds
The Wagner Firm
1925 Century Park East, Suite 2100
Los Angeles, California 90067

Attorneys For Plaintiff Oxnard Manor LP
dba Oxnard Manor Health Center

☑   **By U.S. Mail:** I placed the document(s) for collection and processing for mailing with the United States Postal Service in Pleasant Hill, California.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  On the same day that correspondence is placed for collection and processing for mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope or package with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on March 28, 2023, at Pleasant Hill, California.

Joanne M. Wendell, Esq.

ID 7695

Morison
Law, LLP

# Exhibit C

Terry Kelly - September 28, 2023

```
1              IN THE UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
2
   Oxnard Manor LP dba        {}
3  Oxnard Manor Health        {}
   Center, a California       {}
4  Limited Partnership,       {}
                              {}
5           Plaintiff,        {}
                              {}
6  vs.                        {} Case No.:
                              {} 2:23-cv-01322-SPG-MAR
7                             {}
   Hallmark Specialty         {}
8  Insurance Company, an      {}
   Oklahoma Corporation,      {}
9  and DOES 1-100,            {}
                              {}
10    Defendants.             {}
11
                 ORAL AND VIDEOTAPED DEPOSITION OF
12
                          TERRY KELLY
13
                       SEPTEMBER 28, 2023
14
15        ORAL AND VIDEOTAPED DEPOSITION OF TERRY KELLY,
16 produced as a witness at the instance of the Plaintiff,
17 and duly sworn, was taken in the above-styled and
18 numbered cause on the 28th of September, 2023, from 8:37
19 a.m. to 5:01 p.m. Central Standard Time, before Leslie
20 McDonald Wilkins, Registered Professional Reporter,
21 reported by machine shorthand, at the offices of Bell
22 Nunnally, LLP, 2323 Ross Avenue, Dallas, Texas, pursuant
23 to Notice and the Federal Rules of Civil Procedure.
24
25
```

Terry Kelly - September 28, 2023

```
 1              A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4   Mr. Avi Wagner
     THE WAGNER FIRM
 5   1925 Century Park East
     Suite 2100
 6   Los Angeles, California 90067
     310) 491-7949
 7   avi@thewagnerfirm.com
 8
     FOR THE DEFENDANT AND THE WITNESS:
 9
     Mr. Bill Morison
10   MORISON LAW LLP
     3478 Buskirk Avenue
11   Suite 342
     Pleasant Hill, California 94523
12   wcm@morison.law
13
     ALSO PRESENT:
14
         Mr. John Frank, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

Terry Kelly - September 28, 2023

```
 1                          INDEX
                                              PAGE
 2
    APPEARANCES.................................    2
 3
    WITNESS:  TERRY KELLY
 4      EXAMINATION BY MR. WAGNER.................    6
        EXAMINATION BY MR. MORISON...............  208
 5      FURTHER EXAMINATION BY MR. WAGNER........  215
    REPORTER'S CERTIFICATE.....................  219
 6
 7  ATTORNEYS' EYES ONLY               PAGE   LINE
 8      BEGINS                         104    1
        ENDS                           107    3
 9
        BEGINS                         207    7
10      ENDS                           207    22
11  EXHIBITS                              IDENTIFIED
12    1            Deposition Notice         11
13    2            Declaration of T. Kelly   77
14    3            Notice of Petition and
                   Petition to Compel
15                 Arbitration               79
16    4            Class Action Suit
                   Superior Court            91
17
      5            Lewis Brisbois letter
18                 dated February 2019 - AEO 102
19    6            Best Practices for
                   Healthcare Claims
20                 November 2017             107
21    7            Answer to Complaint       126
22    8            Effective Claims Management, Inc.
                   Receipt of Claim, 1/31/18 128
23
      9            Notes Listing for Claim
24                 No. 7540CA061966         128
25   10            Complaint for Damages
```

Terry Kelly - September 28, 2023

| | EXHIBITS | | IDENTIFIED |
|---|---|---|---|
| 11 | | Privilege Log 8/22/23 | 140 |
| 12 | | Copy of Policy No. 75LTP000118 | 142 |
| 13 | | Letter from Beach Cowdrey Jenkins to C. Jensen 9/25/19 | 143 |
| 14 | | E-mail from D. Aragon to C. Jensen 10/8/19 | 145 |
| 15 | | Claim notes, C. Jensen 10/8/19 | 146 |
| 16 | | E-mail from D. Aragon 3/29/19 | 147 |
| 17 | | E-mail from C. Stauber 8/1/19 | 148 |
| 18 | | Senior Care Primary Policy | 149 |
| 19 | | Various e-mails between D. Aragon, C. Stauber, and C. Jensen | 151 |
| 20 | | E-mail from C. Jensen to Y. Neil and R. Badawiya | 155 |
| 21 | | Declination of Coverage | 162 |
| 22 | | E-mail from E. Brady to Expert Exams, 2/27/18 | 179 |
| 23 | | E-mail from P. Theophilos to E. Brady and R. Badawiya 2/28/18 | 179 |
| 24 | | E-mail from S. Riss to E. Brady and E. Fogel 10/19/17 | 181 |
| 25 | | Underwriting printouts 6/1/17 | 185 |
| 26 | | Analysis Printouts | 190 |

Terry Kelly - September 28, 2023

```
 1  EXHIBITS                                    IDENTIFIED
 2  27              E-mail from Y. Neil to
                    C. Jensen, G. Barrows,
 3                  A. Wagner, W. Beaton
                    10/2/19                         203
 4
    28              E-mail from A. Stribling to
 5                  Y. Neil, E. Brady, R. Badawiya,
                    P. Theophilos, C. Tuchfarber
 6                  6/26/18; Lewis Brisbois Interim
                    Report, 6/18/18 - AEO            204
 7
    29              Letter from W. Morison to
 8                  T. Falzarano, 6/6/19             214
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Terry Kelly - September 28, 2023

1              P R O C E E D I N G S

2              THE VIDEOGRAPHER:  And we are going on the

3     record in the videotaped deposition of the corporate

4     representative for Hallmark Specialty Insurance Company,

5     Mr. Terry Kelly, in the case styled Oxnard Manor LP, et

6     al, versus Hallmark Specialty Insurance Company, et al,

7     Case No. 2:23-CV-01322-SPG-MAR filed in the United

8     States District Court for the Central District of

9     California.

10             Today's date is September 28, 2023.  The

11    time is 8:37 a.m.  At this time will counsel please

12    state their appearances for the record and then the

13    court reporter will swear in the witness.

14             MR. WAGNER:  Avi Wagner for the Plaintiff.

15             MR. MORISON:  Bill Morison for the Defendant

16    and the Witness.

17                  (Witness was sworn.)

18                  TERRY KELLY,

19    having first been duly sworn or affirmed, testified as

20    follows:

21                  EXAMINATION

22    BY MR. WAGNER:

23       Q.  Mr. Kelly, will you please state and spell your

24    name for the record.

25       A.  Terry Kelly, T-E-R-R-Y, last name, K-E-L-L-Y.

Terry Kelly - September 28, 2023

1    Q.  And are you with Hallmark Specialty Insurance
2 Company?
3    A.  Yes.
4    Q.  Is your title vice president of Hallmark
5 Financial Services?
6    A.  Yes.
7    Q.  How long have you had that title?
8    A.  Since May 31st of 2022.
9    Q.  Were you with Hallmark prior to that time?
10   A.  No.
11   Q.  Do you have a specific title with Hallmark
12 Specialty Insurance Company as opposed to Hallmark
13 Financial Services, Inc.?
14   A.  No.
15   Q.  Have you had your deposition taken before?
16   A.  Yes.
17   Q.  Approximately how many times?
18   A.  Four.
19   Q.  In what context?
20   A.  Two in context of a malpractice case we were
21 pursuing as the plaintiff, and the other two times were
22 as a law enforcement officer.
23   Q.  So prior to working -- at some point, prior to
24 working for Hallmark you worked in law enforcement?
25   A.  I did.

Terry Kelly - September 28, 2023

1  that defense, it would have to produce privileged
2  communications, communications over which it has
3  asserted a claim of privilege between its adjusters and
4  Mr. Morison's office in respect to the DeSoto claim?
5      A.  I'm aware.
6      Q.  And Hallmark is electing not to do so?
7      A.  Correct.
8      Q.  And Hallmark has elected not to do so thus far in
9  the litigation, correct?
10     A.  Correct.
11            MR. MORISON:  Asked and answered.  Okay.
12  How many times are we going to ask that question?  You
13  got an answer, right?
14            MR. WAGNER:  Yeah, he answered.
15     Q.  (By Mr. Wagner)  And today Hallmark maintains
16  that position, correct?
17            MR. MORISON:  Asked and answered.  You may
18  answer it again.
19     A.  Correct.
20            MR. MORISON:  Do you want to ask about
21  tomorrow?
22            MR. WAGNER:  I would say that would call for
23  speculation.
24            MR. MORISON:  Who knows, it might be a plan.
25            MR. WAGNER:  Well, yeah, actually that's a

Terry Kelly - September 28, 2023

1  good question.

2      Q.  (By Mr. Wagner)  Does Hallmark have any plan to

3  your knowledge to assert an advice of counsel defense in

4  this litigation?

5              MR. MORISON:  Asked and answered.

6      Q.  (By Mr. Wagner)  Let's move to topic 15, which is

7  Hallmark's contention in the Rule 26 report that prior

8  claims and lawsuits against Rechnitz facilities in

9  addition to Foreman, Arbitration Case No. 122005294 and

10  JCCP4998 are relevant to adjudicating the instant case.

11          Have you reviewed that contention in context?

12              MR. MORISON:  I'm going to instruct the

13  witness not to answer based on -- you can answer that

14  yes or no, but do not state anything other than yes or

15  no because it's going to be attorney/client privilege.

16      A.  Can you repeat the question.

17              MR. WAGNER:  Why don't we have the reporter

18  read it back.

19      (Court Reporter read back requested material.)

20      Q.  (By Mr. Wagner)  So for topic 15, that topic is

21  Hallmark's contention in the Rule 26 report that, quote,

22  prior claims and lawsuits against Rechnitz facilities,

23  in addition to Foreman, Arbitration Case No. 1220052954

24  and JCCP4988, end quote, are relevant to adjudicating

25  the incident case?

Terry Kelly - September 28, 2023

1        MR. MORISON:  I haven't heard a question

2  yet.

3     Q.  (By Mr. Wagner)  My question is, Are you familiar

4  with the contention that's quoted from the Rule 26

5  report in this topic?

6     A.  I believe so, yes.

7     Q.  What's your understanding of that contention?

8        MR. MORISON:  You may answer that if it did

9  not come from discussions with counsel.  Otherwise, I

10 instruct you not to answer on the basis of the

11 attorney/client privilege.

12    A.  It came from discussions with counsel.

13    Q.  (By Mr. Wagner)  And so you'll abide by your

14 counsel's instruction not to answer?

15    A.  Yes.

16    Q.  Separate from your discussions with counsel, do

17 you have any understanding of this contention that's

18 referenced in topic 15?

19    A.  No.

20    Q.  There's a reference in that quotation to an

21 Arbitration Case No. 1220052954, do you know what that

22 arbitration is?

23    A.  I don't recall.

24    Q.  Do you know if that's the arbitration case that

25 Foreman was eventually pending?

Terry Kelly - September 28, 2023

1    A.  I'm not aware.

2    Q.  And then there's a reference in there to

3  JCCP4988.  Do you have an understanding as to what that

4  refers to?

5    A.  No.

6    Q.  And so then I assume it's fair to assume that you

7  don't have any understanding that you can testify to

8  here today about this contention referenced in topic 15?

9        MR. MORISON:  Misstates his testimony, other

10 than that he learned through counsel.  You may answer

11 the question.  I'm going to instruct you not to answer

12 to the extent that you only learned it through counsel.

13   A.  What I know about it I learned through counsel so

14 I would abide by my counsel's recommendation.

15   Q.  (By Mr. Wagner)  Does -- is it your understanding

16 that Hallmark contends that the Foreman arbitration --

17 strike that.

18       You understand and we talked previously about how

19 Foreman was ultimately proceeding in arbitration after

20 it was initially in superior court, you remember that

21 discussion, right?

22   A.  I do.

23       MR. MORISON:  Well, that assertion.

24   Q.  (By Mr. Wagner)  You recall that assertion,

25 right?  And to be clear, you don't have independent

Terry Kelly - September 28, 2023

1   knowledge of that, correct?

2       A.   Correct.

3       Q.   And so do you -- does Hallmark contend that when

4   Foreman was pending in arbitration it was still part of

5   a single act or omission as DeSoto?

6               MR. MORISON:   Objection; that is wholly

7   outside the scope of the deposition notice.  Deposition

8   notice does not address any such contention.

9       Q.   (By Mr. Wagner)  You may answer.

10      A.   I'm not aware.

11      Q.   And is it your -- is it Hallmark's contention

12  that the case referred to here as JCCP4988 arises out of

13  a single act, error, or omission as both Foreman and

14  DeSoto?

15              MR. MORISON:   Objection; vague, ambiguous

16  and also outside the scope of the deposition notice

17  because no such contention is listed as a topic.

18      A.   I'm not aware.

19      Q.   (By Mr. Wagner)  Do you have -- going back to

20  topic 15 more specifically, do you have any

21  understanding of how the matters listed in here are

22  relevant to adjudicating the present case?

23              MR. MORISON:   Same objection, same

24  instruction to the extent that knowledge comes only from

25  counsel I instruct you not to answer on the grounds of

Terry Kelly - September 28, 2023

1   the attorney/client privilege.

2       A.   The knowledge I have comes from counsel so I will

3   not answer based on his recommendation.

4       Q.   (By Mr. Wagner)  Then just so we're clear for the

5   record, what is that knowledge?  I understand your

6   counsel is going to instruct.  I'm not trying to trick

7   you here.  I just want to have a clear record.

8            What is that knowledge of that contention?

9                MR. MORISON:  Instruct the witness not to

10  answer because it calls for the disclosure of an

11  attorney/client communication.

12      A.   I will abide by counsel recommendation.

13      Q.   (By Mr. Wagner)  Apart from your discussions of

14  counsel, did you review any documents in preparing for

15  topic 15?

16      A.   I don't recall.

17      Q.   Moving to topic 16, which is Hallmark's

18  contention under Rule 26 report that written

19  communications between other Rechnitz facilities on the

20  one hand and California and/or federal agencies charged

21  with overseeing other Rechnitz facilities on the other

22  hand are relevant to adjudicating instant case.  Do you

23  have any knowledge of this topic?

24                MR. MORISON:  And same objection, same

25  instruction to the extent your knowledge in that regard

Terry Kelly - September 28, 2023

1            CHANGES AND SIGNATURE

2    WITNESS NAME:  TERRY KELLY

3    DATE OF DEPOSITION:  SEPTEMBER 28, 2023

4    PAGE    LINE    CHANGE          REASON

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25

Terry Kelly - September 28, 2023

1    I, TERRY KELLY, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5

   _____
6                      TERRY KELLY
7  THE STATE OF _____)
8  COUNTY OF _____)
9
10    Before me, _____, on this
11  day personally appeared TERRY KELLY, known to me (or
12  proved to me under oath or through
13  _____) (description of identity
14  card or other document)) to be the person whose name is
15  subscribed to the foregoing instrument and acknowledged
16  to me that they executed the same for the purposes and
17  consideration therein expressed.
18    Given under my hand and seal of office this
19  _____ day of _____, _____.
20
21
22
23
24
   _____
   NOTARY PUBLIC IN AND FOR
25  THE STATE OF _____

Terry Kelly - September 28, 2023

1                  IN THE UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
2

Oxnard Manor LP dba          {}
3 Oxnard Manor Health         {}
Center, a California         {}
4 Limited Partnership,        {}
                             {}
5            Plaintiff,       {}
                             {}
6 vs.                         {} Case No.:
                             {} 2:23-cv-01322-SPG-MAR
7                             {}
Hallmark Specialty           {}
8 Insurance Company, an       {}
Oklahoma Corporation,        {}
9 and DOES 1-100,             {}
                             {}
10    Defendants.             {}
11                  REPORTER'S CERTIFICATION
                    DEPOSITION OF TERRY KELLY
12                     SEPTEMBER 28, 2023
13    I, Leslie McDonald Wilkins, Registered Professional
14 Reporter No. 029319, hereby certify to the following:
15    That the witness, TERRY KELLY, was duly sworn by the
16 officer and that the transcript of the oral deposition
17 is a true record of the testimony given by the witness;
18    That the deposition transcript was submitted on
19 _____ to Mr. Terry Kelly, the witness,
20 for examination, signature and return to me by
21 _____;
22    That the amount of time used by each party at the
23 deposition is as follows:
24        Mr. Avi Wagner:  6 hours, 26 minutes.
25        Mr. Bill Morison:  0 hour, 14 minutes.

Terry Kelly - September 28, 2023

1    That pursuant to information given to the deposition
2  officer at the time said testimony was taken, the
3  following includes counsel for all parties of record:
   FOR THE PLAINTIFF:
4
   Mr. Avi Wagner
5  THE WAGNER FIRM
   1925 Century Park East
6  Suite 2100
   Los Angeles, California 90067
7  310) 491-7949
   avi@thewagnerfirm.com
8
   FOR THE DEFENDANT AND THE WITNESS:
9
   Mr. Bill Morison
10 MORISON LAW LLP
   3478 Buskirk Avenue
11 Suite 342
   Pleasant Hill, California 94523
12 wcm@morison.law
13    I further certify that I am neither counsel for,
14 related to, nor employed by any of the parties or
15 attorneys in the action in which this proceeding was
16 taken, and further that I am not financially or
17 otherwise interested in the outcome of the action.
18    Certified to by me this 27th day of August, 2023.
19
20
                    _Leslie McDonald Wilkins_
21                LESLIE McDONALD WILKINS, Registered
                  Professional Reporter No. 029319
22                Dickman Davenport, Inc.
                  4228 North Central Expressway
23                Suite 101
                  Dallas, Texas 75206
24                (214) 855-5100 (800) 445-9548
                  e-mail:  info@dickmandavenport.com
25                www.dickmandavenport.com