Avi Wagner (SBN #226688)
Jennifer N. Hinds (SBN #301804)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
Email: avi@thewagnerfirm.com

*Attorneys for Plaintiff Oxnard Manor LP
dba Oxnard Manor Health Center*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Oxnard Manor LP dba Oxnard Manor Health Center, a California Limited Partnership,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>Hallmark Specialty Insurance Company, an Oklahoma Corporation,<br><br>　　　　　　　　Defendant. | Case No.: 2:23-cv-01322-SPG-MAR<br>(Removed from Los Angeles County Superior Court, No. 23STCV02077)<br><br>Hon. Sherilyn Peace Garnett<br>Magistrate Margo A. Rocconi<br><br>**PLAINTIFF OXNARD MANOR'S PROPOSED DISPUTED JURY INSTRUCTIONS**<br><br>Original Complaint Filed: 2/6/23<br>Removal: 2/22/23<br>Trial: 4/30/24 |

**PLAINTIFF'S DISPUTED JURY INSTRUCTIONS INDEX**

| Number | Title | Source | Page Number |
|---|---|---|---|
| 1 | Claims and Defenses | Ninth Circuit Court of Appeal Model Civil Jury Instructions, 1.5. | 4 |
| 2 | Burden of Proof—Preponderance of the Evidence | Ninth Circuit Court of Appeal Model Civil Jury Instructions, 1.6 | 5 |
| 3 | Implied Obligation of Good Faith and Fair Dealing Explained | CACI 2330; *White v. Western Title Ins. Co.*, 40 Cal.3d 870, 891 (Cal. 1985); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 820 (Cal. 1979). | 6 |
| 4 | Bad Faith (Third Party)—Unreasonable Failure to Defend—Essential Factual Elements | CACI 2336 | 7 |
| 5 | Factors to Consider in Evaluating Insurer's Conduct | CACI 2337; *White v. Western Title Ins. Co*., 40 Cal.3d 870, 891 (Cal. 1985); *Egan v. Mut. Of Omaha Ins. Co*., 24 Cal. 3d 809, 818-19; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., 78 | 8-10 |

| | | Cal. App. 4th 847, 879 (2000) | |
|---|---|---|---|
| 6 | Damages-Proof | Ninth Circuit Court of Appeal Model Civil Jury Instructions, 5.1 | 11 |
| 7 | Punitive Damages | Ninth Circuit Court of Appeal Model Civil Jury Instructions, 5.5. | 12-13 |
| 8 | Damages for Bad Faith | CACI 2350; *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 811–12 (2004); *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1362 (9th Cir. 1993); *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1079 (2007). | 14-15 |
| 9 | Bad Faith Failure to Investigate | CACI 2332; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000); *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152 (9th Cir. 2002) | |

PLAINTIFF'S PROPOSED DISPUTED JURY INSTRUCTIONS
3

**COURT'S INSTRUCTION NO. 1 Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This case involves a dispute over whether the language of a liability insurance policy required an insurer to provide coverage to an insured in an action in which the insured was a defendant (the "underlying action"). The underlying action is referred to as "*DeSoto*".

The pPlaintiff in this action is Oxnard Manor LP dba Oxnard Manor Health Center ("plaintiff"). Plaintiff asserts that it was an insured on an insurance policy issued by Hallmark Specialty Insurance Company ("defendant"). Plaintiff asserts that defendant committed a bad faith breach of the insurance policy's implied covenant of good faith and fair dealing. The pPlaintiff has the burden of proving this claim by clear and convincing evidence.

Defendant asserts that the language of the insurance policy did not provide coverage to plaintiff in *DeSoto*. Defendant The defendant denies that it breached the insurance contract. Defendant denies that it breached the implied covenant of good faith and fair dealing. Defendant asserts that policy exclusions (4) and (5) applied to bar coverage of plaintiff in *DeSoto*. ose claims [and also contends that [*defendant's counterclaims and/or affirmative defenses*]]. Defendant has the burden of proving its defenses and affirmative defenses by a [The defendant has the burden of proof on these [*counterclaims and/or affirmative defenses.* ]by a preponderance of the evidence.]

[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

**OBJECTION:** plaintiff must first prove the duty to indemnify.

**Authority:**   Ninth Circuit Court of Appeal Model Civil Jury Instructions, 1.5.

> **Commented [CM1]:** This ignores or mischaracterizes the Court's ruling granting summary judgment on the duty to defend. The duty to indemnify is not at issue, so this is *not* a dispute about the language of an insurance policy.

**COURT'S INSTRUCTION NO. 2 Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**OBJECTION:** plaintiff must prove that Hallmark violated the implied covenant of good faith by clear and convincing evidence.

**Commented [CM2]:** This is an inaccurate statement of law.

**Authority:** Ninth Circuit Court of Appeal Model Civil Jury Instructions, 1.6.

**COURT'S INSTRUCTION NO. 3 Implied Obligation of Good Faith and Fair Dealing Explained**

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement made. The duty of good faith and fair dealing continues even after the commencement of litigation between the insured and insurer.

~~This obligation goes beyond meeting reasonable expectations of coverage. Insurers hold themselves out as fiduciaries. Accordingly, the obligation of good faith and fair dealing encompass qualities inherent in the responsibilities of a fiduciary.~~

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give ~~at least~~ as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must unreasonably act or fail to act in a manner that deprives the insured of the benefits of the policy. To act unreasonably is not a mere failure to exercise reasonable care (negligence or mistake). It means that the insurer must act or fail to act without proper cause. An insurer can have proper cause if there is a genuine dispute regarding whether the language of the policy applied to the underlying action under applicable law. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

**Authority:** CACI 2330; White v. Western Title Ins. Co., 40 Cal.3d 870, 891 (Cal. 1985); Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 820 (Cal. 1979).

> **Commented [CM3]:** White v. Western Title Ins. Co., 40 Cal.3d 870, 891 (Cal. 1985)
>
> **Commented [JW4R3]:** Incomplete and ignores litigation privilege. Contrary to law. Insurers are not in a fiduciary relationship to an insured. An insured's reasonable expectations are not relevant or at issue in this.
>
> **Commented [CM5]:** Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 820 (Cal. 1979)

**COURT'S INSTRUCTION NO. 4 Bad Faith (Third Party)—Unreasonable Failure to Defend—Essential Factual Elements**

Oxnard Manor claims it was harmed by Hallmark's breach of the obligation of good faith and fair dealing because Hallmark failed to defend Oxnard in a lawsuit that was brought against it. To establish this claim, [name of plaintiff]Oxnard Manor must prove all of the following:

1. That Oxnard was insured under an insurance policy with Hallmark;
2. That a lawsuit was brought against Oxnard;
3. That Oxnard gave Hallmark timely notice that it had been sued;
4. That Hallmark, unreasonably, that is, without proper cause, failed to defend Oxnard against the lawsuit;
5. That Hallmark was not merely negligent or mistaken.
5. That Oxnard was harmed; and
6. That Hallmark's conduct was a substantial factor in causing Oxnard's harm.

Oxnard must prove the foregoing by a preponderance of the evidence.

Oxnard must prove punitive damages by clear and convincing evidence.

Hallmark may defeat Oxnard's claim of breach of the obligation of good faith and fair dealing by proving that there was a genuine dispute regarding coverage liability at the time that the insurer made its decision under applicable law, the policy language, the underlying complaint, and other evidence of which it was aware.

Authority:   CACI 2336.

**COURT'S INSTRUCTION NO. 5 Factors to Consider in Evaluating Insurer's Conduct**

In determining whether Hallmark acted unreasonably, that is, without proper cause, you may consider whether the defendant did any of the following:

[(a) Misrepresented to ~~[name of plaintiff]~~Oxnard Manor relevant facts or insurance policy provisions relating to any coverage at issue.] OBJECTION: No such evidence.

[(b) Failed to acknowledge and act reasonably promptly after receiving communications about ~~[name of plaintiff]~~Oxnard Manor's claim arising under the insurance policy.] OBJECTION: No such evidence.

[(c) Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies.] OBJECTION: No such evidence.

[(d) Failed to accept or deny coverage of claims within a reasonable time after ~~[name of plaintiff]~~Oxnard Manor completed and submitted proof-of-loss requirements.] OBJECTION: No such evidence.

[(e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of ~~[name of plaintiff]~~Oxnard Manor's claim after liability had become reasonably clear.] OBJECTION: No such evidence.

[(f) Required ~~[name of plaintiff]~~Oxnard Manor to file a lawsuit to recover amounts due under the policy by offering substantially less than the amount that [he/she/nonbinary pronoun/it] ultimately recovered in the lawsuit, even though ~~[name of plaintiff]~~Oxnard Manor had made a claim for an amount reasonably close to the amount ultimately recovered.] OBJECTION: No such evidence.

~~[(g) Attempted to settle [name of plaintiff]'s claim for less than the amount to which a reasonable person would have believed [name of plaintiff] was entitled by referring to written or printed advertising material accompanying or made part of the application.]~~

~~[(h) Attempted to settle the claim on the basis of an application that was altered without notice to, or knowledge or consent of, [name of plaintiff], [his/her/nonbinary pronoun/its] representative, agent, or broker.]~~

~~[(i) Failed, after payment of a claim, to inform [name of plaintiff] at [his/her/nonbinary pronoun/its] request, of the coverage under which payment was made.]~~

~~[(j) Informed [name of plaintiff] of its practice of appealing from~~

1  ~~arbitration awards in favor of insureds or claimants for the~~
2  ~~purpose of forcing them to accept settlements or compromises less than the amount awarded in arbitration.]~~
3  ~~[(k) Delayed the investigation or payment of the claim by~~
4  ~~requiring [name of plaintiff], [or [his/her/nonbinary pronoun] physician], to submit a preliminary claim report, and then also~~
5  ~~required the submission of formal proof-of-loss forms, both of which contained substantially the same information.]~~
6  [(l) Failed to settle a claim against ~~[name of plaintiff]~~Oxnard Manor promptly
7  once [his/her/nonbinary pronoun/its] liability had become apparent,
8  under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy
9  coverage.] OBJECTION: No such evidence.
   [(m) Failed to promptly provide a reasonable explanation of its
10 reasons for denying the claim or offering a compromise
11 settlement, based on the provisions of the insurance policy in relation to the facts or applicable law.] OBJECTION: No such evidence.
12 ~~[(n) Directly advised [name of plaintiff] not to hire an attorney.]~~
13 [(o) Misled ~~[name of plaintiff]~~Oxnard Manor as to the applicable statute of
   limitations, that is, the date by which an action against [name of
14 defendant] on the claim had to be filed.] OBJECTION: No such evidence.
15
16 ~~[(p) Delayed the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired~~
17 ~~immune deficiency syndrome (AIDS) or AIDS-related complex for more than 60 days after it had received [name of plaintiff]'s claim~~
18 ~~for those benefits, doing so in order to investigate whether [name~~
19 ~~of plaintiff] had the condition before obtaining the insurance coverage. However, the 60-day period does not include any time~~
20 ~~during which [name of defendant] was waiting for a response for~~
21 ~~relevant medical information from a healthcare provider.]~~(q) Failed to conduct a thorough, adequate investigation of the claim.
22
23 Plaintiff must prove such conduct by clear and convincing evidence.
24 The presence or absence of any of these factors alone is not enough to
25 determine whether Hallmark~~[name of defendant]~~'s conduct was or was not
   unreasonable, that is, without proper cause. You must consider Hallmark~~[name of~~
26 ~~defendant]~~'s conduct as a whole in making this determination. Since the duty of good
27 faith is continuing, you may also consider Hallmark's conduct in this litigation in evaluating whether it breached this duty.
28

**Commented [CM6]:**
**Commented [CM7R6]:** *Egan v. Mut. Of Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000).

**Commented [CM8]:** White v. Western Title Ins. Co., 40 Cal.3d 870, 891 (Cal. 1985)

OBJECTION.  The regulations on which this instruction is based (1) do not apply to health care providers such as Oxnard; and (2) do not provide a private right of action. CCR section 2695.1(b)(2) provides that section 2695's regulations do not apply to liability insurance for professional negligence (Policy Coverage A) of "health care providers" as defined in California Code of Civil Procedure section 364(f)(1), which includes "any…health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code."  Health and Safety Code section 1250(c) defines "health facility" to include a skilled nursing facility such as plaintiff Oxnard Manor.  Cal. Health & Safety § 1250(c)(1).  The section 2695 regulations do not apply in this case.

There is no private right of action.  *See Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 174 (9th Cir. 1997), citing *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 300 (1988).

Authority:   CACI 2337; *White v. Western Title Ins. Co*., 40 Cal.3d 870, 891 (Cal. 1985); *Egan v. Mut. Of Omaha Ins. Co*., 24 Cal. 3d 809, 818-19; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*., 78 Cal. App. 4th 847, 879 (2000).

**COURT'S INSTRUCTION NO. 6 Damages-Proof**

It is the duty of the Court to instruct you about the measure of damages.

~~The Court has previously determined that Defendant breached the insurance policy by failing to provide Plaintiff a defense in the *DeSoto* lawsuit.~~

By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff [on the plaintiff's [*specify type of claim*] claim], you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

[*Insert types of damages. See Instruction 5.2 (Measures of Types of Damages)*]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

OBJECTION: This instruction does not identify what types of damages plaintiff seeks (defense, indemnity, punitive, and amounts).

**Authority:** Ninth Circuit Court of Appeal Model Civil Jury Instructions, 5.1.

**COURT'S INSTRUCTION NO. 7 Punitive Damages**

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded and, if so, the amount of any such damages. The plaintiff must first prove breach of the implied covenant of good faith and fair dealing.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

[In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

OBJECTION: To recover punitive damages, plaintiff must prove conduct qualifying as bad faith by clear and convincing evidence.

Authority:   Ninth Circuit Court of Appeal Model Civil Jury Instructions, 5.5.

**COURT'S INSTRUCTION NO. 8 Damages for Bad Faith**

If you decide that Oxnard has proved its claim against [name of defendant], you also must decide how much money will reasonably compensate [name of plaintiff]Oxnard Manor for the harm.

This compensation is called "damages."

The amount of damages must include an award for all harm that was caused by [name of defendant], even if the particular harm could not have been anticipated.

[Name of plaintiff]Oxnard Manor must prove the amount of [his/her/nonbinary pronoun/ its]its damages. However, [name of plaintiff]Oxnard Manor does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

If you determine that Oxnard Manor is entitled to recover on its bad faith cause of action by clear and convincing evidence and that, because of the insurerd's bad faith, it was reasonably necessary for Oxnard Manor to employ the services of an attorney to collect the benefits due under the policy, then Oxnard Manor is entitled to an award for attorney fees incurred to obtain the policy benefits, but not to pursue its cause of action for bad faith. These fees are referred to as *Brandt* fees. The following are the specific items of damages claimed by [name of plaintiff]:
1. [Mental suffering/anxiety/humiliation/emotional distress;] [and]
2. [The cost of attorney fees to recover the insurance policy benefits;] [and]
3. [Insert other applicable item of damage.]

In order to recover *Brandt* fees, Oxnard Manor must prove "(1) the amount to which it was entitled to recover under the policy, (2) that Hallmark withheld payment unreasonably or without proper cause, (3) the amount that Oxnard Manor paid or incurred in legal fees and expenses in establishing the insured's right to contract benefits and (4) the reasonableness of the fees and expenses so incurred." These recoverable *Brandt* fees include only fees attributable to obtaining the insurance benefits, not "those attributable to the bringing of the bad faith action itself." Brandt,

> **Commented [CM9]:** Jordan v. Allstate Ins. Co., 148 Cal. App. 4th 1062, 1079 (2007).

37 Cal. 3d at 815. ~~To recover attorney fees [name of plaintiff] must prove that because of [name of defendant]'s breach of the obligation of good faith and fair dealing it was reasonably necessary for [him/her/nonbinary pronoun/it] to hire an attorney to recover the policy benefits. [Name of plaintiff] may recover attorney fees [he/she/nonbinary pronoun/it] incurred to obtain policy benefits but not attorney fees [he/she/nonbinary pronoun/it] incurred for other purposes.~~

To recover these *Brandt* fees, Oxnard Manor must separate out its litigation expenses such that it can clearly demarcate the fees attributable to the pursuit of the benefits to which it is entitled under the policy from fees expended on other work. [Commented [CM10]: *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1362 (9th Cir. 1993)]

To properly calculate Brandt fees in cases of mixed coverage and bad faith cases, like the case at hand, the jury must determine the total number of hours an attorney spent on the case and then determine how many hours were spent working exclusively on the contract recovery. Hours spent working on issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort. Oxnard Manor must prove by a preponderance of evidence both the existence and the amount of damages proximately caused by Hallmark's tortious conduct. [Commented [CM11]: *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 811–12 (2004).]

Authority:   CACI 2350; *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 811–12 (2004); *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1362 (9th Cir. 1993); *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1079 (2007).

**COURT'S INSTRUCTION NO. 9 Bad Faith Failure to Investigate**

Oxnard Manor claims that Hallmark acted unreasonably, that is, without proper cause, by failing to conduct a proper investigation of the *DeSoto* claim. To establish this claim, Oxnard Manor must prove all of the following:

1. That Oxnard Manor suffered a loss covered under an insurance policy issued by Hallmark;

2. That Oxnard Manor properly presented a claim to Hallmark to be compensated for the loss;

3. That Hallmark failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Oxnard Manor's claim;

4. That Oxnard Manor was harmed; and

5. That Hallmark's failure to properly investigate the claim was a substantial factor in causing Oxnard Manor's harm. When investigating Oxnard Manor's claim, Hallmark had a duty to diligently search for and consider evidence that supported coverage of the claimed loss. [Commented [CM12]: CACI 2332]

Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim. [Commented [CM13]: *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000).] The insurer has a duty to investigate a claim thoroughly and consider, or seek to discover evidence relevant to the issue of liability and damages under the insurance policy. [Commented [CM14]: *Id.* at 880.] Its early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith. [Commented [CM15]: Id. at 880.] If an insurer seeks to discover only the evidence that defeats the claim, it holds its own interest above that of the insured. [Commented [CM16]: *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996). If] An insurer that ignores evidence available to it which supports coverage or just focuses on those facts which justify denial of the claim, then it acts unreasonably in bad faith. [Commented [CM17]: *Shade Foods*, 78 Cal. App. 4th at 881 (internal quotation omitted); *Amadeo*, 290 F.3d at 1164 (finding an insurer acts unreasonably if it ignores evidence available to it that supports the insured's claim).]

OBJECTION: Incomplete and improper statement of the law. It does not advise that an insurer may rely on, and has no obligation to ignore, policy language nor extrinsic evidence that it becomes aware of during its investigation. It overemphasizes the factor of an investigation to the extent of other factors. It is contrary to the preceding instructions regarding a determination of bad faith and misstates current law.

Authority: CACI 2332; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000); *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152 (9th Cir. 2002)

Dated: March 27, 2024    THE WAGNER FIRM

By: */s/ Avi Wagner*

Attorney for Plaintiff Oxnard Manor, LP