**1.2 Duty of Jury (Court Reads and Provides Written Set of Instructions at the Beginning of Trial)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

### Comment

This instruction may be used as a preliminary instruction if the court decides to provide a written set of preliminary instructions at the beginning of the trial that the jurors are permitted to keep with them. In the final set of instructions, the court should substitute Instruction 1.3.

### 1.5 Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff asserts that [*plaintiff's claims*].  The plaintiff has the burden of proving these claims.

The defendant denies those claims [and also contends that [*defendant's counterclaims and/or affirmative defenses*]].  [The defendant has the burden of proof on these [*counterclaims and/or affirmative defenses.*]]

[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

### 1.6 Burden of Proof—Preponderance of the Evidence

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### 1.7 Burden of Proof— Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

### Comment

*See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining clear and convincing evidence).  *See also Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (citing *Colorado*).

### 1.9 What is Evidence

The evidence you are to consider in deciding what the facts are consists of:

1.     the sworn testimony of any witness;

2.     the exhibits that are admitted into evidence;

3.     any facts to which the lawyers have agreed; and

4.     any facts that I [may instruct] [have instructed] you to accept as proved.

## 1.10 What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered.  In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### Comment

With regard to the bracketed material in paragraph 3, select the appropriate bracket depending on whether the instruction is given at the beginning or at the end of the case. *See also* Instruction 1.11 (Evidence for Limited Purpose).

### 1.11 Evidence for Limited Purpose

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

### Comment

As a rule, limiting instructions need only be given when requested and need not be given *sua sponte* by the court. *United States v. McLennan*, 563 F.2d 943, 947-48 (9th Cir. 1977).

*See United States v. Marsh*, 144 F.3d 1229, 1238 (9th Cir. 1998) (when trial court fails to instruct jury in its final instructions regarding receipt of evidence for limited purpose, Ninth Circuit examines trial court's preliminary instructions to determine if court instructed jury on this issue).

*See also* Instructions 1.10 (What is Not Evidence) and 2.9 (Impeachment Evidence—Witness).

### 1.12 Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

### Comment

It may be helpful to include an illustrative example in the instruction:

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

## 1.13 Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

15

### 1.14  Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### Comment

The Committee recommends that the jurors be given some guidelines for determining credibility at the beginning of the trial so that they will know what to look for when witnesses are testifying.

### 1.15 Conduct of the Jury

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an

impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very
important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

### Comment

This instruction has been updated specifically to instruct jurors against accessing electronic sources of information and communicating electronically about the case, as well as to inform jurors of the potential consequences if a juror violates this instruction.  An abbreviated instruction should be repeated before the first recess, and as needed before other recesses.

The practice in federal court of repeatedly instructing jurors not to discuss the case until deliberations is widespread.  *See, e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999).

State court practice in some jurisdictions does allow discussion of the case by jurors prior to the beginning of deliberations.  The Ninth Circuit has not addressed this practice.

*Revised Dec. 2020*

### 1.17 No Transcript Available to Jury

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

### Comment

The court may wish to modify this instruction for use at the end of the trial.

### 1.18 Taking Notes

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

### Comment

It is well settled in this circuit that the trial judge has discretion to allow jurors to take notes. *United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir. 1993). *See also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 3.4 (2013).

### 1.19 Questions to Witnesses by Jurors During Trial

*Option 1*

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. *[Specific reasons for not allowing jurors to ask questions may be explained.]* If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

*Option 2*

When attorneys have finished their examination of a witness, you may ask questions of the witness. *[Describe procedure to be used.]* If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.

### Comment

There may be occasions when a juror desires to ask a question of a witness, and the court has discretion in permitting or refusing to permit jurors to do so. *See United States v. Huebner*, 48 F.3d 376, 382 (9th Cir. 1994) ("Huebner does not point out prejudice resulting from any of the few questions [jurors] asked. There was no error or abuse of discretion"); *United States v. Gonzales*, 424 F.2d 1055, 1056 (9th Cir. 1970) (holding there was no error by trial judge in allowing juror to submit question to court); JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 3.5 (2013) (providing practical suggestions).

Option 1 is for judges who want to disallow jury questions explicitly. Option 2 is for judges who want to tell jurors explicitly that they may submit questions to be asked of witnesses.

*Revised Oct. 2019*

22

### 1.21 Outline of Trial

Trials proceed in the following way:  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

## 2.0 Cautionary Instructions

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

### Comment

This instruction is derived from the model instruction prepared by the Judicial Conference Committee on Court Administration and Case Management in June 2020.

The practice in federal court of repeatedly instructing jurors not to discuss the case until deliberations is widespread. *See e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir. 1999).

*Created Dec. 2020*

27

## 2.2 Stipulations of Fact

The parties have agreed to certain facts [to be placed in evidence as Exhibit ___] [that will be read to you].  You must therefore treat these facts as having been proved.

### Comment

When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed.  *United States v. Mikaelian*, 168 F.3d 380, 389 (9th Cir. 1999) (citing *United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976)), *amended by* 180 F.3d 1091 (9th Cir. 1999).

### 2.3 Judicial Notice

The court has decided to accept as proved the fact that [*state fact*].  You must accept this fact as true.

### Comment

An instruction regarding judicial notice should be given at the time notice is taken.  In a civil case, the Federal Rules of Evidence permit the judge to determine that a fact is sufficiently undisputed to be judicially noticed and requires that the jury be instructed that it is required to accept that fact.  Fed. R. Evid. 201(f).  In a criminal case, however, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.  *Id.*; *see United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (in a criminal case, "the trial court must instruct 'the jury that it may, but is not required to, accept as conclusive any fact judicially noticed'"); NINTH CIRCUIT MODEL CRIMINAL JURY INSTRUCTION 2.5 (2010) (Judicial Notice).

### 2.9 Impeachment Evidence—Witness

The evidence that a witness *[e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.]* may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

### Comment

*See* Fed. R. Evid. 608–09; *United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (finding that district court properly admitted impeachment evidence following limiting instruction to jury). If this instruction is given during the trial, the Committee recommends giving the second sentence in numbered paragraph 3 of Instruction 1.10 (What Is Not Evidence) with the concluding instructions. *See also* Instruction 1.11 (Evidence for Limited Purpose).

36

### 2.11 Use of Interrogatories

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

### Comment

Use this oral instruction before interrogatories and answers are read to the jury; it may also be included in the concluding written instructions to the jury.  The attorney should warn the judge ahead of time and give the judge an opportunity to give this oral instruction.  This oral instruction is not appropriate if answers to interrogatories are being used for impeachment only.

Do not use this instruction for requests for admission under Fed. R. Civ. P. 36.  The effect of requests for admission under the rule is not the same as the introduction of evidence through interrogatories.  *See* Instruction 2.12 (Use of Requests for Admission).

## 2.12 Use of Requests for Admission

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

### Comment

*See* Fed. R. Civ. P. 36 ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). A court may properly exclude evidence at trial that is inconsistent with a Rule 36 admission. *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985).

Use this oral instruction before admissions are read to the jury; it may also be included in the concluding written instructions to the jury. The attorney should warn the judge ahead of time and give the judge an opportunity to give this oral instruction.

Do not use this instruction for interrogatories. The effect of requests for admission is not the same as the introduction of evidence through interrogatories. *See* Instruction 2.11 (Use of Interrogatories).

### 2.13 Expert Opinion

You [have heard] [are about to hear] testimony from [*name*] who [testified] [will testify] about [his] [her]opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

### Comment

*See* Fed. R. Evid. 702-05.

According to Federal Rule of Evidence 702, "[t]he purpose of expert testimony is to 'assist the trier of fact to understand the evidence or to determine a fact in issue' by providing opinions on 'scientific, technical, or other specialized knowledge.'" *Wagner v. County of Maricopa*, 701 F.3d 583, 589 (9th Cir. 2012) (quoting Fed. R. Evid. 702). Under Federal Rule of Evidence 703, an expert's opinion must be based on facts or data in the case that the expert has been made aware of or personally observed. Fed. R. Evid. 703. The facts and data need not be admissible so long as experts in the particular field would reasonably rely on such facts and data. *Id.*

This instruction avoids labeling the witness as an "expert." If the court refrains from informing the jury that the witness is an "expert," this will "ensure [] that trial courts do not inadvertently put their stamp of authority" on a witness's opinion and will protect against the jury's being "overwhelmed by the so-called 'experts.'" *See* Fed. R. Evid. 702 advisory committee's note (2000) (quoting Hon. Charles Richey, *Proposals to Eliminate the Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Criminal and Civil Jury Trials*, 154 F.R.D. 537, 559 (1994).

In addition, Fed. R. Evid. 703 (as amended in 2000) provides that facts or data that are the basis for an expert's opinion but are otherwise inadmissible may nonetheless be disclosed to the jury if the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

This instruction is appropriate for a witness who provides only expert opinion testimony. If the same witness provides expert opinion testimony and percipient witness testimony (whether fact testimony, lay opinion testimony, or both), these different roles should be clarified for the jury, even in a civil case. Model Criminal Instruction 3.15 (Dual Role Testimony) provides guidance.

*Revised Mar. 2023*

## 3.2 Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

*Revised Dec. 2020*

### 4.1 Corporations and Partnerships—Fair Treatment

All parties are equal before the law and a [corporation] [partnership] is entitled to the same fair and conscientious consideration by you as any party.

### 5.1 Damages—Proof

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff [on the plaintiff's [*specify type of claim*] claim], you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.  You should consider the following:

[*Insert types of damages.  See Instruction 5.2 (Measures of Types of Damages)*]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

### Comment

If liability is not disputed, this instruction should be modified accordingly.

## 113. Bias

Each one of us has biases about or certain perceptions or stereotypes of other people. Bias is a tendency to favor or disfavor a person or group of people. We may be aware of some of our biases, though we may not reveal them to others. We may not be fully aware of some of our other biases. We refer to biases that we are not fully aware of as "implicit" or "unconscious." They may be based on stereotypes we would reject if they were brought to our attention. Implicit or unconscious biases can affect how we perceive others and how we make decisions, without our being aware of the effect of these biases on those decisions.

Our biases often affect how we act, favorably or unfavorably, toward someone. Bias can affect our thoughts, how we remember, what we see and hear, and whom we believe or disbelieve. We may favor or be more likely to believe people whom we see as similar to us or with whom we identify. Or we may disfavor or be less likely to believe people whom we see as different from us.

As jurors you are being asked to make very important decisions in this case. You must not let bias, prejudice, or public opinion influence your decision. You must not be biased in favor of or against parties or witnesses because of their race, national origin, ethnicity, disability, gender, gender identity, gender expression, religion, sexual orientation, age, [or] socioeconomic status[, or [*insert any other impermissible form of bias*]].

Your verdict must be based solely on the evidence presented. You must carefully evaluate the evidence and resist any urge to reach a verdict that is influenced by bias for or against any party or witness.

*New June 2010; Revised December 2012, May 2020, November 2023*

### Directions for Use

The court in consultation with the parties may add categories in paragraph 3 as relevant to the case.

### Sources and Authority

- Duty to Prevent Bias and Ensure Fairness. Standard 10.20(b)(1), (2) of the California Standards of Judicial Administration.
- Judge Must Perform Duties Without Bias. Canon 3(b)(5) of the California Code of Judicial Ethics.

***Secondary Sources***

Witkin, California Procedure (5th ed. 2008) Trial, §§ 145–146

31

**CACI No. 113**                    PRETRIAL INSTRUCTIONS

1 California Trial Guide, Unit 10, *Voir Dire Examination*, §§ 10.03[1], 10.21[2], 10.50, 10.80, 10.100, 10.110 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 6, *Jury Selection*, § 6.21

## 212. Statements of a Party Opponent

**A party may offer into evidence any oral or written statement made by an opposing party outside the courtroom.**

**When you evaluate evidence of such a statement, you must consider these questions:**

> **1.  Do you believe that the party actually made the statement? If you do not believe that the party made the statement, you may not consider the statement at all.**
>
> **2.  If you believe that the statement was made, do you believe it was reported accurately?**

**You should view testimony about an oral statement made by a party outside the courtroom with caution.**

*New September 2003*

### Directions for Use

Under Evidence Code section 403(c), the court must instruct the jury to disregard a statement offered as evidence if it finds that the preliminary facts do not exist. For adoptive admissions, see CACI No. 213, *Adoptive Admissions.*

### Sources and Authority

- Determination of Preliminary Facts. Evidence Code section 403.
- Statements of Party. Evidence Code section 1220.
- The Law Revision Commission comment to this section observes that "[t]he rational underlying this exception is that the party cannot object to the lack of the right to cross-examine the declarant since the party himself made the statement."
- There is no requirement that the prior statement of a party must have been against his or her interests when made in order to be admissible. Any prior statement of a party may be offered against him or her in trial. (1 Witkin, California Evidence (4th ed. 2000) Hearsay § 93.)
- The cautionary instruction regarding admissions is derived from common law, formerly codified at Code of Civil Procedure section 2061. The repeal of this section did not affect decisional law concerning the giving of the cautionary instruction. (*People v. Beagle* (1972) 6 Cal.3d 441, 455, fn. 4 [99 Cal.Rptr. 313, 492 P.2d 1].)
- The purpose of the cautionary instruction has been stated as follows: "Ordinarily there is strong reasoning behind the principle that a party's extrajudicial admissions or declarations against interest should be viewed with caution. . . .

59

**CACI No. 212**                    EVIDENCE

No class of evidence is more subject to error or abuse inasmuch as witnesses having the best of motives are generally unable to state the exact language of an admission and are liable, by the omission or the changing of words, to convey a false impression of the language used." (*Pittman v. Boiven* (1967) 249 Cal.App.2d 207, 214 [57 Cal.Rptr. 319].)

• The need to give the cautionary instruction appears to apply to both civil and criminal cases. (See *People v. Livaditis* (1992) 2 Cal.4th 759, 789 [9 Cal.Rptr.2d 72, 831 P.2d 297] (conc. opn. of Mosk, J.).)

## Secondary Sources

1 Witkin, California Evidence (5th ed. 2012) Hearsay, §§ 91–94, 126

3 Witkin, California Evidence (5th ed. 2012) Presentation at Trial, § 127

Jefferson, California Evidence Benchbook (3d ed. 1997) §§ 3.7–3.22

2 California Trial Guide, Unit 40, *Hearsay*, § 40.30 (Matthew Bender)

48 California Forms of Pleading and Practice, Ch. 551, *Trial*, § 551.76 (Matthew Bender)

## 223. Opinion Testimony of Lay Witness

A witness [who was not testifying as an expert] gave an opinion during the trial. You may, but are not required to, accept that opinion. You may give the opinion whatever weight you think is appropriate.

Consider the extent of the witness's opportunity to perceive the matters on which the opinion is based, the reasons the witness gave for the opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

*New April 2008*

### Directions for Use

Give the bracketed phrase in the first sentence regarding the witness not testifying as an expert if an expert witness also testified in the case.

### Sources and Authority

- Opinion Testimony of Lay Witness. Evidence Code section 800.
- Foundation for Opinion Testimony of Lay Witness. Evidence Code section 802.
- Character Evidence. Evidence Code section 1100.

**Secondary Sources**

1 Witkin, California Evidence (5th ed. 2012) Opinion Evidence, §§ 3–25

Wegner et al., California Practice Guide: Civil Trial and Evidence, Ch. 8C-H, Opinion Evidence, ¶¶ 8:643–8:681 (The Rutter Group)

Jefferson's California Evidence Benchbook (Cont.Ed.Bar 3d ed.) §§ 29.1–29.17

48 California Forms of Pleading and Practice, Ch. 551, *Trial*, § 551.70 (Matthew Bender)

1 Cotchett, California Courtroom Evidence, Ch. 17, *Nonexpert and Expert Opinion*, § 17.01 (Matthew Bender)

California Judges Benchbook: Civil Proceedings—Trial § 8.72 (Cal CJER 2019)

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON
ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES**


You may not consider a party's assertion of the attorney-client or work product privilege against or in favor of any party. You may not make any adverse inference against any party that asserts the attorney-client or work product privilege.


<u>Authority</u>: *McKesson Information Solutions, Inc. v. Bridge Medical*, Inc., 434 F.Supp.2d 810, 811-12 (E.D. Cal. 2006), citing *Knorr-Bremse Systeme Fuer Nutzfahrzeuge Gmbh v. Dana Corp*., 383 F.3d 1337, 1344 (Fed. Cir. 2004).

**1.4 Duty of Jury (Court Reads and Provides Written Instructions at End of Case)**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Comment**

This instruction should be used with the written final set of the instructions to be sent to the jury. Bracketed material should be selected to cover whether single or multiple sets of written instructions are provided.

## 2.14 Charts and Summaries Not Received in Evidence

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## Comment

This instruction applies only when the charts and summaries are not admitted into evidence and are used for demonstrative purposes.  Demonstrative materials used only as testimonial aids should not be permitted in the jury room or otherwise used by the jury during deliberations.  *See United States v. Wood*, 943 F.2d 1048, 1053-54 (9th Cir. 1991) (citing *United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984)); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 3.10.A (2013).

41

### 2.15 Charts and Summaries Received in Evidence

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

### Comment

This instruction applies when the charts and summaries are received into evidence.  *See United States v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012) ("[T]he proponent of a summary must demonstrate the admissibility of the underlying writings or records summarized, as a condition precedent to introduction of the summary into evidence under [Fed. R. Evid. Evid.] 1006.") (quoting *United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979)); *United States v. Rizk*, 660 F.3d 1125, 1130-31 (9th Cir. 2011); *see also* Fed. R. Evid. 1006; JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 3.10.A (2013). This instruction may be unnecessary if there is no dispute as to the accuracy of the chart or summary.

### 2.16 Evidence in Electronic Format

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

### Comment

This instruction is premised on the assumption that either the court has ordered these procedures, or the parties have agreed to the availability of electronic display devices in the jury room and to the procedures set forth in the instruction. If the parties' agreement is in the form of a written stipulation, the stipulation should be subject to approval by the judge and entered as an order. The following are possible provisions in such a stipulation:

1.  The parties agree to an allocation of the costs of providing the necessary equipment, including the computer, hard drive, projector, cable, printer, monitor and other accessories.

2.  The parties jointly arrange to load images of the admitted exhibits onto a hard drive in "PDF" format. (This format is meant to assure maximum

security.)  They will ensure that the hard drive contains only such items and nothing else.

3. The parties jointly compile a document entitled "Admitted Exhibit List" that consists of all trial exhibits actually received into evidence, listed in numerical order and containing the date (where available) and a brief description of the exhibit.  The Admitted Exhibit List should be text searchable.  (In complicated or document-laden cases, it would be advisable for the parties to prepare a second exhibit list that would contain the same information, except that the exhibits would be listed in chronological order.  That second list would be made available to the jury in "hard copy," not electronic form.)

4. Before the jury retires to deliberate, the parties will review the notebook computer, the exhibit list interface and the images of the exhibits, to ensure their accuracy.  Unless a party objects before the jury retires to deliberate, that party waives all objections to the materials and equipment submitted to the jury.

5. The parties will maintain at the courthouse a backup notebook computer and a backup hard drive with images and data identical to what was loaded onto the hard drive sent into the jury room.

If the jury encounters a technical problem after it has begun to deliberate, the jury should communicate that issue in writing to the court.  The technician may require and receive information from one or more jurors about the difficulty the jury is encountering.  In many instances, the court technician will need to re-enter the jury room to address the problem.  It is conceivable that the technician will be exposed to evidence that the jury was attempting to view or at least to the exhibit number(s) of such evidence.  If the jurors themselves developed charts, summaries, vote tallies or other indicia of their deliberations, or if they wrote summaries of their findings thus far, the technician might be exposed to that information.  (E.g., such matters could have been placed on a blackboard or in summaries strewn about the jury table.) The Committee suggests that in the event a nonjuror might be required to enter the jury room to deal with a technical problem, the judge should *sua sponte* raise these and related issues with counsel before authorizing such entry.  Among the factors that the judge and counsel should discuss are the following:

(a) Can the technical problem be addressed without entry into the room; e.g., by removing the equipment for examination outside the presence of jurors?

(b) Can the technical problem be addressed without any information from the jury other than an innocuous statement to the effect that (for example) "the printer isn't working"?

(c)     Can the risk of even inadvertent disclosure of the jury's deliberations be eliminated by instructing the jury to cover any charts and to remove or conceal any papers, etc.?

(d)     Should the technician, bailiff or clerk be sworn in, with an oath that requires him or her not to disclose whatever he or she sees or hears in the jury room, except for the nature of the technical problem and whether the problem has been fixed?

Whether or not these or other appropriate precautions to minimize or eliminate the risk of disclosure are taken, the judge may consider giving the jury this instruction:

> You have informed me that there is a technical problem that has interfered with your ability to review evidence electronically. I will send a technician into the jury room to deal with the problem while you are out of the deliberation room on a break. Please do not allow any materials reflecting any aspect of your deliberations to be visible during the technician's presence.

In a criminal case, the judge should not permit any tape-recorded conversation or evidence to be included in the electronic evidence loaded onto the hard drive that contains the PDF files, because under Fed. R. Crim. P. 43, the defendant has a right to be present at the replaying of a tape. *United States v. Felix-Rodriguez*, 22 F.3d 964, 966-67 (9th Cir. 1994)

### 3.1 Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### Comment

A jury verdict in a federal civil case must be unanimous, unless the parties stipulate otherwise.  *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1451 (9th Cir. 1995) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369-70 n.5 (1972)); *see also* Fed. R. Civ. P. 48(b). A federal civil jury must also unanimously reject any affirmative defenses before it may find a defendant liable and proceed to determine damages.  *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002).

47

### 3.3 Communication with Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

### Comment

For guidance on the general procedures regarding jury questions during deliberations, *see* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.A (2013).

49

### 3.4 Readback or Playback

### Comment

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

> Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above. *See United States v. Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.C (2013).

### 3.5 Return of Verdict

A verdict form has been prepared for you.  [*Explain verdict form as needed.*]  After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

### Comment

The judge may also wish to explain to the jury the particular form of verdict being used.

### 3.6 Additional Instructions of Law

At this point I will give you an additional instruction. By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this instruction was read separately to you. You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

### Comment

Use this instruction for giving an additional instruction to a jury while it is deliberating. If the jury has a copy of the instructions, send the additional instruction to the jury room. Unless the additional instruction is by consent of both parties, both sides must be given an opportunity to take exception or object to it. If this instruction is used, it should be made a part of the record. The judge and attorneys should make a full record of the proceedings.

*See* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.B (2013).

### 3.7 Deadlocked Jury

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case.  I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience.  Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors.  During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong.  However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence.  All of you share an equal desire to arrive at a verdict.  Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

You may now return to the jury room and continue your deliberations.

### Comment

Before giving any supplemental jury instruction to a deadlocked jury, the Committee recommends the court review JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.5 (2013); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1029 (9th Cir. 2009) (finding no error in standard *Allen* charge issued to deadlocked jury).

### 3.8 Continuing Deliberations After Juror is Discharged

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors.  Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating.  All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

### Comment

A court may not seat a jury of fewer than six nor more than twelve jurors.  *See* Fed. R. Civ. P. 48. The selection of alternate jurors in civil trials has been discontinued. *See* Advisory Committee Note, Fed. R. Civ. P. 47(b) (1991).

### 5.3 Damages—Mitigation

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

### Comment

As to mitigation of damages in an action under the Age Discrimination in Employment Act, *see* Instruction 11.13 (Age Discrimination—Damages—Back Pay—Mitigation).

### 5.5 Punitive Damages

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

[In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

[Punitive damages may not be awarded against [*specify defendant*.] [You may impose punitive damages against one or more of the defendants and not others and may award different amounts against different defendants.] [Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.]

### Comment

Punitive damages are not available in every case. For example, punitive damages are not available against municipalities, counties or other governmental entities unless expressly authorized by statute. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-71 (1981). Punitive damages may, however, be available against governmental employees acting in their individual capacities. *See Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658 (1978); *City of Newport,* 453 U.S. at 254. In diversity cases, look to state law for an appropriate instruction.

84

Whether and under what criterion punitive damages are available depends upon the substantive standards applicable to the underlying claim for relief, and, therefore, the third paragraph of this instruction should be modified accordingly.

As to Title VII claims, an employer may be liable for punitive damages when the employer "discriminate[s] in the face of a perceived risk that its actions will violate federal law." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 514-15 (9th Cir. 2000) (citing *Kolstad v. American Dental Ass'n*., 527 U.S. 526, 536 (1999). *See also Caudle v. Bristol Optical Co*., 224 F.3d 1014, 1026-27 (9th Cir. 2000). Punitive and compensatory damages are subject to caps in Title VII cases. *See* 42 U.S.C. § 1981a(b)(3); *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc) (analyzing constitutionality of punitive damages under § 1981(b) when only nominal damages are awarded).

As to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). In *Dang v. Cross*, the Ninth Circuit held this "statement of the law of punitive damages is incomplete, however. The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases. . . . [M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.' . . . Such acts are therefore all proper predicates for punitive damages under § 1983." 422 F.3d 800, 807 (9th Cir. 2005) (citing *Smith v. Wade*, 416 U.S. 30, 49 (1983)). The *Dang* court held it was reversible error to decline to instruct that "oppressive acts" were an alternative basis for punitive damages in a § 1983 case.

Similarly, punitive damages claim arising under state law are subject to state law standards for recovery which should be reflected in a modified jury instruction. *See, e.g.*, *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1056 (9th Cir. 1997).

Punitive damages are an available remedy on an unseaworthiness claim. *Batteron v. Dutra Group*, 880 F.3d 1089 (9th Cir. 2018). But they are not available for Jones Act claims. *Evich v. Morris*, 819 F.2d 256, 258 (9th Cir. 1987) (citing *Kopczynski v. The Jacqueline*, 753 F.2d 555, 560-61 (9th Cir. 1984)).

Whether punitive damages need to be proved by a preponderance of the evidence or clear and convincing evidence also depends on the standards applicable to the underlying claim for relief. For example, several states in the Ninth Circuit require proof by clear and convincing evidence before punitive damages are awarded on a state law claim. On the other hand, a preponderance of the evidence standard has been upheld for punitive damages in certain federal claims. *See, e.g., In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001) (holding that preponderance standard applied to punitive damages claim in maritime case, citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 n.11 (1991)).

If punitive damages are available and evidence of the defendant's financial condition is offered in support of such damages, a limiting instruction may be appropriate. *See* Instruction

1.11 (Evidence for Limited Purpose) and numbered paragraph (3) in Instruction 1.10 (What Is Not Evidence).

Regarding degree of reprehensibility and punitive damages generally, *see Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007), *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *see also Morgan v. Woessner*, 997 F.2d 1244, 1256 (9th Cir. 1993) ("*Haslip* said that instructions should be fashioned to describe the proper purposes of punitive damages so that the jury understands that punitive damages are not to compensate the plaintiff, but to punish the defendant and to deter the defendant and others from such conduct in the future."). *See also White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) (holding that trial court's failure to give a "harm to nonparties" instruction violated due process and was reversible error after *Williams*). Bracketed language in the fourth paragraph of the instruction addresses this requirement when evidence concerning harm to nonparties is admitted on the issue of degree of reprehensibility.

Regarding whether to instruct the jury concerning the relationship of any award of punitive damages to compensatory damages, the Ninth Circuit noted in *White v. Ford Motor Co.* that this inquiry "is markedly different from the jury's determination of a specific amount of punitive damages; its purpose is to aid in ascertaining the constitutional *ceiling*. Unlike the initial damage calculation, determining the constitutional ceiling on a punitive damage award is a question of law, properly reserved for the court." 500 F.3d at 974 (emphasis in original). The court also observed that, although "states are certainly free to incorporate the reasonable relationship concept into jury instructions, . . . it is also constitutionally permissible for a district court to delay the reasonable relationship inquiry until the judge's post-verdict review." *Id.* Because Nevada chose the latter course, it was not error in *White* for the district court to decline a "relationship inquiry" instruction. *Id.*

Regarding the constitutional due process issues involved in the "relationship inquiry," *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), referring to *Gore* and *Haslip* and stating that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, or, in this case, of 145 to 1." In *State Farm*, the Court went on to say that "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* (quoting *Gore*, 517 U.S. at 582.) For an application of the *State Farm* ratio principles in the context of a 42 U.S.C. § 1981 case, *see Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774-77 (9th Cir. 2005). *But see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008) (applying federal maritime common law to conclude punitive damages could not exceed 1:1 ratio in maritime cases).

*Revised Mar. 2018*

## 5002. Evidence

You must decide what the facts are in this case only from the evidence you have seen or heard during the trial, including any exhibits that I admit into evidence. Sworn testimony, documents, or anything else may be admitted into evidence. You may not consider as evidence anything that you saw or heard when court was not in session, even something done or said by one of the parties, attorneys, or witnesses.

What the attorneys say during the trial is not evidence. In their opening statements and closing arguments, the attorneys talk to you about the law and the evidence. What the lawyers say may help you understand the law and the evidence, but their statements and arguments are not evidence.

The attorneys' questions are not evidence. Only the witnesses' answers are evidence. You should not think that something is true just because an attorney's question suggested that it was true. [However, the attorneys for both sides have agreed that certain facts are true. This agreement is called a stipulation. No other proof is needed and you must accept those facts as true in this trial.]

Each side had the right to object to evidence offered by the other side. If I sustained an objection to a question, ignore the question and do not guess as to why I sustained the objection. If the witness did not answer, you must not guess what he or she might have said. If the witness already answered, you must ignore the answer.

[During the trial I granted a motion to strike testimony that you heard. You must totally disregard that testimony. You must treat it as though it did not exist.]

*New September 2003; Revised April 2004, February 2007, December 2012, June 2014*

### Directions for Use

The advisory committee recommends that this instruction be read to the jury before reading instructions on the substantive law. For a similar instruction to be given before trial, see CACI No. 106, *Evidence*.

Include the bracketed language in the third paragraph if the parties have entered into any stipulations of fact.

Read the last bracketed paragraph if a motion to strike testimony was granted during the trial.

### Sources and Authority

- "Evidence" Defined. Evidence Code section 140.

**CACI No. 5002**          CONCLUDING INSTRUCTIONS

- Jury to Decide Questions of Fact. Evidence Code section 312.
- Miscarriage of Justice. Evidence Code section 353.
- "Unless the trial court, in its discretion, permits a party to withdraw from a stipulation, it is conclusive upon the parties, and the truth of the facts contained therein cannot be contradicted." (*Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 141–142 [199 P.2d 952].)
- "[A]ttempts to suggest matters of an evidentiary nature to a jury other than by the legitimate introduction into evidence is misconduct whether by questions on cross-examination, argument or other means." (*Smith v. Covell* (1980) 100 Cal.App.3d 947, 960 [161 Cal.Rptr. 377].)
- "The right to object on appeal to misconduct or improper argument, even when prejudicial, is generally waived in the absence of a proper objection and request the jury be admonished." (*Atkins v. Bisigier* (1971) 16 Cal.App.3d 414, 427 [94 Cal.Rptr. 49]; *Horn v. Atchison, Topeka & Santa Fe Ry. Co.* (1964) 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].)

## Secondary Sources

3 Witkin, California Evidence (5th ed. 2012) Presentation at Trial, § 34 et seq.

7 Witkin, California Procedure (5th ed. 2008) Trial, § 272

Cotchett, California Courtroom Evidence, § 2.09 (Matthew Bender)

48 California Forms of Pleading and Practice, Ch. 551, *Trial*, § 551.61 (Matthew Bender)

California Judges Benchbook: Civil Proceedings—Trial §§ 2.37, 2.38, 11.9, 11.35 (Cal CJER 2019)

## 5003.  Witnesses

A witness is a person who has knowledge related to this case. You will have to decide whether you believe each witness and how important each witness's testimony is to the case. You may believe all, part, or none of a witness's testimony.

In deciding whether to believe a witness's testimony, you may consider, among other factors, the following:

(a)  How well did the witness see, hear, or otherwise sense what the witness described in court?

(b)  How well did the witness remember and describe what happened?

(c)  How did the witness look, act, and speak while testifying?

(d)  Did the witness have any reason to say something that was not true? For example, did the witness show any bias or prejudice or have a personal relationship with any of the parties involved in the case or have a personal stake in how this case is decided?

(e)  What was the witness's attitude toward this case or about giving testimony?

Sometimes a witness may say something that is not consistent with something else the witness said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness did not tell the truth about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness did not tell the truth about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Do not make any decision simply because there were more witnesses on one side than on the other. If you believe it is true, the testimony of a single witness is enough to prove a fact.

You must not be biased in favor of or against any witness because of the witness's disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, [or] socioeconomic status[, or [*insert any other impermissible form of bias*]].

1439

**CACI No. 5003**          CONCLUDING INSTRUCTIONS

*New September 2003; Revised April 2004, April 2007, December 2012, December 2016, May 2020*

## Directions for Use

This instruction may be given as either an introductory instruction before trial (see CACI No. 107) or as a concluding instruction.

The advisory committee recommends that this instruction be read to the jury before reading instructions on the substantive law.

In the last paragraph, the court may delete inapplicable categories of potential jury bias.

## Sources and Authority

- Role of Jury. Evidence Code section 312.

- Considerations for Evaluating the Credibility of Witnesses. Evidence Code section 780.

- Direct Evidence of Single Witness Sufficient. Evidence Code section 411.

- The willfully false witness instruction was formerly codified at Code of Civil Procedure section 2061. This statute was repealed in 1965 to avoid giving undue emphasis to this rule compared to other common-law rules. Refusal to give an instruction on this point is not error: "It should certainly not be deemed of vital importance to tell the ordinary man of the world that he should distrust the statements of a witness whom he believes to be a liar." (*Wallace v. Pacific Electric Ry. Co.* (1930) 105 Cal.App. 664, 671 [288 P. 834].)

- Standard 10.20(a)(2) of the Standards for Judicial Administration provides: "In all courtroom proceedings, refrain from engaging in conduct and prohibit others from engaging in conduct that exhibits bias, including but not limited to bias based on disability, gender, race, religion, ethnicity, and sexual orientation, whether that bias is directed toward counsel, court personnel, witnesses, parties, jurors, or any other participants."

- Canon 3(b)(5) of the Code of Judicial Ethics provides: "A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, engage in speech, gestures, or other conduct that would reasonably be perceived as (1) bias or prejudice, including but not limited to bias or prejudice based on race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, or (2) sexual harassment." Canon 3(b)(6) requires the judge to impose these standards on attorneys also.

### *Secondary Sources*

7 Witkin, California Procedure (5th ed. 2008) Trial, § 299

Wegner et al., California Practice Guide: Civil Trials & Evidence, Ch. 10-D, *Objectives Of Cross-Examination*, ¶ 10:91 et seq. (The Rutter Group)

Wegner et al., California Practice Guide: Civil Trials & Evidence, Ch. 8E-F,

1440

CONCLUDING INSTRUCTIONS                **CACI No. 5003**

*Limitations On Impeachment And Rehabilitation*, ¶ 8:2990 et seq. (The Rutter Group)

1A California Trial Guide, Unit 20, *Procedural Rules for Presentation of Evidence* (Matthew Bender)

14 California Forms of Pleading and Practice, Ch. 551, *Trial*, § 551.110 et seq. (Matthew Bender)

Cotchett, California Courtroom Evidence, § 16.45 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 11, *Questioning Witnesses and Objections*, 11.03 et seq.

## 5009. Predeliberation Instructions

When you go to the jury room, the first thing you should do is choose a presiding juror. The presiding juror should see to it that your discussions are orderly and that everyone has a fair chance to be heard.

It is your duty to talk with one another in the jury room and to consider the views of all the jurors. Each of you must decide the case for yourself, but only after you have considered the evidence with the other members of the jury. Feel free to change your mind if you are convinced that your position should be different. You should all try to agree. But do not give up your honest beliefs just because the others think differently.

Please do not state your opinions too strongly at the beginning of your deliberations or immediately announce how you plan to vote as it may interfere with an open discussion. Keep an open mind so that you and your fellow jurors can easily share ideas about the case.

You should use your common sense and experience in deciding whether testimony is true and accurate. However, during your deliberations, do not make any statements or provide any information to other jurors based on any special training or unique personal experiences that you may have had related to matters involved in this case. What you may know or have learned through your training or experience is not a part of the evidence received in this case.

Sometimes jurors disagree or have questions about the evidence or about what the witnesses said in their testimony. If that happens, you may ask to have testimony read back to you [or ask to see any exhibits admitted into evidence that have not already been provided to you]. Also, jurors may need further explanation about the laws that apply to the case. If this happens during your discussions, write down your questions and give them to the [clerk/bailiff/court attendant]. I will talk with the attorneys before I answer so it may take some time. You should continue your deliberations while you wait for my answer. I will do my best to answer them. When you write me a note, do not tell me how you voted on an issue until I ask for this information in open court.

Your decision must be based on your personal evaluation of the evidence presented in the case. Each of you may be asked in open court how you voted on each question.

While I know you would not do this, I am required to advise you that you must not base your decision on chance, such as a flip of a coin. If you decide to award damages, you may not agree in advance to simply add up the amounts each juror thinks is right and then, without further deliberations, make the average your verdict.

CONCLUDING INSTRUCTIONS          **CACI No. 5009**

**You may take breaks, but do not discuss this case with anyone, including each other, until all of you are back in the jury room.**

*New September 2003; Revised April 2004, October 2004, February 2007, December 2009, June 2011, June 2013, May 2019*

## Directions for Use

The advisory committee recommends that this instruction be read to the jury after closing arguments and after reading instructions on the substantive law.

If a special verdict will be used, give CACI No. 5012, *Introduction to Special Verdict Form*. If a general verdict is to be used, give CACI No. 5022, *Introduction to General Verdict Form*.

Judges may want to provide each juror with a copy of the verdict form so that the jurors can use it to keep track of how they vote. Jurors can be instructed that this copy is for their personal use only and that the presiding juror will be given the official verdict form to record the jury's decision. Judges may also want to advise jurors that they may be polled in open court regarding their individual verdicts.

Delete the reference to reading back testimony if the proceedings are not being recorded.

## Sources and Authority

- Conduct of Jury Deliberations. Code of Civil Procedure section 613.
- Further Instructions After Deliberation Begins. Code of Civil Procedure section 614.
- Verdict Requires Three Fourths. Code of Civil Procedure section 618, article I, section 16, of the California Constitution.
- Juror Misconduct as Grounds for New Trial. Code of Civil Procedure section 657.
- "Chance is the 'hazard, risk, or the result or issue of uncertain and unknown conditions or forces.' Verdicts reached by tossing a coin, drawing lots, or any other form of gambling are examples of improper chance verdicts. 'The more sophisticated device of the *quotient verdict* is equally improper: The jurors agree to be bound by an *average* of their views; each writes the amount he favors on a slip of paper; the sums are added and divided by 12, and the resulting "quotient" pursuant to the prior agreement, is accepted as the verdict without further deliberation or consideration of its fairness.' " (*Chronakis v. Windsor* (1993) 14 Cal.App.4th 1058, 1064 [18 Cal.Rptr.2d 106], original italics.)
- " '[T]here is no impropriety in the jurors making an average of their individual estimates as to the amount of damages for the purpose of arriving at a basis for discussion and consideration, nor in adopting such average if it is subsequently agreed to by the jurors; but to agree beforehand to adopt such average and abide by the agreement, without further discussion or deliberation, is fatal to the

1449

**CACI No. 5009**          CONCLUDING INSTRUCTIONS

verdict.' " (*Chronakis, supra,* 14 Cal.App.4th at p. 1066.)

- Jurors should be encouraged to deliberate on the case. (*Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 911 [64 Cal.Rptr.2d 492].)

- The jurors may properly be advised of the duty to hear and consider each other's arguments with open minds, rather than preventing agreement by stubbornly sticking to their first impressions. (*Cook v. Los Angeles Ry. Corp.* (1939) 13 Cal.2d 591, 594 [91 P.2d 118].)

- "The trial court properly denied the motion for new trial on the ground that [the plaintiff] did not demonstrate the jury reached a chance or quotient verdict. The jury agreed on a high and a low figure and, before calculating an average, they further agreed to adjust downward the high figure and to adjust upward the low figure. There is no evidence that this average was adopted without further consideration or that the jury agreed at any time to adopt an average and abide by the agreement without further discussion or deliberation." (*Lara v. Nevitt* (2004) 123 Cal.App.4th 454, 462–463 [19 Cal.Rptr.3d 865].)

- "It is not improper for a juror, regardless of his or her educational or employment background, to express an opinion on a technical subject, so long as the opinion is based on the evidence at trial. Jurors' views of the evidence, moreover, are necessarily informed by their life experiences, including their education and professional work. A juror, however, should not discuss an opinion explicitly based on specialized information obtained from outside sources. Such injection of external information in the form of a juror's own claim to expertise or specialized knowledge of a matter at issue is misconduct." (*In re Malone* (1996) 12 Cal.4th 935, 963 [50 Cal.Rptr.2d 281, 911 P.2d 468].)

- "[The juror]'s comments to the jury, in the nature of an expert opinion concerning the placement of crossing gate 'sensors,' their operation, and the consequent reason why gates had not been or could not be installed at the J-crossing, constituted misconduct . . . . Speaking with the authority of a professional transportation consultant, [the juror] interjected the subject of 'sensors,' on which there had been no evidence at trial." (*McDonald v. S. Pac. Transp. Co.* (1999) 71 Cal.App.4th 256, 263–264 [83 Cal.Rptr.2d 734].)

- "Jurors cannot, without violation of their oath, receive or communicate to fellow jurors information from sources outside the evidence in the case. '[It] is misconduct for a juror during the trial to discuss the matter under investigation outside the court or to receive any information on the subject of the litigation except in open court and in the manner provided by law. Such misconduct *unless shown by the prevailing party to have been harmless will invalidate the verdict.*' " (*Smith v. Covell* (1980) 100 Cal.App.3d 947, 952–953 [161 Cal.Rptr. 377], original italics, internal citations omitted.)

- " 'All the jurors, including those with relevant personal backgrounds, were entitled to consider this evidence and express opinions regarding it. "[I]t is an impossible standard to require . . . [the jury] to be a laboratory, completely sterilized and freed from any external factors." [Citation.] "It is 'virtually

1450

impossible to shield jurors from every contact or influence that might theoretically affect their vote.' " [Citation.] A juror may not express opinions based on asserted personal expertise that is different from or contrary to the law as the trial court stated it or to the evidence, but if we allow jurors with specialized knowledge to sit on a jury, and we do, we must allow those jurors to use their experience in *evaluating and interpreting* that evidence. Moreover, during the give and take of deliberations, it is virtually impossible to divorce completely one's background from one's *analysis* of the evidence. We cannot demand that jurors, especially lay jurors not versed in the subtle distinctions that attorneys draw, never refer to their background during deliberations. "Jurors are not automatons. They are imbued with human frailties as well as virtues." [Citation.]' " (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 77 [133 Cal.Rptr.3d 548, 264 P.3d 336], original italics.)

### Secondary Sources

7 Witkin, California Procedure (5th ed. 2008) Trial, §§ 318, 321, 380

Wegner et al., California Practice Guide: Civil Trials & Evidence, Ch. 15-A, *General Considerations*, ¶ 15:15 et seq. (The Rutter Group)

4 California Trial Guide, Unit 91, *Jury Deliberations and Rendition of Verdict*, § 91.01 (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326, *Jury Instructions*, § 326.32[3] (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326A, *Jury Verdicts*, § 326A.14 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 17, *Dealing With the Jury*, 17.33

California Judges Benchbook: Civil Proceedings—Trial §§ 13.8, 13.32, 13.50, 13.53, 13.59, 14.6, 14.21 (Cal CJER 2019)

## 5010. Taking Notes During the Trial

**If you have taken notes during the trial, you may take your notebooks with you into the jury room.**

**You may use your notes only to help you remember what happened during the trial. Your independent recollection of the evidence should govern your verdict. You should not allow yourself to be influenced by the notes of other jurors if those notes differ from what you remember.**

**At the end of the trial, your notes will be [collected and destroyed/collected and retained by the court but not as a part of the case record/[specify other disposition]].**

*New April 2004; Revised February 2005, April 2007, December 2007*

### Directions for Use

If CACI No. 102, *Taking Notes During the Trial*, is given as a pretrial instruction, the court may also give this instruction as a concluding instruction.

In the last paragraph, specify the court's disposition of the notes after trial. No statute or rule of court requires any particular disposition.

### Sources and Authority

- Juror Notes. Rule 2.1031 of the California Rules of Court.
- "Because of [the risks of note-taking], a number of courts have held that a cautionary instruction is required. For example, [one court] held that the instruction should include 'an explanation . . . that [jurors] should not permit their note-taking to distract them from the ongoing proceedings; that their notes are only an aid to their memory and should not take precedence over their independent recollection; that those jurors who do not take notes should rely on their independent recollection of the evidence and not be influenced by the fact that another juror has taken notes; and that the notes are for the note taker's own personal use in refreshing his recollection of the evidence. The jury must be reminded that should any discrepancy exist between their recollection of the evidence and their notes, they should request that the record of the proceedings be read back and that it is the transcript that must prevail over their notes.' " (*People v. Whitt* (1984) 36 Cal.3d 724, 747 [205 Cal.Rptr. 810, 685 P.2d 1161], internal citations and footnote omitted.)
- "In *People v. Whitt*, we recognized the risks inherent in juror note-taking and observed that it is 'the better practice' for courts to give, sua sponte, a cautionary instruction on note-taking. Although the ideal instruction would advert specifically to all the dangers of note-taking, we found the less complete instruction given in *Whitt* to be adequate: 'Be careful as to the amount of notes that you take. I'd rather that you observe the witness, observe the demeanor of

1452

CONCLUDING INSTRUCTIONS          **CACI No. 5010**

that witness, listen to how that person testifies rather than taking copious notes
. . . . [I]f you do not recall exactly as to what a witness might have said or you
disagree, for instance, during the deliberation [*sic*] as to what a witness may
have said, we can reread that transcript back . . . . ' " (*People v. Silbertson*
(1985) 41 Cal.3d 296, 303 [221 Cal.Rptr. 152, 709 P.2d 1321], internal citations
and footnote omitted.)

### Secondary Sources

Wegner et al., California Practice Guide: Civil Trials & Evidence, Ch. 7-D, *Jurors'
Notes,* ¶ 7:41 et seq. (The Rutter Group)

California Deskbook on Complex Civil Litigation Management, Ch. 4, *Trial of
Complex Cases*, § 4.21[5] (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326, *Jury Instructions*, § 326.32
(Matthew Bender)

California Judges Benchbook: Civil Proceedings—Trial § 3.97 (Cal CJER 2019)

1453

## 5012. Introduction to Special Verdict Form

I will give you [a] verdict form[s] with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the form[s] carefully. You must consider each question separately. Although you may discuss the evidence and the issues to be decided in any order, you must answer the questions on the verdict form[s] in the order they appear. After you answer a question, the form tells you what to do next.

At least 9 of you must agree on an answer before you can move on to the next question. However, the same 9 or more people do not have to agree on each answer.

All 12 of you must deliberate on and answer each question regardless of how you voted on any earlier question. Unless the verdict form tells all 12 jurors to stop and answer no further questions, every juror must deliberate and vote on all of the remaining questions.

When you have finished filling out the form[s], your presiding juror must write the date and sign it at the bottom [of the last page] and then notify the [bailiff/clerk/court attendant] that you are ready to present your verdict in the courtroom.

---

*New September 2003; Revised April 2004, October 2008, December 2009, December 2014, May 2019*

### Directions for Use

This instruction should be given if a special verdict form is used. The second and third paragraphs will have to be modified in a case under the Lanterman-Petris-Short Act. (See CACI No. 4012, *Concluding Instruction* (for LPS Act).)

### Sources and Authority

- General and Special Verdict Forms. Code of Civil Procedure section 624.
- Special Verdicts; Requirements for Award of Punitive Damages. Code of Civil Procedure section 625.
- " 'The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.)" (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 338 [181 Cal.Rptr.3d 286].)

1456

CONCLUDING INSTRUCTIONS **CACI No. 5012**

- "A special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue." (*Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 136 [220 Cal.Rptr.3d 127].)

- "It is true that, in at least some respects, a special verdict—if carefully drawn and astutely employed—may improve the quality of the factfinding process. It can focus the jury's attention on the relevant questions, incorporating the pertinent legal principles, and guiding the jury away from irrelevant or improper considerations. It can also expose defects in the jury's deliberations when they occur, providing an opportunity for the court to seek correction through further deliberations." (*Ryan v. Crown Castle NG Networks, Inc.* (2016) 6 Cal.App.5th 775, 795 [211 Cal.Rptr.3d 743].)

- " 'This procedure presents certain problems: " 'The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts. "[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . ." [Citation.]' [Citation.]" ' 'A special verdict is "fatally defective" if it does not allow the jury to resolve every controverted issue.' " (*J.P., supra*, 232 Cal.App.4th at p. 338, internal citations omitted.)

- "All litigation is ultimately a matter of striking a reasonable compromise among competing interests, particularly the interest in resolving cases fairly and that of utilizing public and private resources economically. A special verdict is unlikely to serve either of these objectives unless it is drawn with considerable care." (*Ryan, supra,* 6 Cal.App.5th at p. 796.)

- "[T]hat the jury instruction . . . defined [the element] did not obviate the necessity of including that required element in the special verdict. 'A jury instruction alone does not constitute a finding. Nor does the fact that the evidence might support such a finding constitute a finding.' " (*Trejo, supra,* 13 Cal.App.5th at p. 138.)

- "When a jury is composed of 12 persons, it is sufficient if *any* nine jurors arrive at each special verdict, regardless of the jurors' votes on other special verdict questions." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 255 [92 Cal.Rptr.3d 862, 206 P.3d 403], original italics.)

- "Appellate courts differ concerning the use of special verdicts. In one case the court said, 'we should utilize opportunities to force counsel into requesting special verdicts.' In contrast, a more recent decision included the negative view: 'Toward this end we advise that special findings be requested of juries only when there is a compelling need to do so. Absent strong reason to the contrary their use should be discouraged.' Obviously, it is easier to tell after the fact, rather than before, whether the special verdict is helpful in disclosing the jury conclusions leading to the end result." (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1221 [228 Cal.Rptr. 736], internal citations omitted.)

- "[W]e begin with the requirement that at least nine of twelve jurors agree that each element of a cause of action has been proved by a preponderance of the

1457

**CACI No. 5012**        CONCLUDING INSTRUCTIONS

evidence. The elements of a cause of action constitute the essential or ultimate facts in a civil case comparable to the elements of a single, discrete criminal offense in a criminal case. Analogizing a civil 'cause of action' to a single, discrete criminal offense, and applying the criminal law jury agreement principles to civil law, we conclude that jurors need not agree from among a number of alternative acts which act is proved, so long as the jurors agree that each element of the cause of action is proved." (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002 [54 Cal.Rptr.2d 243, footnote omitted.)

- "In civil cases in which there exist multiple causes of action for which multiple or alternative acts could support elements of more than one cause of action, possible jury confusion could result as to whether a specific cause of action is proved. In those cases, . . . we presume that jury instructions may be appropriate to inform the jury that it must agree on specific elements of each specific cause of action. Yet, this still does not require that the jurors agree on exactly how each particular element of a particular cause of action is proved." (*Stoner, supra,* 46 Cal.App.4th at p. 1002.)

- "[A] juror who dissented from a special verdict finding negligence should not be disqualified from fully participating in the jury's further deliberations, including the determination of proximate cause. The jury is to determine all questions submitted to it, and when the jury is composed of twelve persons, each should participate as to each verdict submitted to it. To hold that a juror may be disqualified by a special verdict on negligence from participation in the next special verdict would deny the parties of 'the right to a jury of 12 persons deliberating on all issues.' Permitting any nine jurors to arrive at each special verdict best serves the purpose of less-than-unanimous verdicts, overcoming minor disagreements and avoiding costly mistrials. Once nine jurors have found a party negligent, dissenting jurors can accept the finding and participate in determining proximate cause just as they may participate in apportioning liability, and we may not assume that the dissenting jurors will violate their oaths to deliberate honestly and conscientiously on the proximate cause issue." (*Resch v. Volkswagen of America, Inc.* (1984) 36 Cal.3d 676, 682 [205 Cal.Rptr. 827, 685 P.2d 1178], internal citations omitted.)

### Secondary Sources

7 Witkin, California Procedure (5th ed. 2008) Trial, §§ 342–346

4 California Trial Guide, Unit 91, *Jury Deliberations and Rendition of Verdict*, § 91.21 (Matthew Bender)

27 California Forms of Pleading and Practice, Ch. 318, *Judgments*, § 318.49 (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326A, *Jury Verdicts*, § 326A.11 et seq. (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 18, *Jury Verdicts*, 18.11 et seq.

California Judges Benchbook: Civil Proceedings—Trial § 14.14 (Cal CJER 2019)

## 5016. Judge's Commenting on Evidence

---

**In this case, I have exercised my right to comment on the evidence. However, you, the jury are the exclusive judges of all questions of fact and of the credibility of the witnesses. You are free to completely ignore my comments on the evidence and to reach whatever verdict you believe to be correct, even if it is contrary to any or all of those comments.**

---

*New April 2007*

### Directions for Use

Read this instruction before deliberations if the judge has exercised the right under article VI, section 10 of the California Constitution to comment on the evidence. This instruction should also be given if after deliberations have begun, the jury asks for additional guidance and the judge then comments on the evidence. (See *People v. Rodriguez* (1986) 42 Cal.3d 730 [230 Cal.Rptr. 667, 726 P.2d 113].)

### Sources and Authority

- Judge May Comment on the Evidence. Article VI, section 10 of the California Constitution.

- "[T]he decisions admonish that judicial comment on the evidence must be accurate, temperate, nonargumentative, and scrupulously fair. The trial court may not, in the guise of privileged comment, withdraw material evidence from the jury's consideration, distort the record, expressly or impliedly direct a verdict, or otherwise usurp the jury's ultimate factfinding power." (*People v. Rodriguez, supra,* 42 Cal.3d at p. 766, internal citations omitted.)

- "[A] trial court has 'broad latitude in fair commentary, so long as it does not effectively control the verdict. For example, it is settled that the court need not confine itself to neutral, bland, and colorless summaries, but *may focus critically on particular evidence,* expressing views about its persuasiveness.' . . . '[A] judge may restrict his comments to portions of the evidence or to the *credibility of a single witness* and need not sum up all the testimony, both favorable and unfavorable.' " (*People v. Proctor* (1992) 4 Cal.4th 499, 542 [15 Cal.Rptr.2d 340, 842 P.2d 1100], original italics.)

- "[A] judge's power to comment on the evidence is not unlimited. He cannot withdraw material evidence from the jury or distort the testimony, and he must inform the jurors that they are the exclusive judges of all questions of fact and of the credibility of the witnesses. In civil cases, the court's powers of comment are less limited than in criminal cases, but they still must be kept within certain bounds. The court may express an opinion on negligence, but the court's remarks must be appropriate and fair." (*Lewis v. Bill Robertson & Sons Inc.* (1984) 162 Cal.App.3d 650, 654 [208 Cal.Rptr. 699], internal citation omitted.)

1464

CONCLUDING INSTRUCTIONS                    **CACI No. 5016**

*Secondary Sources*

7 Witkin, California Procedure (5th ed. 2008) Trial, § 255

California Trial Objections (Cont.Ed.Bar 10th ed.) §§ 29.21, 29.23

28 California Forms of Pleading and Practice, Ch. 326, *Jury Instructions*, § 326.20
(Matthew Bender)

California Judges Benchbook: Civil Proceedings—Trial §§ 12.30, 12.33 (Cal CJER
2019)

## 5017. Polling the Jury

After your verdict is read in open court, you may be asked individually to indicate whether the verdict expresses your personal vote. This is referred to as "polling" the jury and is done to ensure that at least nine jurors have agreed to each decision.

The verdict form[s] that you will receive ask[s] you to answer several questions. You must vote separately on each question. Although nine or more jurors must agree on each answer, it does not have to be the same nine for each answer. Therefore, it is important for each of you to remember how you have voted on each question so that if the jury is polled, each of you will be able to answer accurately about how you voted.

[Each of you will be provided a draft copy of the verdict form[s] for your use in keeping track of your votes.]

*New October 2008; Revised May 2019*

### Directions for Use

Use this instruction to explain the process of polling the jury, particularly if a long special verdict form will be used to assess the liability of multiple parties and the damages awarded to each plaintiff from each defendant.

The third sentence in the second paragraph referring to the agreement of nine or more jurors must be revised in a case under the Lanterman-Petris-Short Act. (See CACI No. 4012, *Concluding Instruction* (for LPS Act).)

### Sources and Authority

- Verdict by Three Fourths in Civil Case. Article I, section 16 of the California Constitution.

- Polling the Jury. Code of Civil Procedure section 618.

- "The polling process is designed to reveal mistakes in the written verdict, or to show 'that one or more jurors acceded to a verdict in the jury room but was unwilling to stand by it in open court.' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 256 [92 Cal.Rptr.3d 862, 206 P.3d 403].)

- "[A] juror may change his or her vote at the time of polling." (*Keener, supra,* 46 Cal.4th at p. 256.)

- "[I]t is quite apparent that when a poll discloses that more than one-quarter of the members of the jury disagree with the verdict, the trial judge retains control of the proceedings, and may properly order the jury to retire and again consider the case." (*Van Cise v. Lencioni* (1951) 106 Cal.App.2d 341, 348 [235 P.2d 236].)

CONCLUDING INSTRUCTIONS          **CACI No. 5017**

- "[W]e begin with the requirement that at least nine of twelve jurors agree that each element of a cause of action has been proved by a preponderance of the evidence. The elements of a cause of action constitute the essential or ultimate facts in a civil case comparable to the elements of a single, discrete criminal offense in a criminal case. Analogizing a civil 'cause of action' to a single, discrete criminal offense, and applying the criminal law jury agreement principles to civil law, we conclude that jurors need not agree from among a number of alternative acts which act is proved, so long as the jurors agree that each element of the cause of action is proved." (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002 [54 Cal.Rptr.2d 243], footnote omitted.)

- "In civil cases in which there exist multiple causes of action for which multiple or alternative acts could support elements of more than one cause of action, possible jury confusion could result as to whether a specific cause of action is proved. In those cases, . . . we presume that jury instructions may be appropriate to inform the jury that it must agree on specific elements of each specific cause of action. Yet, this still does not require that the jurors agree on exactly how each particular element of a particular cause of action is proved." (*Stoner, supra,* 46 Cal.App.4th at p. 1002.)

- "[I]f nine identical jurors agree that a party is negligent and that such negligence is the proximate cause of the other party's injuries, special verdicts apportioning damages are valid so long as they command the votes of any nine jurors. To hold otherwise would be to prohibit jurors who dissent on the question of a party's liability from participation in the important remaining issue of allocating responsibility among the parties, a result that would deny all parties the right to a jury of 12 persons deliberating on all issues." (*Juarez v. Superior Court* (1982) 31 Cal.3d 759, 768 [183 Cal.Rptr. 852, 647 P.2d 128].)

### Secondary Sources

7 Witkin, California Procedure (5th ed. 2008) Trial, §§ 339, 350

4 California Trial Guide, Unit 91, *Jury Deliberations and Rendition of Verdict,* § 91.30[3][b] (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326A, *Jury Verdicts,* § 326A.14 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 18, *Jury Verdicts,* 18.43

California Judges Benchbook: Civil Proceedings—Trial § 14.28 (Cal CJER 2019)

## 5020. Demonstrative Evidence

During the trial, materials have been shown to you to [help explain testimony or other evidence in the case/[*specify other purpose*]]. [Some of these materials have been admitted into evidence, and you will be able to review them during your deliberations.

Other materials have also been shown to you during the trial, but they have not been admitted into evidence.] You will not be able to review them during your deliberations because they are not themselves evidence or proof of any facts. You may, however, consider the testimony given in connection with those materials.

*New December 2011; Revised June 2012*

### Directions for Use

This instruction may be given if the jury has been provided with charts, summaries, or other demonstrative evidence during the trial to assist in understanding complex evidence. The purpose of the instruction is to explain to the jury why certain materials are available for deliberations and other materials are not. Include the bracketed sentences if some materials have been admitted into evidence.

### *Secondary Sources*

7 Witkin, California Procedure (5th ed. 2008) Trial, § 161

Cotchett, California Courtroom Evidence, Ch. 2, *Words and Phrased Defined*, § 2.09 (Matthew Bender)

Cotchett, California Courtroom Evidence, Ch. 27, *Demonstrative and Experimental Evidence*, § 27.01 (Matthew Bender)

Johnson, California Trial Guide, Unit 65, *Presentation of Demonstrative Evidence*, §§ 65.01, 65.10 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 11, *Questioning Witnesses and Objections*, 11.109 et seq.

California Judges Benchbook: Civil Proceedings—Trial § 7.30 (Cal CJER 2019)

## 5021. Electronic Evidence

**Some exhibits that have been admitted into evidence will be provided to you electronically. The equipment necessary to view these exhibits will be available to you in the jury room. Do not use the equipment for any purpose other than to view the electronic exhibits. Do not use it to access the Internet or any other source of information. Do not use it for any personal reason whatsoever, including but not limited to reviewing email, entertainment, or engaging in social media.**

**If you need technical assistance or additional equipment or supplies, you may make a request by sending me a note through the [clerk/bailiff/court attendant]. Should it become necessary for a technician to enter the jury room, stop your deliberations until the technician has left. Do not discuss with him or her, or with each other, any exhibit or any aspect of the case while the technician is present. Do not say anything to the technician other than to (1) describe the technical problem(s) and/or to (2) request instruction on how to operate the equipment.**

**[You may request a paper copy of an exhibit received in evidence. One will be supplied, if possible.]**

*New June 2014*

### Directions for Use

Give this instruction if exhibits have been introduced in electronic format only. Modify or expand the instruction as necessary to set forth the particular process for the viewing of electronic exhibits in the particular courtroom. Give the last paragraph if a paper copy will be available.

### Secondary Sources

8 Witkin, California Procedure (5th ed. 2008) Trial, § 161

Wegner, et al., California Practice Guide: Civil Trials & Evidence, Ch. 15-C, *Matters Allowed In Jury Room During Deliberations*, ¶ 15:83 et seq. (The Rutter Group)

Cotchett, California Courtroom Evidence, Ch. 27 *Demonstrative and Experimental Evidence*, § 27.01 (Matthew Bender)

Johnson, California Trial Guide, Unit 65, *Presentation of Demonstrative Evidence*, § 65.10 (Matthew Bender)

1 Cathcart et al., Matthew Bender Practice Guide: California Debt Collection and Enforcement of Judgments, Ch. 11, *Questioning Witnesses and Objections*, 11.09 et seq.

1473

**CACI No. 5021**          CONCLUDING INSTRUCTIONS

California Judges Benchbook: Civil Proceedings—Trial §§ 7.24, 13.27 (Cal CJER
2019)

## 5030. Implicit or Unconscious Bias

In your role as a juror, you must not let bias influence your assessment of the evidence or your decisions.

I will now provide some information about how bias might affect decisionmaking. Our brains help us navigate and respond quickly to events by grouping and categorizing people, places, and things. We all do this. These mental shortcuts are helpful in some situations, but in the courtroom they may lead to biased decisionmaking.

Bias can affect what we notice and pay attention to, what we see and hear, what we remember, how we perceive people, and how we make decisions. We may favor or be more likely to believe people whom we see as similar to us or with whom we identify. Conversely, we may disfavor or be less likely to believe people whom we see as different from us.

Although we are aware of some of our biases, we may not be aware of all of them. We refer to biases that we are not aware of as "implicit" or "unconscious." They may be based on stereotypes we would reject if they were brought to our attention. Implicit or unconscious biases can affect how we perceive others and how we make decisions, without our being aware of the effect of these biases on those decisions.

To ensure that bias does not affect your decisions in this case, consider the following steps:

1. Reflect carefully and thoughtfully about the evidence. Think about why you are making each decision and examine it for bias. Resist the urge to jump to conclusions or to make judgments based on personal likes or dislikes, generalizations, prejudices, stereotypes, or biases.

2. Consider your initial impressions of the people and the evidence in this case. Would your impressions be different if any of the people were, for example, of a different age, gender, race, religion, sexual orientation, ethnicity, or national origin? Was your opinion affected because a person has a disability or speaks in a language other than English or with an accent? Think about the people involved in this case as individuals. Focusing on individuals can help reduce the effect of biases or stereotypes on decisionmaking.

3. Listen to the other jurors. Their backgrounds, experiences, and insights may be different from yours. Hearing and sharing different perspectives may help identify and eliminate biased conclusions.

The law demands that jurors make unbiased decisions, and these

1478

CONCLUDING INSTRUCTIONS    **CACI No. 5030**

**strategies can help you fulfill this important responsibility. You must base your decisions solely on the evidence presented, your evaluation of that evidence, your common sense and experience, and these instructions.**

*New November 2023*

## Directions for Use

This instruction may be given on request or sua sponte.

## Sources and Authority

- Duty to Prevent Bias and Ensure Fairness. Standard 10.20(b)(1), (2) of the California Standards of Judicial Administration.

- Judge Must Perform Duties Without Bias. Canon 3(B)(5) of the California Code of Judicial Ethics.

- "The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution." (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132].)

### Secondary Sources

Witkin, California Procedure (5th ed. 2008) Trial, §§ 145–146

1 California Trial Guide, Unit 10, *Voir Dire Examination*, §§ 10.03[1], 10.21[2], 10.50, 10.80, 10.100, 10.110 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 6, *Jury Selection*, § 6.21

## 5031–5089.   Reserved for Future Use

## 5090. Final Instruction on Discharge of Jury

---

**Members of the jury, this completes your duties in this case. On behalf of the parties and their attorneys, thank you for your time and your service. It can be a great personal sacrifice to serve as a juror, but by doing so you are fulfilling an extremely important role in California's system of justice. Each of us has the right to a trial by jury, but that right would mean little unless citizens such as each of you are willing to serve when called to do so. You have been attentive and conscientious during the trial, and I am grateful for your dedication.**

**Throughout the trial, I continued to admonish you that you could not discuss the facts of the case with anyone other than your fellow jurors and then only during deliberations when all twelve jurors were present. I am now relieving you from that restriction, but I have another admonition.**

**You now have the absolute right to discuss or not to discuss your deliberations and verdict with anyone[, including members of the media]. It is appropriate for the parties, their attorneys or representatives to ask you to discuss the case, but any such discussion may occur only with your consent and only if the discussion is at a reasonable time and place. You should immediately report any unreasonable contact to the court.**

**If you do choose to discuss the case with anyone, feel free to discuss it from your own perspective, but be respectful of the other jurors and their views and feelings.**

**Thank you for your time and your service; you are discharged.**

---

*New June 2013*

### Directions for Use

In the third paragraph, include the reference to members of the media if the case has received media attention and coverage.

### *Secondary Sources*

7 Witkin, California Procedure (5th ed. 2008) Trial, § 372

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 17, *Dealing With the Jury*, 17.03

California Judges Benchbook: Civil Proceedings—Trial § 14.40 (Cal CJER 2019)

## 5091–5099.   Reserved for Future Use

### 1.6 Burden of Proof—Preponderance of the Evidence

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## 303. Breach of Contract—Essential Factual Elements

**To recover damages from** [*name of defendant*] **for breach of contract,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of plaintiff*] **and** [*name of defendant*] **entered into a contract;**

[2. **That** [*name of plaintiff*] **did all, or substantially all, of the significant things that the contract required** [**him/her/***nonbinary pronoun***/it**] **to do;**]

[or]

[2. **That** [*name of plaintiff*] **was excused from having to** [*specify things that plaintiff did not do, e.g., obtain a guarantor on the contract*];]

[3. **That** [*specify occurrence of all conditions required by the contract for* [*name of defendant*]*'s performance, e.g., the property was rezoned for residential use*];]

[or]

[3. **That** [*specify condition(s) that did not occur*] [**was/were**] [**waived/ excused**];]

[4. **That** [*name of defendant*] **failed to do something that the contract required** [**him/her/***nonbinary pronoun***/it**] **to do;**]

[*or*]

[4. **That** [*name of defendant*] **did something that the contract prohibited** [**him/her/***nonbinary pronoun***/it**] **from doing;**]

5. **That** [*name of plaintiff*] **was harmed; and**

6. **That** [*name of defendant*]**'s breach of contract was a substantial factor in causing** [*name of plaintiff*]**'s harm.**

*New September 2003; Revised April 2004, June 2006, December 2010, June 2011, June 2013, June 2015, December 2016, May 2020*

### Directions for Use

Read this instruction in conjunction with CACI No. 300, *Breach of Contract—Introduction.*

Optional elements 2 and 3 both involve conditions precedent. A "condition precedent" is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th

91

**CACI No. 303**                     CONTRACTS

1131, 1147 [180 Cal.Rptr.3d 683].) Element 2 involves the first kind of condition
precedent; an act that must be performed by one party before the other is required
to perform. Include the second option if the plaintiff alleges that the plaintiff was
excused from having to perform some or all of the contractual conditions.

Not every breach of contract by the plaintiff will relieve the defendant of the
obligation to perform. The breach must be *material;* element 2 captures materiality
by requiring that the plaintiff have done the significant things that the contract
required. Also, the two obligations must be *dependent*, meaning that the parties
specifically bargained that the failure to perform the one relieves the obligation to
perform the other. While materiality is generally a question of fact, whether
covenants are dependent or independent is a matter of construing the agreement.
(*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–279 [120 Cal.Rptr.3d 893].) If
there is no extrinsic evidence in aid of construction, the question is one of law for
the court. (*Verdier v. Verdier* (1955) 133 Cal.App.2d 325, 333 [284 P.2d 94].)
Therefore, element 2 should not be given unless the court has determined that
dependent obligations are involved. If parol evidence is required and a dispute of
facts is presented, additional instructions on the disputed facts will be necessary.
(See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th
375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

Element 3 involves the second kind of condition precedent; an uncertain event that
must happen before contractual duties are triggered. Include the second option if the
plaintiff alleges that the defendant agreed to perform even though a condition did
not occur. For reasons that the occurrence of a condition may have been excused,
see the Restatement Second of Contracts, section 225, Comment b. See also CACI
No. 321, *Existence of Condition Precedent Disputed*, CACI No. 322, *Occurrence of
Agreed Condition Precedent*, and CACI No. 323, *Waiver of Condition Precedent*.

Element 6 states the test for causation in a breach of contract action: whether the
breach was a substantial factor in causing the damages. (*US Ecology, Inc. v. State of
California* (2005) 129 Cal.App.4th 887, 909 [28 Cal.Rptr.3d 894].) In the context of
breach of contract, it has been said that the term "substantial factor" has no precise
definition, but is something that is more than a slight, trivial, negligible, or
theoretical factor in producing a particular result. (*Haley v. Casa Del Rey
Homeowners Assn.* (2007) 153 Cal.App.4th 863, 871–872 [63 Cal.Rptr.3d 514]; see
CACI No. 430, *Causation—Substantial Factor*, applicable to negligence actions.)

Equitable remedies are also available for breach. "As a general proposition, '[t]he
jury trial is a matter of right in a civil action at law, but not in equity. [Citations.]' "
(*C & K Engineering Contractors v. Amber Steel Co., Inc.* (1978) 23 Cal.3d 1, 8
[151 Cal.Rptr. 323, 587 P.2d 1136]; *Selby Constructors v. McCarthy* (1979) 91
Cal.App.3d 517, 524 [154 Cal.Rptr. 164].) However, juries may render advisory
verdicts on these issues. (*Raedeke v. Gibraltar Savings & Loan Assn.* (1974) 10
Cal.3d 665, 670–671 [111 Cal.Rptr. 693, 517 P.2d 1157].)

### Sources and Authority

- Contract Defined. Civil Code section 1549.

CONTRACTS                          **CACI No. 303**

- "A contract is a voluntary and lawful agreement, by competent parties, for a good consideration, to do or not to do a specified thing." (*Robinson v. Magee* (1858) 9 Cal. 81, 83.)

- "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186 [169 Cal.Rptr.3d 475].)

- "Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage." (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1352 [90 Cal.Rptr.3d 589], original italics.)

- "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance. Similarly, where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." (*Consolidated World Investments, Inc., v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 380 [11 Cal.Rptr.2d 524], internal citation omitted.)

- "When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact. Whether a partial breach of a contract is material depends on 'the importance or seriousness thereof and the probability of the injured party getting substantial performance.' 'A material breach of one aspect of a contract generally constitutes a material breach of the whole contract.' " (*Brown, supra*, 192 Cal.App.4th at pp. 277–278, internal citations omitted.)

- "The obligations of the parties to a contract are either dependent or independent. The parties' obligations are dependent when the performance by one party is a condition precedent to the other party's performance. In that event, one party is excused from its obligation to perform if the other party fails to perform. If the parties' obligations are independent, the breach by one party does not excuse the other party's performance. Instead, the nonbreaching party still must perform and its remedy is to seek damages from the other party based on its breach of the contract." (*Colaco v. Cavotec SA* (2018) 25 Cal.App.5th 1172, 1182–1183 [236 Cal.Rptr.3d 542], internal citations omitted.)

- "Whether specific contractual obligations are independent or dependent is a matter of contract interpretation based on the contract's plain language and the parties' intent. Dependent covenants or '[c]onditions precedent are not favored in the law [citations], and courts shall not construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect.' " (*Colaco, supra*, 25 Cal.App.5th at p. 1183, internal citations omitted.)

- "The wrongful, i.e., the unjustified or unexcused, failure to perform a contract is

93

a *breach*. Where the nonperformance is legally justified, or excused, there may be a failure of consideration, but not a breach." (1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 847, original italics, internal citations omitted.) "Ordinarily, a breach is the result of an intentional act, but *negligent performance* may also constitute a breach, giving rise to alternative contract and tort actions." (*Ibid.*, original italics.)

- " ' "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." [Citation.]' " (*Stephens & Stephens XII, LLC, supra*, 231 Cal. App. 4th at p. 1144.)

- " 'Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.' A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage." (*U.S. Ecology, Inc., supra*, 129 Cal.App.4th at p. 909, internal citations omitted.)

- "An essential element of [breach of contract] claims is that a defendant's alleged misconduct was the cause in fact of the plaintiff's damage. [¶] The causation analysis involves two elements. ' "One is *cause in fact*. An act is a cause in fact if it is a necessary antecedent of an event." [Citation.]' The second element is proximate cause. ' "[P]roximate cause 'is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.' " ' " (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102–1103 [192 Cal.Rptr.3d 354], footnote and internal citation omitted.)

- "Determining whether a defendant's misconduct was the cause in fact of a plaintiff's injury involves essentially the same inquiry in both contract and tort cases." (*Tribeca Companies, LLC, supra*, 239 Cal.App.4th at p. 1103.)

- "b. *Excuse*. The non-occurrence of a condition of a duty is said to be 'excused' when the condition need no longer occur in order for performance of the duty to become due. The non-occurrence of a condition may be excused on a variety of grounds. It may be excused by a subsequent promise, even without consideration, to perform the duty in spite of the non-occurrence of the condition. See the treatment of 'waiver' in § 84, and the treatment of discharge in §§ 273–85. It may be excused by acceptance of performance in spite of the non-occurrence of the condition, or by rejection following its non-occurrence accompanied by an inadequate statement of reasons. See §§ 246–48. It may be excused by a repudiation of the conditional duty or by a manifestation of an inability to perform it. See § 255; §§ 250–51. It may be excused by prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing (§ 205). See § 239. And it may be excused by impracticability. See § 271. These and other grounds for excuse are dealt with in other chapters of this Restatement. This Chapter deals only with one general ground, excuse to avoid forfeiture. See § 229." (Rest.2d of Contracts, § 225, comment b.)

CONTRACTS                                              **CACI No. 303**

*Secondary Sources*

1 Witkin, Summary of California Law (11th ed. 2017) Contracts, § 872

13 California Forms of Pleading and Practice, Ch. 140, *Contracts*, § 140.50 (Matthew Bender)

5 California Points and Authorities, Ch. 50, *Contracts*, § 50.10 et seq. (Matthew Bender)

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 22, *Suing or Defending Action for Breach of Contract*, 22.03–22.50

## 2300.  Breach of Contractual Duty to Pay a Covered Claim—Essential Factual Elements

---

[*Name of plaintiff*] **claims that** [*name of defendant*] **breached its duty to pay** [**him/her/***nonbinary pronoun***/it**] **for a loss covered under an insurance policy. To establish this claim,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of plaintiff*] **suffered a loss, [all or part of] which was covered under an insurance policy with** [*name of defendant*]**;**

2. **That** [*name of defendant*] **was notified of the loss [as required by the policy]; and**

3. **The amount of the covered loss that** [*name of defendant*] **failed to pay.**

---

*New September 2003*

### Directions for Use

The instructions in this series assume the plaintiff is the insured and the defendant is the insurer. The party designations may be changed if appropriate to the facts of the case.

This instruction is intended for first party coverage claims. Use the bracketed language in element 2 if the jury is required to resolve a factual dispute over whether the manner in which the insurer received notice conformed to the policy requirements for notice. For a claim arising under an insurance binder rather than an issued policy, see CACI No. 2301, *Breach of Insurance Binder—Essential Factual Elements*. If the policy at issue has been lost or destroyed, read CACI No. 2305, *Lost or Destroyed Insurance Policy*. For instructions on general breach of contract issues, see the Contracts series (CACI No. 300 et seq.).

### Sources and Authority

- "Wrongful failure to provide coverage or defend a claim is a breach of contract." (*Isaacson v. California Insurance Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].)

### Secondary Sources

Croskey et al., California Practice Guide: Insurance Litigation, Ch. 15-D, *Filing Considerations*, ¶¶ 15:52, 15:924 (The Rutter Group)

2 California Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar) General Principles of Contract and Bad Faith Actions, §§ 24.2, 24.23

6 Levy et al., California Torts, Ch. 82, *Claims and Disputes Under Insurance Policies*, § 82.50[2][c] (Matthew Bender)

**CACI No. 2300**          INSURANCE LITIGATION

26 California Forms of Pleading and Practice, Ch. 308, *Insurance* (Matthew Bender)

12 California Points and Authorities, Ch. 120, *Insurance*, §§ 120.83, 120.90, 120.115 (Matthew Bender)

## 314. Interpretation—Disputed Words

[*Name of plaintiff*] **and** [*name of defendant*] **dispute the meaning of the following words in their contract:** [*insert disputed language*]**.**

[*Name of plaintiff*] **claims that the words mean** [*insert plaintiff's interpretation*]**.** [*Name of defendant*] **claims that the words mean** [*insert defendant's interpretation*]**.** [*Name of plaintiff*] **must prove that** [**his/her/ nonbinary pronoun/its**] **interpretation is correct.**

**In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.**

[**The following instructions may also help you interpret the words of the contract:**]

*New September 2003; Revised December 2014*

### Directions for Use

Give this instruction if there is conflicting extrinsic evidence as to what the parties intended the language of their contract to mean. While interpretation of a contract can be a matter of law for the court (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]), it is a question of fact for the jury if ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

Read any of the instructions (as appropriate) on tools for interpretation (CACI Nos. 315 through 320) after reading the last bracketed sentence.

### Sources and Authority

- Contract Interpretation: Intent. Civil Code section 1636.
- Contracts Explained by Circumstances. Civil Code section 1647.
- "Juries are not prohibited from interpreting contracts. Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence. But when, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury." (*City of Hope National Medical Center, supra,* 43 Cal.4th

115

**CACI No. 314**                    CONTRACTS

at p. 395, footnote and internal citations omitted.)

- "This rule—that the jury may interpret an agreement when construction turns on the credibility of extrinsic evidence—is well established in our case law. California's jury instructions reflect this (Judicial Council of Cal. Civ. Jury Instns. (2008) CACI No. 314) . . . , as do authoritative secondary sources." (*City of Hope National Medical Center*, *supra*, 43 Cal.4th at pp. 395–396, internal citations omitted.)

- "The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. Furthermore, '[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.' " (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 [50 Cal.Rptr.2d 323].)

- "In interpreting a contract, the objective intent, as evidenced by the words of the contract is controlling. We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." (*Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197–1198 [32 Cal.Rptr.2d 144], internal citations omitted.)

- "Ordinarily, even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, although it cannot be used to contradict it or offer an inconsistent meaning. The language, in such a case, must be ' "reasonably susceptible" ' to the proposed meaning." (*Hot Rods, LLC v. Northrop Grunman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1175–1176 [196 Cal.Rptr.3d 53].)

- " 'When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citation.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury. [Citations.]' " (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 433 [246 Cal.Rptr.3d 161].)

- "[I]t is indisputably the law that 'when ambiguous terms in a memorandum are disputed, extrinsic evidence is admissible to resolve the uncertainty.' The agreement must still provide the essential terms, and it is 'clear that extrinsic evidence cannot *supply* those required terms.' 'It can, however, be used to *explain* essential terms that were understood by the parties but would otherwise

116

CONTRACTS                          **CACI No. 314**

be unintelligible to others.' " (*Jacobs v. Locatelli* (2017) 8 Cal.App.5th 317, 325
[213 Cal.Rptr.3d 514], original italics, internal citations omitted.)

### Secondary Sources

1 Witkin, Summary of California Law (11th ed. 2017) Contracts, §§ 764–766

13 California Forms of Pleading and Practice, Ch. 140, *Contracts*, § 140.32
(Matthew Bender)

27 California Legal Forms, Ch. 75, *Formation of Contracts and Standard
Contractual Provisions*, § 75.15 (Matthew Bender)

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Asserting
a Particular Construction of Contract*, 21.04[2][b], 21.14[2]

## 314. Interpretation—Disputed Words

[*Name of plaintiff*] **and** [*name of defendant*] **dispute the meaning of the following words in their contract:** [*insert disputed language*]**.**

[*Name of plaintiff*] **claims that the words mean** [*insert plaintiff's interpretation*]**.** [*Name of defendant*] **claims that the words mean** [*insert defendant's interpretation*]**.** [*Name of plaintiff*] **must prove that** [**his/her/** *nonbinary pronoun*/**its**] **interpretation is correct.**

**In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.**

**[The following instructions may also help you interpret the words of the contract:]**

*New September 2003; Revised December 2014*

### Directions for Use

Give this instruction if there is conflicting extrinsic evidence as to what the parties intended the language of their contract to mean. While interpretation of a contract can be a matter of law for the court (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]), it is a question of fact for the jury if ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

Read any of the instructions (as appropriate) on tools for interpretation (CACI Nos. 315 through 320) after reading the last bracketed sentence.

### Sources and Authority

- Contract Interpretation: Intent. Civil Code section 1636.
- Contracts Explained by Circumstances. Civil Code section 1647.
- "Juries are not prohibited from interpreting contracts. Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was made based on incompetent evidence. But when, as here, ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence, that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury." (*City of Hope National Medical Center*, *supra*, 43 Cal.4th

115

**CACI No. 314**                    CONTRACTS

at p. 395, footnote and internal citations omitted.)

- "This rule—that the jury may interpret an agreement when construction turns on the credibility of extrinsic evidence—is well established in our case law. California's jury instructions reflect this (Judicial Council of Cal. Civ. Jury Instns. (2008) CACI No. 314) . . . , as do authoritative secondary sources." (*City of Hope National Medical Center*, *supra*, 43 Cal.4th at pp. 395–396, internal citations omitted.)

- "The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. Furthermore, '[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory.' " (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710 [50 Cal.Rptr.2d 323].)

- "In interpreting a contract, the objective intent, as evidenced by the words of the contract is controlling. We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." (*Lloyd's Underwriters v. Craig & Rush, Inc.* (1994) 26 Cal.App.4th 1194, 1197–1198 [32 Cal.Rptr.2d 144], internal citations omitted.)

- "Ordinarily, even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, although it cannot be used to contradict it or offer an inconsistent meaning. The language, in such a case, must be ' "reasonably susceptible" ' to the proposed meaning." (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1175–1176 [196 Cal.Rptr.3d 53].)

- " 'When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citation.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury. [Citations.]' " (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 433 [246 Cal.Rptr.3d 161].)

- "[I]t is indisputably the law that 'when ambiguous terms in a memorandum are disputed, extrinsic evidence is admissible to resolve the uncertainty.' The agreement must still provide the essential terms, and it is 'clear that extrinsic evidence cannot *supply* those required terms.' 'It can, however, be used to *explain* essential terms that were understood by the parties but would otherwise

116

CONTRACTS                                           **CACI No. 314**

be unintelligible to others.' " (*Jacobs v. Locatelli* (2017) 8 Cal.App.5th 317, 325 [213 Cal.Rptr.3d 514], original italics, internal citations omitted.)

### Secondary Sources

1 Witkin, Summary of California Law (11th ed. 2017) Contracts, §§ 764–766

13 California Forms of Pleading and Practice, Ch. 140, *Contracts*, § 140.32 (Matthew Bender)

27 California Legal Forms, Ch. 75, *Formation of Contracts and Standard Contractual Provisions*, § 75.15 (Matthew Bender)

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Asserting a Particular Construction of Contract*, 21.04[2][b], 21.14[2]

## 317. Interpretation—Construction of Contract as a Whole

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

*New September 2003; Revised December 2014*

### Directions for Use

This instruction may be given with CACI No. 314, *Interpretation—Disputed Words*. See the Directions for Use and Sources and Authority to that instruction for discussion of when contract interpretation may be a proper jury role.

### Sources and Authority

- Effect to Be Given to Every Part of Contract. Civil Code section 1641.

- "[T]he contract must be construed as a whole and the intention of the parties must be ascertained from the consideration of the entire contract, not some isolated portion." (*County of Marin v. Assessment Appeals Bd. of Marin County* (1976) 64 Cal.App.3d 319, 324–325 [134 Cal.Rptr. 349].)

- "Any contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith* (1998) 68 Cal.App.4th 445, 473 [80 Cal.Rptr.2d 329].)

- "[W]e should interpret contractual language in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory." (*Titan Corp. v. Aetna Casualty and Surety Co.* (1994) 22 Cal.App.4th 457, 473–474 [27 Cal.Rptr.2d 476].)

- "Nor are we persuaded by [defendant]'s related claim that it was improper for [plaintiff]'s counsel to tell the jurors, during closing argument, that in resolving witness credibility issues they should consider the 'big picture' and not get lost in the minutiae of the contractual language." (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 394 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

### Secondary Sources

1 Witkin, Summary of California Law (11th ed. 2017) Contracts, §§ 769–770

13 California Forms of Pleading and Practice, Ch. 140, *Contracts*, § 140.32 (Matthew Bender)

27 California Legal Forms, Ch. 75, *Formation of Contracts and Standard Contractual Provisions*, § 75.15 (Matthew Bender)

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Asserting*

120

CONTRACTS                    **CACI No. 317**

*a Particular Construction of Contract*, 21.19

## 2303. Affirmative Defense—Insurance Policy Exclusion

[*Name of defendant*] **claims that** [*name of plaintiff*]**'s [liability/loss] is not covered because it is specifically excluded under the policy. To succeed,** [*name of defendant*] **must prove that** [*name of plaintiff*]**'s [liability/loss] [arises out of/is based on/occurred because of]** [*state exclusion under the policy*]**. This exclusion applies if** [*set forth disputed factual issues that jury must determine*]**.

*New September 2003; Revised October 2008, June 2014, May 2021*

### Directions for Use

The instructions in this series assume the plaintiff is the insured and the defendant is the insurer. The party designations may be changed if appropriate to the facts of the case.

Give this instruction if the court has determined that an exclusionary clause in an insurance policy might apply to foreclose coverage, but the applicability turns on a question of fact. Identify with specificity the disputed factual issues the jury must resolve to determine whether the exclusion applies.

This instruction can be used in cases involving either a third party liability or a first party loss policy. Use CACI No. 2306, *Covered and Excluded Risks—Predominant Cause of Loss*, rather than this instruction, if a first party loss policy is involved and there is evidence that a loss was caused by both covered and excluded perils.

### Sources and Authority

- "The burden of bringing itself within any exculpatory clause contained in the policy is on the insurer." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].)

- "The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." (*Aydin Corp. v. First State Insurance Co.* (1998) 18 Cal.4th 1183, 1188 [77 Cal.Rptr.2d 537, 959 P.2d 1213].)

- Once the insurer proves that the specific exclusion applies, the insured "should bear the burden of *establishing* the exception because 'its effect is to reinstate coverage that the exclusionary language otherwise bars.' " (*Aydin Corp.*, *supra*, 18 Cal.4th at p. 1188.)

- "The interpretation of an exclusionary clause is an issue of law subject to this court's independent determination." (*Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc.* (2007) 153 Cal.App.4th 228, 233 [62 Cal.Rptr.3d 510].)

- "[T]he question of what caused the loss is generally a question of fact, and the

1358

INSURANCE LITIGATION                    **CACI No. 2303**

loss is not covered if the covered risk was only a remote cause of the loss, or
the excluded risk was the efficient proximate, or predominate cause." (*State
Farm Fire & Casualty Co. v. Von Der Lieth* (1991) 54 Cal.3d 1123, 1131–1132
[2 Cal.Rptr.2d 183, 820 P.2d 285].)

### Secondary Sources

2 Witkin, Summary of California Law (11th ed. 2017) Insurance, §§ 85, 88

Croskey et al., California Practice Guide: Insurance Litigation, Ch. 15-I, *Trial*,
¶¶ 15:911–15:912 (The Rutter Group)

1 California Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar)
Analyzing Coverage: Reading and Interpreting Insurance Policies, § 3.63

4 California Insurance Law and Practice, Ch. 41, *Liability Insurance in General*,
§ 41.11 (Matthew Bender)

26 California Forms of Pleading and Practice, Ch. 308, *Insurance*, § 308.502
(Matthew Bender)

## 2303.  Affirmative Defense—Insurance Policy Exclusion

---

[*Name of defendant*] **claims that** [*name of plaintiff*]**'s [liability/loss] is not covered because it is specifically excluded under the policy. To succeed,** [*name of defendant*] **must prove that** [*name of plaintiff*]**'s [liability/loss] [arises out of/is based on/occurred because of]** [*state exclusion under the policy*]**. This exclusion applies if** [*set forth disputed factual issues that jury must determine*]**.**

---

*New September 2003; Revised October 2008, June 2014, May 2021*

### Directions for Use

The instructions in this series assume the plaintiff is the insured and the defendant is the insurer. The party designations may be changed if appropriate to the facts of the case.

Give this instruction if the court has determined that an exclusionary clause in an insurance policy might apply to foreclose coverage, but the applicability turns on a question of fact. Identify with specificity the disputed factual issues the jury must resolve to determine whether the exclusion applies.

This instruction can be used in cases involving either a third party liability or a first party loss policy. Use CACI No. 2306, *Covered and Excluded Risks—Predominant Cause of Loss*, rather than this instruction, if a first party loss policy is involved and there is evidence that a loss was caused by both covered and excluded perils.

### Sources and Authority

- "The burden of bringing itself within any exculpatory clause contained in the policy is on the insurer." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].)

- "The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." (*Aydin Corp. v. First State Insurance Co.* (1998) 18 Cal.4th 1183, 1188 [77 Cal.Rptr.2d 537, 959 P.2d 1213].)

- Once the insurer proves that the specific exclusion applies, the insured "should bear the burden of *establishing* the exception because 'its effect is to reinstate coverage that the exclusionary language otherwise bars.' " (*Aydin Corp.*, *supra*, 18 Cal.4th at p. 1188.)

- "The interpretation of an exclusionary clause is an issue of law subject to this court's independent determination." (*Marquez Knolls Property Owners Assn., Inc. v. Executive Risk Indemnity, Inc.* (2007) 153 Cal.App.4th 228, 233 [62 Cal.Rptr.3d 510].)

- "[T]he question of what caused the loss is generally a question of fact, and the

1358

loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause." (*State Farm Fire & Casualty Co. v. Von Der Lieth* (1991) 54 Cal.3d 1123, 1131–1132 [2 Cal.Rptr.2d 183, 820 P.2d 285].)

### Secondary Sources

2 Witkin, Summary of California Law (11th ed. 2017) Insurance, §§ 85, 88

Croskey et al., California Practice Guide: Insurance Litigation, Ch. 15-I, *Trial*, ¶¶ 15:911–15:912 (The Rutter Group)

1 California Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar) Analyzing Coverage: Reading and Interpreting Insurance Policies, § 3.63

4 California Insurance Law and Practice, Ch. 41, *Liability Insurance in General*, § 41.11 (Matthew Bender)

26 California Forms of Pleading and Practice, Ch. 308, *Insurance*, § 308.502 (Matthew Bender)

## 2308. Affirmative Defense—Misrepresentation or Concealment in Insurance Application

[*Name of insurer*] **claims that no insurance contract was created because** [*name of insured*] **[concealed an important fact/made a false representation] in [his/her/**nonbinary pronoun**/its] application for insurance. To establish this defense,** [*name of insurer*] **must prove all of the following:**

1. **That** [*name of insured*] **submitted an application for insurance with** [*name of insurer*];

2. **That in the application for insurance** [*name of insured*]**, whether intentionally or unintentionally, [failed to state/represented] that** [*insert omission or alleged misrepresentation*];

3. **[That the application asked for that information;]**

4. **That** [*name of insured*] **knew that** [*specify facts that were misrepresented or omitted*]**; and**

5. **That** [*name of insurer*] **would not have issued the insurance policy if** [*name of insured*] **had stated the true facts in the application.**

*New September 2003; Revised April 2004, October 2004, June 2015, May 2020*

### Directions for Use

This instruction presents an insurer's affirmative defense to a claim for coverage. The defense is based on a misrepresentation or omission made by the insured in the application for the insurance. (See *Douglas v. Fid. Nat'l Ins. Co.* (2014) 229 Cal.App.4th 392, 408 [177 Cal.Rptr.3d 271].) If the policy at issue is a standard fire insurance policy, replace "intentionally or unintentionally" in element 2 with "willfully." (See Ins. Code, § 2071.) Otherwise, the insurer is not required to prove an intent to deceive; negligence or inadvertence is enough if the misrepresentation or omission is material. (*Douglas, supra,* 229 Cal.App.4th at p. 408.) Element 5 expresses materiality.

Element 3 applies only if plaintiff omitted information, not if the plaintiff misrepresented information.

While no intent to mislead is required, the insured must know the facts that constitute the omission or misrepresentation (see element 4). For example, if the application does not disclose that property on which insurance is sought is being used commercially, the applicant must have known that the property is being used commercially. (See Ins. Code, § 332.) It is not a defense, however, if the insured gave incorrect or incomplete responses on the application because the insured failed to appreciate the significance of some information known to him or her. (See

1369

**CACI No. 2308**          INSURANCE LITIGATION

*Thompson v. Occidental Life Insurance Co. of California* (1973) 9 Cal.3d 904, 916 [109 Cal.Rptr. 473, 513 P.2d 353].)

If it is alleged that omission occurred in circumstances other than a written application, this instruction should be modified accordingly.

## Sources and Authority

- Rescission of Contract. Civil Code section 1689(b)(1).

- Time of Insurer's Rescission of Policy. Insurance Code section 650.

- Concealment by Failure to Communicate. Insurance Code section 330.

- Concealment Entitles Insurer to Rescind. Insurance Code section 331.

- Duty to Communicate in Good Faith. Insurance Code section 332.

- Materiality. Insurance Code section 334.

- Intentional Omission of Information Tending to Prove Falsity. Insurance Code section 338.

- False Representation: Time for Rescission. Insurance Code section 359.

- "It is well established that material misrepresentations or concealment of material facts in an application for insurance entitle an insurer to rescind an insurance policy, even if the misrepresentations are not intentionally made. Additionally, '[a] misrepresentation or concealment of a material fact in an insurance application also establishes a complete defense in an action on the policy. [Citations.] As with rescission, an insurer seeking to invalidate a policy based on a material misrepresentation or concealment as a defense need not show an intent to deceive. [Citations.]' " (*Douglas, supra*, 229 Cal.App.4th at p. 408, internal citations omitted.)

- "When the [automobile] insurer fails . . . to conduct . . . a reasonable investigation [of insurability] it cannot assert . . . a right of rescission" under section 650 of the Insurance Code as an affirmative defense to an action by an injured third party. (*Barrera v. State Farm Mutual Automobile Insurance Co.* (1969) 71 Cal.2d 659, 678 [79 Cal.Rptr. 106, 456 P.2d 674].)

- "[A]n insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical history. Material misrepresentation or concealment of such facts [is] grounds for rescission of the policy, and an actual intent to deceive need not be shown. Materiality is determined solely by the probable and reasonable effect [that] truthful answers would have had upon the insurer. The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." (*Thompson, supra*, 9 Cal.3d at pp. 915–916, internal citations omitted.)

- "[A]lthough an insurer generally 'has the right to rely on the applicant's answers without verifying their accuracy[,] . . . [¶] . . . [t]he insurer cannot rely on answers given where the applicant-insured was *misled* by vague or ambiguous

1370

INSURANCE LITIGATION             **CACI No. 2308**

questions.' " (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 54
[220 Cal.Rptr.3d 170], original italics.)

- "[I]f the applicant for insurance had no present knowledge of the facts sought, or
  failed to appreciate the significance of information related to him, his incorrect
  or incomplete responses would not constitute grounds for rescission. Moreover,
  '[questions] concerning illness or disease do not relate to minor indispositions
  but are to be construed as referring to serious ailments which undermine the
  general health.' Finally, as the misrepresentation must be a material one,
  'incorrect answer on an insurance application does not give rise to the defense of
  fraud where the true facts, if known, would not have made the contract less
  desirable to the insurer.' And the trier of fact is not required to believe the 'post
  mortem' testimony of an insurer's agents that insurance would have been refused
  had the true facts been disclosed." (*Thompson, supra*, 9 Cal.3d at p. 916, internal
  citations omitted.)

- "[T]he burden of proving misrepresentation [for purposes of rescission] rests
  upon the insurer." (*Thompson, supra*, 9 Cal.3d at p. 919.)

- "To prevail, the insurer must prove that the insured made a material 'false
  representation' in an insurance application. 'A representation is false when the
  facts fail to correspond with its assertions or stipulations.' The test for
  materiality of the misrepresentation or concealment is the same as it is for
  rescission, 'a misrepresentation or concealment is material if a truthful statement
  would have affected the insurer's underwriting decision.' " (*Douglas, supra*, 229
  Cal.App.4th at p. 408, internal citations omitted.)

- "The materiality of a representation made in an application for a contract of
  insurance is determined by a *subjective* standard (i.e., its effect on the *particular*
  insurer to whom it was made) and rescission will be allowed even though the
  misrepresentation was the result of negligence or the product of innocence. On
  the other hand, in order to void a policy based upon the insured's violation of
  the standard fraud and concealment clause . . . , the false statement must have
  been knowingly and wilfully made with the intent (express or implied) of
  deceiving the insurer. The materiality of the statement will be determined by the
  *objective* standard of its effect upon a *reasonable* insurer." (*Cummings v. Fire
  Insurance Exchange* (1988) 202 Cal.App.3d 1407, 1415, fn.7 [249 Cal.Rptr.
  568], original italics, internal citation omitted.)

- "The insurer is not required to show a causal relationship between the material
  misrepresentation or concealment of material fact and the nature of the claim."
  (*Duarte, supra,* 13 Cal.App.5th at p. 53.)

- "Cancellation and rescission are not synonymous. One is prospective, while the
  other is retroactive." (*Fireman's Fund American Insurance Co. v. Escobedo*
  (1978) 80 Cal.App.3d 610, 619 [145 Cal.Rptr. 785].)

- "[U]pon a rescission of a policy of insurance, based upon a material concealment
  or misrepresentation, all rights of the insured thereunder (except the right to
  recover any consideration paid in the purchase of the policy) are

1371

**CACI No. 2308**          INSURANCE LITIGATION

extinguished . . . ." (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 184 [243 Cal.Rptr. 639].)

- "The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received. . . . [T]his would require the refund by [the insurer] of any premiums and the repayment by the defendants of any proceed advance which they may have received." (*Imperial Casualty & Indemnity Co., supra*, 198 Cal.App.3d at p. 184, internal citation omitted.)

### Secondary Sources

Croskey et al., California Practice Guide: Insurance Litigation, Ch. 5-F, *Rescission by Insurer*, ¶¶ 5:143–5:146, 5:153–5:159.1, 5:160–5:287, 15:241–15:256 (The Rutter Group)

2 California Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar) Rescission and Reformation, §§ 21.2–21.12, 21.35–21.37

2 California Insurance Law & Practice, Ch. 8, *The Insurance Contract*, § 8.10[1] (Matthew Bender)

2 California Uninsured Motorist Law, Ch. 24, *Bad Faith in Uninsured Motorist Law*, § 24.40 (Matthew Bender)

26 California Forms of Pleading and Practice, Ch. 308, *Insurance*, § 308.18 (Matthew Bender)

12 California Points and Authorities, Ch. 120, *Insurance*, §§ 120.250, 120.251, 120.260 (Matthew Bender)

## 358. Mitigation of Damages

---

If [*name of defendant*] breached the contract and the breach caused harm, [*name of plaintiff*] is not entitled to recover damages for harm that [*name of defendant*] proves [*name of plaintiff*] could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of [*name of plaintiff*]'s efforts in light of the circumstances facing [him/her/*nonbinary pronoun*/it] at the time, including [his/her/*nonbinary pronoun*/its] ability to make the efforts or expenditures without undue risk or hardship.

If [*name of plaintiff*] made reasonable efforts to avoid harm, then your award should include reasonable amounts that [he/she/*nonbinary pronoun*/it] spent for this purpose.

---

*New September 2003*

### Sources and Authority

- " ' "The doctrine of mitigation of damages holds that '[a] plaintiff who suffers damage as a result of . . . a breach of contract . . . has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." ' Under the doctrine, '[a] plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion.' However, '[t]he duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.' " (*Agam v. Gavra* (2015) 236 Cal.App.4th 91, 111 [186 Cal.Rptr.3d 295], internal citations omitted.)

- 'The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights." (*Valle de Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691 [32 Cal.Rptr.2d 329].)

- "Whether a plaintiff acted reasonably to mitigate damages . . . is a factual matter to be determined by the trier of fact . . . ." (*Agam, supra,* 236 Cal.App.4th at p. 111.)

- "A plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." (*Shaffer v. Debbas* (1993) 17 Cal.App.4th 33, 41 [21 Cal.Rptr.2d 110], internal citation omitted.)

- "A party injured by a breach of contract is required to do everything reasonably possible to negate his own loss and thus reduce the damages for which the other party has become liable. The plaintiff cannot recover for harm he could have foreseen and avoided by such reasonable efforts and without undue expense.

186

However, the injured party is not precluded from recovery to the extent that he has made reasonable but unsuccessful efforts to avoid loss." (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 460 [277 Cal.Rptr. 40], internal citations omitted.)

- "The burden of proving that losses could have been avoided by reasonable effort and expense must always be borne by the party who has broken the contract. Inasmuch as the law denies recovery for losses that can be avoided by reasonable effort and expense, justice requires that the risks incident to such effort should be carried by the party whose wrongful conduct makes them necessary. Therefore, special losses that a party incurs in a reasonable effort to avoid losses resulting from a breach are recoverable as damages." (*Brandon & Tibbs, supra,* 226 Cal.App.3d at pp. 460–461, internal citations omitted.)

### Secondary Sources

13 California Forms of Pleading and Practice, Ch. 140, *Contracts*, § 140.56 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 177, *Damages*, § 177.77 (Matthew Bender)

6 California Points and Authorities, Ch. 65, *Damages: Contract*, §§ 65.103, 65.121 (Matthew Bender)

1 Matthew Bender Practice Guide: California Contract Litigation, Ch. 7, *Seeking or Opposing Damages in Contract Actions*, 7.12[6][b], 7.15[4]

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –**

**RULES OF POLICY INTERPRETATION 1**

An insurer is entitled to write a policy which limits its coverage, and the limitations in the provisions of the policy must be respected.

Authority: *Trishan Air, Inc. v. Fed. Ins. Co.,* 635 F.3d 422, 429 (9th Cir. 2011); *National Ins. Underwriters v. Carter,* 17 Cal.3d 380, 386 (1976); *Argonaut Ins. Co. v. Transp. Indem. Co.,* 6 Cal.3d 496, 508 (1972).

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –**

**RULES OF POLICY INTERPRETATION 2**


Insurance policy language must be interpreted within the context of the policy as a whole.  All policy language must be applied.  No policy language may be ignored.  Policy interpretation must give effect to every part, with each clause helping to interpret the other.  Defined terms must be given their defined meanings.


Authority: Cal. Civ. Code §1641; *Sony Computer Entertainment Am. Inc. v. Am. Int'l Specialty Lines Ins. Co*., 532 F.3d 1007, 1012 (9th Cir. 2008); *J & J Realty Holdings, v. Great Am. E & S Ins. Co*., 420 F.Supp.3d 998, 1007 (C.D. Cal. 2019), *affirmed* No. 19-56172 (9th Cir. Dec. 11, 2020); *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503 (2005).

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –**

**RULES OF POLICY INTERPRETATION 3**

The following phrases are interpreted broadly in an insurance policy, including within exclusions from coverage: "arising out of"; "resulting from"; "based on"; and "a", "an", "any".

Authority: *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am*., 15 F.4th 885, 894 (9th Cir. 2021); *L.A. Lakers, Inc. v. Federal Ins. Co.,* 869 F.3d 795, 801 (9th Cir. 2017); *Pension Trust Fund v. Federal Ins. Co*., 307 F.3d 944, 952-53 (9th Cir. 2002); *James River Ins. Co. v. Medolac Labs*, 290 F.Supp.3d 956, 966 (C.D. Cal. 2018); *Century Nat'l Ins. Co. v. Garcia*, 51 Cal.4th 564, 568 (2011); *Mosley v. Pacific Specialty Ins. Co*., 49 Cal.App.5th 417 (2020); *City of Carlsbad v. Ins. Co. of State of Pa*., 180 Cal.App.4th 176, 182 (2009), citing to *Davidson v. Dallas*, 8 Cal. 227, 239 (1857); *Davis v. Farmers Ins. Grp.*, 134 Cal.App.4th 100, 106-08 (2005); *Southgate Recreation & Park Dist. v. Cal. Assn. for Park & Recreation Ins*., 106 Cal.App.4th 293, 301-02 (2003).

COURT'S INSTRUCTION NO. __

DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –
RULES OF CONSTRUCTION 4

For purposes of this case, "alleged" means what is written in a plaintiff's complaint.

Authority: Cal. Civ. Code §1641; *Sony Computer Entertainment Am. Inc. v. Am. Int'l Specialty Lines Ins. Co*., 532 F.3d 1007, 1012 (9th Cir. 2008); *J & J Realty Holdings, v. Great Am. E & S Ins. Co*., 420 F.Supp.3d 998, 1007 (C.D. Cal. 2019), *affirmed* No. 19-56172 (9th Cir. Dec. 11, 2020); *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading, Pa*., 156 F.Supp.3d 1154, 1171 (C.D. Cal. 2015); *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503 (2005).

COURT'S INSTRUCTION NO. __

DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –

RULES OF POLICY INTERPRETATION 5

Insurance policies cannot be rewritten for any purpose whatsoever. No court or jury may rewrite any policy, nor may they add to, take away from, or otherwise modify an insurance policy for any reason whatsoever, including any public policy consideration. No words may be ignored or not applied.

Authority: *Sony Computer Entertainment Am., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 532 F.3d 1007, 1016 (9th Cir. 2008); *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503 (2005); *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 968 (2001); *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 75-76 (1997).

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –**

**RULES OF POLICY INTERPRETATION 6**


Defendant's policy is clear and unambiguous.  Therefore, any "reasonable expectation of the insured" regarding coverage is irrelevant to interpreting the insurance policy and cannot be considered by you.


<u>Authority</u>: *Elwood v. Aid Ins. Co.*, 880 F.2d 204, 209 (9th Cir. 1989).

## COURT'S INSRUCTION NO. __

## DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT – DEFINITION OF "CLAIM"

The policy defines a covered "Claim" as "an express demand for Damages resulting from a Medical Incident...covered by this Policy.  An express demand for Damages shall include:...a civil action in which Damages to which this insurance applies are alleged...."

ECF 62-5 # 1912:7-15; OM admission to Hallmark RFA 1.

<u>Authority</u>: Cal. Civ. Code §1641; *Sony Computer Entertainment Am. Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008); *J & J Realty Holdings, v. Great Am. E & S Ins. Co.*, 420 F.Supp.3d 998, 1007 (C.D. Cal. 2019), *affirmed* No. 19-56172 (9th Cir. Dec. 11, 2020); *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503 (2005).

COURT'S INSTRUCTION NO. __

DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –

POLICY LANGUAGE THAT MUST BE
APPLIED TO INTERPRET "RELATED CLAIMS"

The policy defines "Related Claims" as "two or more **Claims** arising out of a single act, error or omission that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision."

**Related Claims Deemed Single Claim:**

All **Related Claims**, whenever made, shall be deemed to be a single **Claim**, regardless of:

(1) the number of **Related Claims**;

(2) the number of or identity of claimants;

(3) the number or identity of **Insureds** involved or against whom **Related Claims** have been or could be made;

(4) whether the **Related Claims** are asserted in a class action or otherwise; or

(5) the number and timing of the **Related Claims**, even if the **Related Claims** comprising such single **Claim** were made in more than one **Policy Period**.

All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with Section VII. CONDITIONS, P (2). whichever is earlier.

*See, e.g.*, ECF 62-5 # 1912:7-15; OM admission to Hallmark RFA 1; ECF 62-1 ## 1636:7-1649:25.

<u>Authority</u>: Cal. Civ. Code §1641; *Sony Computer Entertainment Am. Inc. v. Am. Int'l Specialty Lines Ins. Co*., 532 F.3d 1007, 1012 (9th Cir. 2008); *J & J Realty Holdings, v. Great Am. E & S Ins. Co*., 420 F.Supp.3d 998, 1007 (C.D. Cal. 2019), *affirmed* No. 19-56172 (9th Cir. Dec. 11, 2020); *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 503 (2005).

## COURT'S INSTRUCTION NO. __

### AFFIRMATIVE DEFENSE – INSURANCE POLICY EXCLUSION (4)

Defendant claims that plaintiff's liability in *DeSoto* is not covered because it is specifically excluded in the policy.  Exclusion (4) provides:

The coverage provided by this Policy shall not apply to any **Claim** under Insuring Agreements A…that is or is alleged to be based upon, arising out of, directly or indirectly resulting from , or in consequence of:

(4) **Bodily Injury**…or any other type of harm, damage or loss… arising from the performance by an Insured of any intentional or willful act, other than those acts made in good faith in the furnishing of Healthcare Services;….

ECF 62-5 # 1912:7-15, OM admission to Hallmark RFA 1

Authority: Cal. Civ. Code §1641; CACI 2303; *24th & Hoffman Investors v. Northfield Ins. Co.*, 82 Cal.App.5th 825, 839-40 (2022).

## COURT'S INSTRUCTION NO. __

### AFFIRMATIVE DEFENSE – INSURANCE POLICY EXCLUSION (5)

Defendant claims that plaintiff's liability in *DeSoto* is not covered because it is specifically excluded in the policy.  Exclusion (5) provides:

> The coverage provided by this Policy shall not apply to any **Claim** under Insuring Agreements A…that is or is alleged to be based upon, arising out of, directly or indirectly resulting from , or in consequence of:

> (5) any willful…act, error or omission by an **Insured**; any willful violation of law, statute, rule or regulation by an **Insured**; or the gaining of any profit, remuneration or advantage by an **Insured** to which such insured was not legally entitled; including but not limited to healthcare fraud; ….

ECF 62-5 # 1912:7-15; OM admission to Hallmark RFA 1.

Authority: Cal. Civ. Code §1641; CACI 2303; *24th & Hoffman Investors v. Northfield Ins. Co.*, 82 Cal.App.5th 825, 839-40 (2022).

## COURT'S INSTRUCTION NO. __

## DEFENDANT SPECIAL INSTRUCTION ON DUTY TO INDEMNIFY

The duty to indemnify does not arise until the insured's underlying liability is established and damages are fixed in some amount.  A duty to defend does not mean the insurer had a duty to indemnify the insured.

An insurer has no obligation to pay any sum to indemnify any party in the underlying action (*DeSoto*) unless (1) the defendant is an "Insured"; (2) the defendant is liable for acts or omissions in his or her capacity as an "Insured"; (3) liability against that "Insured" is reasonably clear; (4) the policy provides coverage for liability against that "Insured"; and (5) there is a contractual obligation to indemnify the party, i.e., the "Insured's" liability is within an insuring grant and is not subject to policy exclusions, conditions or other limitations to coverage.

An insurer has no obligation to pay a settlement demand (6) that is unreasonable (a "reasonable" settlement demand includes only covered damages); (7) that includes punitive damages; (8) in settlement of the underlying plaintiff's (DeSoto's) attorneys' fees; (9) to the extent that it includes settlement for parties that are not "Insureds" under the policy; and (10) to the extent the settlement included parties that are not plaintiffs in this breach of contract action to recover the settlement amount.

<u>Authority</u>: *County of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal.4th 406, 417 (2005); *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal.4th 945, 958 (2001); *Pinto v. Farmers Ins. Exch.*, 61 Cal.App.5th 676, 687-688 (2021); *Regional Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal.App.4th 1377, 1389 (2014); *DeWitt v. Monterey Ins. Co.,* 204 Cal.App.4th 233, 244 (2012).

## COURT'S INSTRUCTION NO. __

## DEFENDANT SPECIAL INSTRUCTION ON DAMAGES

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

<u>Implied Covenant of Good Faith and Fair Dealing</u>:  **Plaintiff has the burden of proving damages for breach of the implied covenant of good faith and fair dealing by "<u>clear and convincing evidence</u>"**.  If you find for the plaintiff on plaintiff's claim alleging defendant breached the implied covenant of good faith and fair dealing regarding the duty to defend or duty to indemnify, you will then determine whether the acts that constitute that breach was the cause of any damage to plaintiff.  If so, plaintiff may recover damages caused by those acts you found to constitute breach of the covenant of good faith and fair dealing by clear and convincing evidence, unless you determine that some or all of plaintiff's payments are for damages that are not covered or are excluded by defendant's policy or which you find that defendant did not cause.

<u>Duty To Indemnify / Breach of Contract</u>:  **Plaintiff has the burden of proving damages for breach of contract by a "<u>preponderance of the evidence</u>"**. If you find for the plaintiff on plaintiff's claim for breach of the duty to indemnify, you must determine if defendant's breach caused damages to the plaintiff.  If so, you will determine plaintiff's damages for that separate breach of duty.  For breach of the duty to indemnify, plaintiff is entitled to recover that portion of its settlement payment that was made for plaintiff's liability in the underlying action, unless you determine that some or all of plaintiff's settlement payment is for damages that are not covered or are excluded by defendant's policy or which you find that defendant did not cause.

<u>Authority</u>:  Cal. Civ. Code §3294(a); CACI 2334; *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400-01 (2000); *Cates Constr., Inc. v. Talbot Partners*, 21 Cal.4th 28, 61 (1999); *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 304-305 (1988); *Brandt v. Superior Court*, 37 Cal.3d 813, 817 (1985); *Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 430 (1967); *Pinto v. Farmers Ins. Exch.*, 61 Cal.App.5th 676, 687-688 (2021); *Pac. Gas & Elec. Co.*

*v. Superior Court*, 24 Cal.App.5th 1150, 1158-61, 1170 (2018); *Graciano v. Mercury Gen. Corp.*, 231 Cal.App.4th 414, 425 (2014); *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 464-65 (2007).

## COURT'S INSTRUCTION NO. __

## DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –

## ALLOCATION BETWEEN INSURED AND NON-INSURED DEFENDANTS IN THE UNDERLYING ACTION (*DESOTO*)

Of the six defendants in the underlying action (*DeSoto*), only Oxnard Manor LP ("Oxnard") was an "Insured". Five of the six defendants in the underlying action were not "Insureds" under defendant Hallmark Specialty Insurance Company's insurance policy.

Hallmark had no contractual obligation to provide a defense to, or to indemnify, the other five defendants in the underlying action (the "five non-insured defendants").

Defense Fees and Costs

Hallmark is liable only for those defense fees and costs allocable to Oxnard.

Hallmark is not liable for those defense fees and costs allocable solely to one or more of the five non-insured defendants.

Indemnity

"Joint and several" liability applies to economic ("special") damages which include medical costs and burial costs in an action for personal injury or wrongful death. This means that Oxnard could alone be liable in the underlying action (*DeSoto*) for medical costs (subject to reduction for payments by a collateral source (e.g., Medicare)) and burial costs.

Joint and several liability, however, does not apply to non-economic or general damages such as emotional distress. Oxnard may not be liable for all non-economic damages in the underlying action because plaintiff was one of six defendants, all of which were released in the underlying settlement agreement.

The maximum amount that the underlying plaintiff (DeSoto) could recover against Oxnard (a healthcare provider) for non-economic/general/emotional distress damages is $250,000.

ECF 62-1 ## 1624-1625 (JAF 11; JAE 10); 62-1 # 1629 (JAF 16, JAE 15).

<u>Authority</u>: Cal. Civ. Code § 1431.2; Cal. Civ. Code § 3333.1; *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1282, (1995); *Rashidi v. Moser*, 60 Cal.4th 718, 723, 727 (2014); *DaFonte v. Upright, Inc.,* 2 Cal.4th 593, 596 (1992); *Cochrum v. Costa Victoria Healthcare, LLC*, 25 Cal.App.5th 1034, 1051-52 (2018).

## COURT'S INSTRUCTION NO. __

## DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –

## ALLOCATION BETWEEN INSURED AND NON-INSURED DEFENDANTS IN THE UNDERLYING ACTION (*DESOTO*) (# 2)

Five of the six defendants in the underlying action (*DeSoto*) are not plaintiffs in this coverage action.  Plaintiff in this coverage action Oxnard Manor LP ("plaintiff") has no right to recover any defense fees and costs or indemnity under Hallmark's insurance policy applicable to the five defendants in *DeSoto* who are not plaintiffs in this action.

Defense Fees and Costs

Plaintiff cannot recover any defense fees and costs solely allocable to one or more of the five non-insured defendants in *DeSoto*.

Indemnity

Joint and several liability does not apply to non-economic or general damages such as emotional distress.  Oxnard may not be liable for all non-economic damages in the underlying action because plaintiff was one of six defendants, all of which were released in the underlying settlement agreement.

Oxnard may not be liable for all non-economic damages in the underlying action because plaintiff was one of six defendants, all of which were released in the underlying settlement agreement.

The maximum amount recoverable from plaintiff, a healthcare provider, in the underlying action (*DeSoto*) for non-economic/general/emotional distress damages is $250,000.

ECF 62-1 ## 1624-1625 (JAF 11; JAE 10); 62-1 # 1629 (JAF 16, JAE 15).

Authority: Cal. Civ. Code § 1431.2; Cal. Civ. Code § 3333.1; *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1282, (1995); *Rashidi v. Moser*, 60 Cal.4th 718, 723, 727 (2014); *DaFonte v. Upright, Inc.,* 2 Cal.4th 593, 596 (1992); *Cochrum v. Costa Victoria Healthcare, LLC*, 25 Cal.App.5th 1034, 1051-52 (2018).

## COURT'S INSTRUCTION NO. __

## DEFENDANT SPECIAL INSTRUCTION ON BREACH OF CONTRACT –

## DEFENSE EXPENSES

## (WHAT IS AND IS NOT WITHIN THE DEFENSE OBLIGATION)

Oxnard solely seeks as damages attorneys' fees and litigation costs incurred through defense counsel Cowdrey Jenkins.

Only those fees and costs incurred to defend Oxnard Manor LP in the underlying action (*DeSoto*) may qualify as damages for breach of the duty to defend. Fees and costs incurred solely to defend any of the other five non-insured defendants in *DeSoto* may not be included in your calculation of recoverable defense expenses. This will require that you review each entry on each invoice to determine whether each applies to Oxnard or solely to one or more of the five non-insured defendants.

ECF 62-1 ## 1624-1625 (JAF 11; JAE 10); 62-1 # 1629 (JAF 16, JAE 15).

Authority: Cal. Civ. Code § 1431.2; Cal. Civ. Code § 3333.1; *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1282, (1995); *Rashidi v. Moser*, 60 Cal.4th 718, 723, 727 (2014); *DaFonte v. Upright, Inc.,* 2 Cal.4th 593, 596 (1992); *Cochrum v. Costa Victoria Healthcare, LLC*, 25 Cal.App.5th 1034, 1051-52 (2018).

### 1.7 Burden of Proof— Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

### Comment

*See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (defining clear and convincing evidence).  *See also Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (citing *Colorado*).

### 5.1 Damages—Proof

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff [on the plaintiff's [*specify type of claim*] claim], you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.  You should consider the following:

[*Insert types of damages.  See Instruction 5.2 (Measures of Types of Damages)*]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

### Comment

If liability is not disputed, this instruction should be modified accordingly.

### 5.3 Damages—Mitigation

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

### Comment

As to mitigation of damages in an action under the Age Discrimination in Employment Act, *see* Instruction 11.13 (Age Discrimination—Damages—Back Pay—Mitigation).

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING –**

**A "GENUINE DISPUTE " REGARDING WHETHER
COVERAGE IS OWED PRECLUDES A FINDING OF BAD FAITH**

An insurer is not liable for violation of the implied covenant of good faith and fair dealing where there was a "genuine dispute" regarding coverage liability at the time that the insurer made its decision under applicable law, the policy language, the underlying complaint, and other evidence of which it was aware.

Authority: *Teleflex Med., Inc.v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 851 F.3d 976, 988 (9th Cir. 2017); *Feldman v. Allstate Ins. Co*., 322 F.3d 660, 669 (9th Cir. 2003); *Lundsford v. Am. Guar. Liability Ins. Co*., 18 F.3d 653, 656 (9th Cir. 1994).

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING –
AN INSURER'S MERE NEGLIGENCE OR MISTAKE IS NOT BAD FAITH**

A breach of contract is not evidence of, and does not establish, that defendant breached the implied covenant of good faith and fair dealing.  Plaintiff must provide other evidence sufficient to meet its burden of proof by "clear and convincing evidence" to prevail on a cause of action for breach of the implied covenant.

1. Plaintiff must prove by "clear and convincing evidence" each of the following:

    a. Defendant declined coverage for the underlying action by a "conscious and deliberate act" to "unreasonably or without proper cause" deprive plaintiff of policy benefits;

    b. Defendant's conduct caused harm to plaintiff;

    c. Defendant's conduct caused plaintiff's damages; and

    d. The amount of the damages that defendant's conduct caused plaintiff.

2. Defendant is <u>not</u> liable for breach of the implied covenant if you find any of the following to be proven:

    a. There was a "genuine dispute" regarding whether there was coverage;

    b. Defendant's coverage determination was at least reasonable;

    c. If the error by defendant was simply an "an honest mistake, bad judgment or negligence;" or

    d. Defendant's claims handling was merely negligent or "sloppy".

    The reasonableness of an insurer's decisions must be evaluated at the time that they were made.

<u>Authority</u>:  *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003); *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992-93 (9th Cir. 2001); *Albers v. Paul*

*Revere Ins. Grp.*, No. 22-15100 (9th Cir. June 7, 2023), at 6-7; *Cook v. Allstate Ins. Co.*, 337 F.Supp.2d 1206, 1216-17 (C.D. Cal. 2004); *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723, 724 (2007); *Pinto v. Farmers Ins. Exch.*, 61 Cal.App.5th 676, 688 (2012); *Graciano v. Mercury Gen. Corp.*, 231 Cal.App.4th 414, 425 (2014); *Chateau Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 346 (2001); *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1394 (1990).

**COURT'S INSTRUCTION NO. __**

**DEFENDANT SPECIAL INSTRUCTION ON
INTRODUCTION TO SPECIAL VERDICT FORM**

I will give you [a] verdict form[s] with questions you must answer.  I have already instructed you on the law that you are to use in answering these questions.  You must follow my instructions and the form[s] carefully.  You must consider each question separately.  Although you may discuss the evidence and the issues to be decided in any order, you must answer the questions on the verdict form[s] in the order they appear.  After you answer a question, the form tells you what to do next.  All of you must agree on an answer before you can move on to the next question.

All of you must deliberate on and answer each question regardless of how you voted on any earlier question.  Unless the verdict form tells jurors to stop and answer no further questions, every juror must deliberate and vote on all of the remaining questions.

When you have finished filling out the form[s], your presiding juror must write the date and sign it at the bottom of the last page and then notify the [bailiff/clerk/court attendant] that you are ready to present your verdict in the courtroom.