# EXHIBIT B

WENDELL DECLARATION IN SUPPORT OF

DEFENDANT HALLMARK'S JURY INSTRUCTIONS

C.D. Cal. 2:23-cv-01322-SPG-MAR

*Oxnard Manor v. Hallmark*, **Oxnard Proposed Jury Instructions 3/6/24**

**Redline Represents Hallmark's Revisions That Oxnard Disputes**

*(All Instructions are from Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit unless designated CACI or Special Jury Instruction)*

### 1.5 Claims and Defenses

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This case involves a dispute over whether the language of a liability insurance policy required an insurer to provide coverage to an insured in an action in which the insured was a defendant (the "underlying action"). The underlying action is referred to as "*DeSoto*".

> **Commented [CM1]:** This ignores or mischaracterizes the Court's ruling granting summary judgment on the duty to defend. The duty to indemnify is not at issue, so this is *not* a dispute about the language of an insurance policy.

~~The p~~Plaintiff in this action is Oxnard Manor LP dba Oxnard Manor Health Center ("plaintiff"). Plaintiff asserts that it was an insured on an insurance policy issued by Hallmark Specialty Insurance Company ("defendant"). Plaintiff asserts that defendant committed a bad faith breach of the insurance policy's implied covenant of good faith and fair dealing. ~~The p~~Plaintiff has the burden of proving this claim by clear and convincing evidence.

Defendant asserts that the language of the insurance policy did not provide coverage to plaintiff in *DeSoto*. Defendant ~~The defendant~~ denies that it breached the insurance contract. Defendant denies that it breached the implied covenant of good faith and fair dealing. Defendant asserts that policy exclusions (4) and (5) applied to bar coverage of plaintiff in *DeSoto*. ~~ose claims [and also contends that [defendant's counterclaims and/or affirmative defenses]].~~ Defendant has the burden of proving its defenses and affirmative defenses by a ~~[The defendant has the burden of proof on these [counterclaims and/or affirmative defenses.]~~ by a preponderance of the evidence.]

[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

**OBJECTION:** plaintiff must first prove the duty to indemnify.

*1.6 Burden of Proof—Preponderance of the Evidence*

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**OBJECTION:** plaintiff must prove that Hallmark violated the implied covenant of good faith by clear and convincing evidence.

> **Commented [CM2]:** This is an inaccurate statement of law.

*1.9 What Is Evidence*

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

*1.10 What Is Not Evidence*

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

### *1.11 Evidence for Limited Purpose*

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

### *1.12 Direct and Circumstantial Evidence*

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

### *1.13 Ruling on Objections*

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### *1.14 Credibility of Witnesses*

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some

things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

### *1.15 Conduct of the Jury*

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference

5

materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

### *1.17 No Transcript Available to Jury*

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

### *1.18 Taking Notes*

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

### *1.19 Questions to Witnesses by Jurors*

*Option 1*

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. *[Specific reasons for not allowing jurors to ask questions may be explained.]* If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

### *1.20 Bench Conferences and Recesses*

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

### *1.21 Outline of Trial*

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

### *2330. Implied Obligation of Good Faith and Fair Dealing Explained (CACI)*

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement made. The duty of good faith and fair dealing continues even after the commencement of litigation between the insured and insurer.

~~This obligation goes beyond meeting reasonable expectations of coverage. Insurers hold themselves out as fiduciaries.~~ Accordingly, the obligation of good faith and fair dealing encompass qualities inherent in the responsibilities of a fiduciary.

> **Commented [CM3]:** White v. Western Title Ins. Co., 40 Cal.3d 870, 891 (Cal. 1985)
>
> **Commented [JW4R3]:** Incomplete and ignores litigation privilege. Contrary to law. Insurers are not in a fiduciary relationship to an Insured. An Insured's reasonable expectations are not relevant or at issue in this.
>
> **Commented [CM5]:** Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 820 (Cal. 1979)

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give ~~at least~~ as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must unreasonably act or fail to act in a manner that deprives the insured of the benefits of the policy. To act unreasonably is not a mere failure to exercise reasonable care (negligence or mistake). It means that the insurer must act or fail to act without proper cause. An insurer can have proper cause if there is a genuine dispute regarding whether the language of the policy applied to the underlying action under applicable law. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy.

### *2336. Bad Faith (Third Party)—Unreasonable Failure to Defend—Essential Factual Elements (CACI)*

Oxnard Manor claims it was harmed by Hallmark's breach of the obligation of good faith and fair dealing because Hallmark failed to defend Oxnard in a lawsuit that was brought against it. To establish this claim, ~~[name of plaintiff]~~Oxnard Manor must prove all of the following:
1. That Oxnard was insured under an insurance policy with Hallmark;
2. That a lawsuit was brought against Oxnard;
3. That Oxnard gave Hallmark timely notice that it had been sued;

8

4. That Hallmark, unreasonably, that is, without proper cause, failed to defend Oxnard against the lawsuit;
5. That Hallmark was not merely negligent or mistaken.
5. That Oxnard was harmed; and
6. That Hallmark's conduct was a substantial factor in causing Oxnard's harm.

Oxnard must prove the foregoing by a preponderance of the evidence.

Oxnard must prove punitive damages by clear and convincing evidence.

Hallmark may defeat Oxnard's claim of breach of the obligation of good faith and fair dealing by proving that there was a genuine dispute regarding coverage liability at the time that the insurer made its decision under applicable law, the policy language, the underlying complaint, and other evidence of which it was aware.

## 2337. Factors to Consider in Evaluating Insurer's Conduct (CACI)

In determining whether Hallmark acted unreasonably, that is, without proper cause, you may consider whether the defendant did any of the following:

[(a) Misrepresented to [name of plaintiff]Oxnard Manor relevant facts or insurance policy provisions relating to any coverage at issue.] OBJECTION: No such evidence.
[(b) Failed to acknowledge and act reasonably promptly after receiving communications about [name of plaintiff]Oxnard Manor's claim arising under the insurance policy.] OBJECTION: No such evidence.
[(c) Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies.] OBJECTION: No such evidence.
[(d) Failed to accept or deny coverage of claims within a reasonable time after [name of plaintiff]Oxnard Manor completed and submitted proof-of-loss requirements.] OBJECTION: No such evidence.
[(e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of [name of plaintiff]Oxnard Manor's claim after liability had become reasonably clear.] OBJECTION: No such evidence.
[(f) Required [name of plaintiff]Oxnard Manor to file a lawsuit to recover amounts due under the policy by offering substantially less than the amount that [he/she/nonbinary pronoun/it] ultimately recovered in the lawsuit, even though [name of plaintiff]Oxnard Manor had made a claim for an amount reasonably close to the amount ultimately recovered.] OBJECTION: No such evidence.

9

[(g) Attempted to settle [name of plaintiff]'s claim for less than the amount to which a reasonable person would have believed [name of plaintiff] was entitled by referring to written or printed advertising material accompanying or made part of the application.]

[(h) Attempted to settle the claim on the basis of an application that was altered without notice to, or knowledge or consent of, [name of plaintiff], [his/her/nonbinary pronoun/its] representative, agent, or broker.]

[(i) Failed, after payment of a claim, to inform [name of plaintiff] at [his/her/nonbinary pronoun/its] request, of the coverage under which payment was made.]

[(j) Informed [name of plaintiff] of its practice of appealing from arbitration awards in favor of insureds or claimants for the purpose of forcing them to accept settlements or compromises less than the amount awarded in arbitration.]

[(k) Delayed the investigation or payment of the claim by requiring [name of plaintiff], [or [his/her/nonbinary pronoun] physician], to submit a preliminary claim report, and then also required the submission of formal proof-of-loss forms, both of which contained substantially the same information.]

[(l) Failed to settle a claim against [name of plaintiff]Oxnard Manor promptly once [his/her/nonbinary pronoun/its] liability had become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.] OBJECTION: No such evidence.

[(m) Failed to promptly provide a reasonable explanation of its reasons for denying the claim or offering a compromise settlement, based on the provisions of the insurance policy in relation to the facts or applicable law.] OBJECTION: No such evidence.

[(n) Directly advised [name of plaintiff] not to hire an attorney.]

[(o) Misled [name of plaintiff]Oxnard Manor as to the applicable statute of limitations, that is, the date by which an action against [name of defendant] on the claim had to be filed.] OBJECTION: No such evidence.

[(p) Delayed the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired immune deficiency syndrome (AIDS) or AIDS-related complex for more than 60 days after it had received [name of plaintiff]'s claim for those benefits, doing so in order to investigate whether [name

10

~~of plaintiff] had the condition before obtaining the insurance coverage. However, the 60-day period does not include any time during which [name of defendant] was waiting for a response for relevant medical information from a healthcare provider.]~~(q) Failed to conduct a thorough, adequate investigation of the claim. [Commented [CM6]:]

[Commented [CM7R6]: *Egan v. Mut. Of Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000).]

Plaintiff must prove such conduct by clear and convincing evidence.

The presence or absence of any of these factors alone is not enough to determine whether Hallmark[~~name of defendant~~]'s conduct was or was not unreasonable, that is, without proper cause. You must consider Hallmark[~~name of defendant~~]'s conduct as a whole in making this determination. Since the duty of good faith is continuing, you may also consider Hallmark's conduct in this litigation in evaluating whether it breached this duty.

[Commented [CM8]: White v. Western Title Ins. Co., 40 Cal.3d 870, 891 (Cal. 1985)]

OBJECTION. The regulations on which this instruction is based (1) do not apply to health care providers such as Oxnard; and (2) do not provide a private right of action. CCR section 2695.1(b)(2) provides that section 2695's regulations do not apply to liability insurance for professional negligence (Policy Coverage A) of "health care providers" as defined in California Code of Civil Procedure section 364(f)(1), which includes "any…health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." Health and Safety Code section 1250(c) defines "health facility" to include a skilled nursing facility such as plaintiff Oxnard Manor. Cal. Health & Safety § 1250(c)(1). The section 2695 regulations do not apply in this case.

There is no private right of action. *See Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 174 (9th Cir. 1997), citing *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287, 300 (1988).

### 5.1 Damages—Proof

It is the duty of the Court to instruct you about the measure of damages.

~~The Court has previously determined that Defendant breached the insurance policy by failing to provide Plaintiff a defense in the *DeSoto* lawsuit.~~

By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff [on the plaintiff's [*specify type of claim*] claim], you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

[*Insert types of damages. See Instruction 5.2 (Measures of Types of Damages)*]

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

OBJECTION: This instruction does not identify what types of damages plaintiff seeks (defense, indemnity, punitive, and amounts).

### 5.5 *Punitive Damages*

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by [a preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded and, if so, the amount of any such damages. The plaintiff must first prove breach of the implied covenant of good faith and fair dealing.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or

12

abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

[In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

OBJECTION: To recover punitive damages, plaintiff must prove conduct qualifying as bad faith by clear and convincing evidence.

### 2350. Damages for Bad Faith (CACI)

If you decide that Oxnard has proved its claim against [name of defendant], you also must decide how much money will reasonably compensate [name of plaintiff]Oxnard Manor for the harm.

This compensation is called "damages."

The amount of damages must include an award for all harm that was caused by [name of defendant], even if the particular harm could not have been anticipated.

[Name of plaintiff]Oxnard Manor must prove the amount of [his/her/nonbinary pronoun/
its]its damages. However, [name of plaintiff]Oxnard Manor does not have to prove the
exact amount of damages that will provide reasonable compensation for
the harm. You must not speculate or guess in awarding damages.

If you determine that Oxnard Manor is entitled to recover on its bad faith cause of action by clear and convincing evidence and that, because of the insurerd's bad faith,

13

it was reasonably necessary for Oxnard Manor to employ the services of an attorney to collect the benefits due under the policy, then Oxnard Manor is entitled to an award for attorney fees incurred to obtain the policy benefits, but not to pursue its cause of action for bad faith. These fees are referred to as *Brandt* fees. ~~The following are the specific items of damages claimed by [name of~~

~~plaintiff]:~~
~~1. [Mental suffering/anxiety/humiliation/emotional distress;] [and]~~
~~2. [The cost of attorney fees to recover the insurance policy benefits;] [and]~~
~~3. [Insert other applicable item of damage.]~~

In order to recover *Brandt* fees, Oxnard Manor must prove "(1) the amount to which it was entitled to recover under the policy, (2) that Hallmark withheld payment unreasonably or without proper cause, (3) the amount that Oxnard Manor paid or incurred in legal fees and expenses in establishing the insured's right to contract benefits and (4) the reasonableness of the fees and expenses so incurred." These recoverable *Brandt* fees include only fees attributable to obtaining the insurance benefits, not "those attributable to the bringing of the bad faith action itself." Brandt, 37 Cal. 3d at 815. ~~To recover attorney fees [name of plaintiff] must prove that because of~~
~~[name of defendant]'s breach of the obligation of good faith and fair dealing it was reasonably necessary for [him/her/nonbinary pronoun/it] to hire an attorney to recover the policy benefits. [Name of plaintiff] may recover attorney fees [he/she/nonbinary pronoun/it] incurred to obtain policy benefits but not attorney fees [he/she/nonbinary pronoun/it] incurred for other purposes.~~ [Commented [CM9]: *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1079 (2007).]

To recover these *Brandt* fees, Oxnard Manor must separate out its litigation expenses such that it can clearly demarcate the fees attributable to the pursuit of the benefits to which it is entitled under the policy from fees expended on other work. [Commented [CM10]: *Slottow v. Am. Cas. Co. of Reading, Penn.*, 10 F.3d 1355, 1362 (9th Cir. 1993).]

To properly calculate Brandt fees in cases of mixed coverage and bad faith cases, like the case at hand, the jury must determine the total number of hours an attorney spent on the case and then determine how many hours were spent working exclusively on the contract recovery. Hours spent working on issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort. Oxnard Manor must prove by a preponderance of evidence both the existence and the amount of damages proximately caused by Hallmark's tortious conduct. [Commented [CM11]: *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 811–12 (2004).]

14

*3935. Prejudgment Interest (Civ. Code, § 3288) CACI*

If you decide that [name of plaintiff] Oxnard Manor is entitled to recover damages for past economic loss in the form of bad faith damages, called *Brandt* fees in one or more of the categories of damages that [he/she/nonbinary pronoun/it] claims, then you must decide whether [he/she/nonbinary pronoun/it] it should also receive prejudgment interest on each item of loss in those categories its *Brandt* fees. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict. Whether [name of plaintiff] Oxnard Manor should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion. If you award these damages to Oxnard Manor [name of plaintiff], you will be asked to address prejudgment interest in the special verdict form.

**Special Jury Instructions**

*SJI 1. Bad Faith Failure to Investigate*

Oxnard Manor claims that Hallmark acted unreasonably, that is, without proper cause, by failing to conduct a proper investigation of the *DeSoto* claim. To establish this claim, Oxnard Manor must prove all of the following:

1. That Oxnard Manor suffered a loss covered under an insurance policy issued by Hallmark;

2. That Oxnard Manor properly presented a claim to Hallmark to be compensated for the loss;

3. That Hallmark failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of Oxnard Manor's claim;

4. That Oxnard Manor was harmed; and

5. That Hallmark's failure to properly investigate the claim was a substantial factor in causing Oxnard Manor's harm. When investigating Oxnard Manor's claim,

15

Hallmark had a duty to diligently search for and consider evidence that supported coverage of the claimed loss. [Commented [CM12]: CACI 2332]

Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim. The insurer has a duty to investigate a claim thoroughly and consider, or seek to discover evidence relevant to the issue of liability and damages under the insurance policy. Its early closure of an investigation and unwillingness to reconsider a denial when presented with evidence of factual errors will fortify a finding of bad faith. [Commented [CM13]: *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 879 (2000).] [Commented [CM14]: *Id.* at 880.] [Commented [CM15]: Id. at 880.]

If an insurer seeks to discover only the evidence that defeats the claim, it holds its own interest above that of the insured. An insurer that ignores evidence available to it which supports coverage or just focuses on those facts which justify denial of the claim, then it acts unreasonably in bad faith. [Commented [CM16]: *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1620 (1996). If] [Commented [CM17]: *Shade Foods*, 78 Cal. App. 4th at 881 (internal quotation omitted); *Amadeo*, 290 F.3d at 1164 (finding an insurer acts unreasonably if it ignores evidence available to it that supports the insured's claim).]

OBJECTION: Incomplete and improper statement of the law. It does not advise that an insurer may rely on, and has no obligation to ignore, policy language nor extrinsic evidence that it becomes aware of during its investigation. It overemphasizes the factor of an investigation to the extent of other factors. It is contrary to the preceding instructions regarding a determination of bad faith and misstates current law.

16