1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11    OXNARD MANOR LP dba OXNARD
      MANOR HEALTH CENTER, a California
12    Limited Partnership,

13                              Plaintiff,

14              v.

15    HALLMARK SPECIALTY INSURANCE
      COMPANY, an Oklahoma corporation,
16
                                Defendant.
17

Case No. 2:23-cv-01322-SPG-MAR

**ORDER GRANTING PLAINTIFF'S
MOTION TO EXCLUDE THE
TESTIMONY OF BURL DANIEL AND
GRANTING, IN PART,
DEFENDANT'S MOTION TO
EXCLUDE PLAINTIFF'S EXPERT
OPINIONS [ECF NOS. 74, 75]**

18

19          Before the Court are two motions to exclude expert testimony: Plaintiff Oxnard

20    Manor LP dba Oxnard Manor Health Center's ("Plaintiff") Motion to Exclude Testimony

21    of Defendant's Expert Witness Burl Daniel, (ECF No. 74 ("Daniel Motion")), and

22    Defendant Hallmark Specialty Insurance Company's ("Defendant") Motion to Exclude

23    Plaintiff's Unreliable Expert Opinions (*Daubert*), (ECF No. 75 ("Zalma Motion")).

24    Having considered the parties' submissions, the relevant law, and the record in this case,

25    the Court finds this matter appropriate for decision without a hearing.  *See* Fed. R. Civ.

26    P. 78(b); C.D. Cal. L.R. 7-15.  For the following reasons, the Court hereby GRANTS the

27    Daniel Motion and GRANTS, in part, the Zalma Motion.

28

-1-

## I.    BACKGROUND

This case concerns an insurance coverage dispute between Plaintiff, which operates a skilled nursing facility in Ventura County, California, (ECF No. 32 ¶ 3), and Defendant, an insurance company that issued certain liability insurance policies to Plaintiff, (ECF No. 62-1 ¶¶ 2–4).  The details of the underlying causes of action are set out more fully in other orders.  As relevant to the Daniel and Zalma Motions, on January 10, 2024, following this Court's Order Denying in Part Defendant's Motion for Summary Judgment and Granting Plaintiff's Motion for Partial Summary Judgment, (ECF No. 68), the parties each filed motions to exclude expert testimony pertaining to insurance claims handling practices, an issue critical to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  On January 17, 2024, the parties filed their respective oppositions, (ECF No. 79 ("Zalma Opposition"); ECF No. 80 ("Daniel Opposition")), and the parties filed reply briefs on January 24, 2024, (ECF No. 81 ("Zalma Reply"); ECF No. 83 ("Daniel Reply")).

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 permits expert witness testimony so long as the witness is qualified and offers relevant and reliable opinions.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).   An expert witness may be qualified by "knowledge, skill, experience, training, or education" as to the subject matter upon which he or she seeks to opine. Fed. R. Evid. 702.  For an expert's opinion to be reliable, it "must be 'based upon sufficient facts or data,' 'the product of reliable principles and methods,' and the expert must 'appl[y] the principles and methods reliably to the facts of the case.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1191–92 (9th Cir. 2007) (quoting Fed. R. Evid. 702).  Expert testimony is relevant where it "assist[s] the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  *See also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." (internal quotation marks and citation omitted)).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation omitted). To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal quotation marks and citations omitted). "When evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

The inquiry into the admissibility of expert testimony is "a flexible one" in which "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. *See also Daubert*, 509 U.S. at 596. The judge should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70. The proponent of the expert testimony bears the burden of proving admissibility by a preponderance of the evidence in accordance with Rule 702. *Lust By & Through Lust v. Merrell Dow Pharm.*, Inc., 89 F.3d 594, 598 (9th Cir. 1996). *See also* Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

## III.   DISCUSSION

### A.   Plaintiff's Motion to Exclude the Expert Testimony of Mr. Burl Daniel

Plaintiff moves to exclude the expert testimony of Mr. Burl Daniel, whom Defendant designated to rebut opinions offered by Plaintiff's designated expert, Mr. Barry Zalma. (ECF No. 74-1 at 5–6). Plaintiff makes three arguments as to why Mr. Daniel's testimony

should be excluded: first, that his testimony is not based on sufficient facts or data; second, that his testimony is unreliable because it lacks a supporting methodology; and third, that he offers impermissible, non-rebuttal opinions outside the scope of Mr. Zalma's testimony. (Daniel Mot. at 2). The Court addresses each of Plaintiff's arguments below.

### 1.  Mr. Daniel's Factual Bases

Plaintiff first contends that Mr. Daniel's report should be excluded because Mr. Daniel purportedly largely relied on the deposition testimony of Defendant's 30(b)(6) witness in formulating his opinions. (*Id.* at 13–14). In opposition, Defendant insists that Mr. Daniel received and reviewed each of the parties' document productions, as well as "all deposition transcripts, motions and exhibits, and substantive written discovery in this action." (Daniel Opp. at 6). Although far from clear from his rebuttal report, Mr. Daniel has attested under oath to considering over 21,000 pages of documents, (ECF No. 80-1 ¶ 13), and it is not the Court's role to engage in credibility determinations, *Alaska Rent–A–Car*, 738 F.3d at 969. In any event, as Plaintiff explains with respect to its own witness, Mr. Zalma, an expert's purported failure to "address (or review)" material "that purportedly undermine[s] some of his opinions or assumptions does not make his testimony excludable" but instead provides "grounds for cross-examination." *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 931 (N.D. Cal. 2017). The Court declines to exclude Mr. Daniel's opinions on this basis.

### 2.  Mr. Daniel's Methodology

Plaintiff also argues that Mr. Daniel lacks any "discernable methodology" for his opinions. (Daniel Mot. at 15–16). In particular, Plaintiff notes that Mr. Daniel does not refer to "California insurance claims handling or investigation standards" and that he otherwise "lacks sufficient knowledge or experience" to support his conclusions. (*Id.*). In opposition, Defendant contends that Mr. Daniel appropriately relied on a standard of "reasonableness" in forming his opinions. (Daniel Opp. at 8–9).

Expert testimony is reliable if the knowledge underlying it "has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. Rule

702's reliability requirement makes "certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

As an initial matter, Mr. Daniel's report does not make clear what bases he has to opine on California claims handling practices. Standing alone, Mr. Daniel's curriculum vitae indicates that his experience as an insurance agent occurred within the state of Texas; although he has also worked as an insurance expert witness for approximately twenty years, the curriculum vitae does not make clear how this experience equips him to opine on California insurance custom and practice. (ECF No. 74-1 at 50–51). In connection with Daniel Motion, however, Mr. Daniel has submitted a declaration attesting to some amount of experience analyzing California's claims handling statutes. (ECF No. 80-1 ¶ 2).

Notwithstanding, Mr. Daniel provides scant explanation or analysis to explain the basis of his opinions and does not indicate any methodology he used to arrive at his conclusions. Mr. Daniel opines that "Hallmark's investigation and analysis of the *DeSoto* claim, as evidenced in the documents produced in this matter along with Hallmark's deposition testimony met the 'reasonableness' standard and fell well within accepted insurance industry and California claims handling practices." (ECF No. 74-1 at 15). But Mr. Daniel does not provide any analysis to substantiate this conclusion. His report fails to identify *any* purportedly reasonable actions Defendant took to investigate and analyze the *DeSoto* claim, other than its request that Plaintiff provide it with additional information. (*Id.* at 22). Mr. Daniel characterizes Defendant's investigation as "timely," (*id.*), but absent an explanation of what steps Defendant took and when, this statement is merely conclusory. All the Court knows from Mr. Daniel's report is that Defendant "investigated the *DeSoto* claim," (*id.* at 17), a statement that, without more, does not support his determination that this investigation was "reasonable." In short, Mr. Daniel does not provide any explanation or analysis that could enable the Court to ensure that his expert opinion "both rests on a

reliable foundation and is relevant to the task at hand." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citation omitted).

### 3.   Legal Conclusions

Mr. Daniel's opinions about Defendant's claim handling process must be excluded for the additional reason that they encroach the role of the jury by reaching the ultimate issue in this case: whether Defendant acted in bad faith.   Although "[a]n opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704, "an expert witness cannot give an opinion as to her *legal conclusion, i.e.*, an opinion on an ultimate issue of law," *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation omitted) (emphasis in original).   Here, Mr. Daniel's opinions pertain to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.   It would be proper for Mr. Daniel to offer testimony that could support his conclusion that "Hallmark met its duty of good faith and fair dealing in its handling of the DeSoto claim." (ECF No. 74-1 at 22).   It is, however, plainly improper for him to offer only that legal conclusion.   *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (holding that "matters of law . . . . [are] inappropriate subjects for expert testimony" and collecting cases).

### 4.   The Scope of Mr. Daniel's Testimony

Plaintiff also argues that Mr. Daniel should be precluded from opining on certain warranties Plaintiff purportedly made in its insurance application on the grounds that this opinion falls outside the scope of Mr. Zalma's report and is irrelevant.   (Daniel Mot. at 17). In opposition, Defendant contends that these opinions are proper rebuttal testimony because Plaintiff's insurance application and any warranties contained therein are necessarily relevant to Defendant's claims-handling process.   (Daniel Opp. at 15–16).   The Court concludes that Mr. Daniel's opinion "that the answers and information Robin provided on the application were warranties" and that "any inaccuracies or misrepresentations could serve as grounds to void coverage from inception," (ECF No. 74-1 at 11) (emphasis omitted), is too generalized and speculative to be helpful to a

jury.  Furthermore, Mr. Daniel does not set forth any facts that could support a conclusion that Defendant considered this issue in handling Plaintiff's claim.  Defendant contends in opposition that "[a] routine step in claims-handling, which necessarily includes analyzing the insurance policy, is reviewing the application." (Daniel Opp. at 15).  While this may be so, as discussed above, Section III.A.2, Mr. Daniel simply concludes that Defendant's investigation of Plaintiff's claim was reasonable without analyzing the claims-handling process.  Testimony that Defendant could theoretically have concluded the policy was void from inception and denied coverage to Plaintiff on that basis risks confusing the jury where there is no indication that Defendant ever considered doing so.  The Court therefore GRANTS the Daniel Motion.

**B.    Defendant's Motion to Exclude the Expert Testimony of Mr. Barry Zalma**

Defendant moves to exclude the expert testimony of Mr. Zalma, whom Plaintiff designated to opine on insurance industry claims-handling custom and practice.  (ECF No. 75-1 at 74).  Defendant advances three arguments as to why Mr. Zalma's testimony is not reliable: first, that his opinions lack sufficient factual bases; second, that they lack a reliable methodology; and third, that they are inadmissible legal opinions.  (Zalma Mot. at 6).  The Court evaluates each of Defendant's arguments in turn.

1.    <u>Mr. Zalma's Factual Bases</u>

Defendant challenges Mr. Zalma's testimony on the grounds that he reviewed only twenty-two documents rather than "all documents produced in this action." (Zalma Mot. at 8–9).  Defendant contends that "Zalma did not have all relevant documents and, therefore, all relevant facts." (*Id.* at 9).  In particular, Defendant identifies as relevant but unreviewed material Defendant's claim notes, communications between Defendant and defense counsel in the underlying action, certain correspondence sent from Defendant to Plaintiff, and one of Plaintiff's responses to Defendant's requests for admission.  (*Id.*).  As Plaintiff notes in opposition, (Zalma Opp. at 5–6), it is not clear how this information would impact Mr. Zalma's testimony.  Mr. Zalma's report indicates that he reviewed various

documents, including certain of Defendant's claim notes, internal best practices documents, the policies at issue in this action, and certain correspondence between the parties. (ECF No. 75-1 at 107). Although Defendant argues in reply that Plaintiff has not established it provided Mr. Zalma the entire *DeSoto* claim file, (Zalma Reply at 11), this is grounds for cross-examining Mr. Zalma at trial, not excluding his testimony. *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d at 931.[1]

Defendant also contends that Mr. Zalma's opinions are unreliable because, in preparing them, he viewed documents that Plaintiff purportedly did not provide to Defendant. (Zalma Mot. at 11). As Plaintiff notes in opposition, whether these documents influenced Mr. Zalma's opinions is unclear as they are not expressly referenced in his report. (Zalma Opp. at 6–7). In any event, as with the documents Mr. Zalma did *not* consider, to the extent this material undermines the credibility of Mr. Zalma's opinions, Defendant may cross-examine him at trial on this matter.

Finally, Defendant raises various substantive criticisms of Mr. Zalma's opinions. (Zalma Mot. at 10–12). "The district court is not tasked with deciding whether the expert is right or wrong," however, and disagreement with an expert's conclusions do not provide grounds to exclude their testimony. *Alaska Rent-A-Car*, 738 F.3d at 969. Defendant's arguments about Defendant's choice of defense counsel, Plaintiff's request for admission responses, Defendant's investigation, and whether Mr. Zalma considered whether any exclusions might bar coverage "go to the weight of the testimony and its credibility, not its

---

[1] The cases upon which Defendant relies do not bolster its position. *Guillory v. Domtar Indus. Inc.* concerned, in relevant part, speculative and confusing testimony by an expert lacking *any* record support. 95 F.3d 1320, 1330 n.8 (5th Cir. 1996). Although *BJB Elec. LP v. Bridgelux, Inc.* held that "expert testimony is not admissible under Rule 702 if it is based on assumptions that are unsubstantiated by the record," there, the court allowed the expert's testimony because it was "still 'tied to the facts' in the record . . . rather than entirely fabricated." No. 22-cv-01886-RS, 2023 WL 4849764, at *2, *4 (N.D. Cal. July 28, 2023). And *In re Silicone Gel Breast Implants Prod. Liab. Litig.* concerned a reliability analysis of various scientific methodologies, not whether those methodologies were supported by the record. 318 F. Supp. 2d 879 (C.D. Cal. 2004).

admissibility," *id.* at 970, and the Court declines to exclude Mr. Zalma's testimony on this basis. *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1074 (C.D. Cal. 2013) (holding that an expert's "opinions need not be proven correct to be admissible").

### 2.   Mr. Zalma's Methodology

Defendant next contends that Mr. Zalma's opinions lack a reliable methodology because they incorporate standards set forth in California Code of Regulations, Title 10, Section 2695 ("California Fair Claims Settlement Practices Regulations") and California Insurance Code Section 790.03(h) and because of the alleged defects, already discussed above, Section III.B.1, in the documents Mr. Zalma did and did not review. (Zalma Mot. at 13–19). The Court addresses each matter in turn.

To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Primiano*, 598 F.3d at 564. This test, however, is flexible, and "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. For instance, the "'application of extensive experience' is a 'method' that can reliably support expert testimony." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Here, Defendant asserts that "[Mr.] Zalma's opinions are almost entirely based on non-existent legal standards and legal standards that are expressly inapplicable to the case at bar." (Zalma Mot. at 13).

The Court concludes that this framing of Mr. Zalma's opinions is not accurate. Mr. Zalma has extensive experience in the insurance industry, first as a claims adjuster, then— for several decades thereafter—as an insurance coverage lawyer licensed to practice in California. (ECF No. 75-1 at 75 ¶¶ 4–5). This experience forms "a sufficient foundation of reliability for his testimony." *Hangarter*, 373 F.3d at 1018. As for Mr. Zalma's invocation of various California statutory provisions, the Court cannot conclude, as Defendant urges, that these provisions are entirely "inapplicable." (Zalma Mot. at 13).

First, Mr. Zalma opines—and Defendant does not dispute—that Defendant incorporated certain of the California Fair Claims Settlement Practices Regulations into its own Best Practices for Healthcare Claims.  (ECF No. 75-1 at 77 ¶ 19).  Second, relying on his industry experience, Mr. Zalma opines that it is the custom and practice of insurers doing business in California to treat these regulations as minimum standards for interactions with insureds.  (*Id.* at 78 ¶ 20, 101 ¶¶ 51(a)).  Mr. Zalma appears to have identified the relevant standards for claims handling and applied those standards to the facts before him.  *See, e.g.*, *Rattan v. United Servs. Auto. Ass'n*, 84 Cal. App. 4th 715, 724 (2000) ("[T]he regulations . . . may be used by a jury to *infer* a lack of reasonableness on [the insurer's] part."); *Hangarter*, 373 F.3d at 1016 (affirming admission of expert "testimony that Defendants deviated from industry standards" when they failed to comply with California Fair Claims Settlement Practices Regulations); *DeFrenza v. Progressive Express Ins. Co.*, 345 F. Supp. 3d 1243, 1255–56 (E.D. Cal. 2017) ("Where an insurance company fails to follow its own procedures to the detriment of an insured an inference of bad faith can be drawn.").  Although Defendant asserts that Mr. Zalma should instead have opined on whether its conduct was "reasonable," (Zalma Mot. at 16), Plaintiff correctly notes in opposition that such opinions would consist of inadmissible legal conclusions, (Zalma Opp. at 9).

As for the two opinions Defendant contends are based on "non-existent/inaccurate legal principles," Defendant mischaracterizes one of Mr. Zalma's opinions, which in fact stated that it is industry custom and practice to "[m]eet, and *preferably* exceed, the minimum standards," (ECF No. 75-1 at 85 ¶ 46(b) (emphasis added)), not, as Defendant represents, "that an adjuster has the obligation to exceed standards," (Zalma Mot. at 15 (emphasis omitted).  To the extent Defendant disagrees with this aspirational statement, it may cross-examine Mr. Zalma about it at trial.  As for Mr. Zalma's opinion regarding providing coverage "to the satisfaction of the insured," (Zalma Mot. at 15), in light of Plaintiff's concession that Mr. Zalma "confirmed [it] was a misstatement," (Zalma Opp. at 10), the Court questions why the parties have engaged in motion practice regarding this

issue.  Because the parties and Mr. Zalma all agree that this specific opinion is erroneous, the Court concludes that it is unhelpful and irrelevant, and GRANTS the Zalma Motion with regard to any testimony that it is the custom and practice in the insurance industry to adjust claims "to the satisfaction of the insured."

Defendant's contention that Mr. Zalma's "analysis and resulting opinions are based on an egregiously incomplete and incorrect factual foundation," (Zalma Mot. at 17), essentially repackages its prior argument that Mr. Zalma's opinion must be excluded because he did not review certain purportedly relevant documents and did review certain other, purportedly irrelevant, documents.  For the reasons already stated above, however, Rule 702 does not impose such a rigid requirement under these circumstances.  To the extent Defendant believes that Mr. Zalma's conclusions lack sufficient factual bases or are otherwise erroneous, Defendant may cross-examine Mr. Zalma at trial and highlight documents that he did or did not rely upon in reaching his opinion.  The Court declines, however, Defendant's invitation to step in as a factfinder and determine which documents are most relevant or reliable.  *See Sandoval-Mendoza*, 472 F.3d at 654 ("*Daubert* makes the district court a gatekeeper, not a fact finder.").  Accordingly, the Court will not exclude Mr. Zalma's opinions on these grounds.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Daniel Motion in full.  The Court further GRANTS the Zalma Motion to the extent that it seeks to exclude testimony that it is the custom and practice in the insurance industry to adjust claims "to the satisfaction of the insured"; the Zalma Motion is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: April 2, 2024

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE